CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

DEC 28 2017

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

Christopher Cantwell,
    Plaintiff,

Civil Action No. 3:17CV00089

v.

Judge: Norman K. Moon

Edward J. Gorcenski aka
Emily Florence Gorcenski
And
Kristopher Goad
    Defendants.

# *Complaint*

This action seeks relief for the malicious prosecution of the Plaintiff by the Defendants, and relief for their deprivation on his civil rights.

### Nature of the Action

On humid and windless night of August 11, 2017, divers groups and individuals (hereinafter the "Monumentals") participated in a political on public property belonging to the Commonwealth of Virginia, pursuant to the rights guaranteed to them by the First Amendment to the United States Constitution and the Constitution of Virginia. Upon reaching the Thomas Jefferson Monument at the Rotunda, they were met by a small group of revolutionary communists, socialists, and/or anarchists (hereinafter ANTIFA). ANTIFA was also exercising rights guaranteed by the First Amendment to the United States Constitution and the Constitution of Virginia. As is their pattern and practice, ANTIFAs attacked the Monumentals. Two ANTIFAs subsequently swore out false and fraudulent criminal warrants against Plaintiff, a Monumental slated to speak at the August 12 rally, in an effort to stop his exercise of his rights guaranteed by the First Amendment to the United States Constitution and the Constitution of Virginia, and also maliciously punish, discredit, vex, and harass him.

### Jurisdiction and Venue

1. This court has jurisdiction pursuant to 28 U.S.C. 1332. Plaintiff is a resident of New Hampshire. Defendants are residents of Virginia, and the amount in controversy exceeds $75,000.00.

2. Venue is proper in the Western District of Virginia pursuant to 28 U.S.C. 1391(b) because Plaintiff's claims arose in Charlottesville, Virginia.

### Parties

3. Plaintiff Christopher Cantwell is a resident of Keene, New Hampshire. Cantwell was to be a speaker at a political rally in Charlottesville on August 12, 2017. He was a mere participant in the August 11, 2017 rally at the Jefferson Monument in Charlottesville. Because of his political positions, he regularly receives dire threats of death and bodily injury. Exhibit A.

4. Defendant Edward Gorcenski is a white male resident of Charlottesville, Virginia who changed his name to Emily Florence Gorcenski and pretends to be a "transgender woman of color." He is a "Media relations assistant" to ANTIFA who, on August 11, was wearing black pants, a green t shirt, and carrying a purse on a strap. Gorcenski "swore out the warrant against Cantwell. Me. Antifa." He believes that the Department of Homeland Security is "fascist," and believes that "Republicans" seek to assassinate him. Exhibit B.

5. Defendant Kristopher Goad is a resident of Richmond, Virginia. He is a violent political activist, supporter, and adherent of ANTIFA. Before August 11, 2017, Defendant had never seen Chris Cantwell, Plaintiff herein. On August 11, 2017, Goad was wearing glasses, sported a Goad has a disco mustache, had longish hair, and wore a blue jean jacket. Exhibit C.

### Other Important Persons and Entities

6. "Beanyman" is an adherent of ANTIFA. He is a short white male with a beard. On August 11, 2017, he wore a brown-green t shirt and a black beany. Exhibit D

7. "Undersleeves" is an adherent of ANTIFA. He is a large white male, with a beard. On August 11, 2017, he was wearing an orange long sleeved t shirt under a short sleeved blue short sleeved T shirt, thus exposing his orange undersleeves. Exhibit E

8. ANTIFA is an organization of communists, socialists and anarchists who seek to overthrow the Constitution of the United States. Exhibit F

9. Robert Tracci, Esquire is the Commonwealth's Attorney for Albemarle County.

## Statement of Facts
**Nota Bene:** [MP __] are video clips or images attached hereto. The video clips can be viewed with VCL Media player. Key "e" allows the user to advance frame by frame. As the events described occurred over approximately 25 seconds, the clips should be viewed at regular speed, and also frame by frame.

10. On or about August 11, 2017, around noon, Plaintiff, while lawfully carrying a holstered weapon, held a meet and greet in the Wal-Mart parking lot. Gorcenski found out about it, and tipped off local reporters. He then went to Wal Mart, took a photo of Cantwell speaking to police, and published it on twitter with the caption "Cantwell getting questioned by cops after allegedly brandishing a gun."

11. That evening, Plaintiff participated in a political rally at the Thomas Jefferson Monument, near the Rotunda on the public property of the Commonwealth of Virginia known as the University of Virginia. Gorcenski also attended, sought out Cantwell, and inquired as to how the Wal-Mart meet up went. Since UVa does not allow deadly weapons on its property, Cantwell was carrying a key chain pepper spray.

12. Defendant Goad and ANTIFA arrived at the Monument before the Monumentals, Gorcenski, and Plaintiff.

13. The statue of Jefferson faces generally north, towards University Avenue. The Rotunda building is behind him, or generally south. A rough diagram is attached as Exhibit G.

14. For orientation purposes, an ANTIFA group had a large white sign on the south face of Jefferson. An ANTIFA in a wheelchair (hereinafter "Wheelchair") had taken up a position at the northeast corner of the Monument. [MP1]

15. For orientation purposes, by approximately 10:07 p.m., ANTIFA had gathered around the base of the monument. Defendants Goad, Gorcenski, and Undersleeves were near the northwest corner of the monument, as was Undersleeves' wingman, Tom Keenan. Gorcenski crossed the north face of the monument filming from west to east, approaching Wheelchair. [MP2] A blinding white camera light was in place near the northwest corner of the monument, shining southward towards the Rotunda. [MP3]

16. Approximately 20 ANTIFA had chosen to link arms around the base of the Thomas Jefferson statue; the arriving Monumentals formed a doughnut around them. [MP4]; the two groups were within feet of each other, each exercising their rights to free speech.

17. At the northwest corner, Goad, and Undersleeves were near the west face of the monument. Undersleeves spontaneously attacked a person in a white jacket who was filming Undersleeves with a phone. [MP6]

18. Gorcenski, filming with his phone, moved across the north face, passed around Wheelchair at the northeast corner and headed south across the east face of the monument. Defendant Goad took up a position at the northwest corner. [MP7]

19. Some distance off of the northwest corner, Plaintiff was standing in the Monumentals' doughnut. [MP5]

20. On the west face, near the southwest corner, Undersleeves was having a heated discussion with an unknown bald individual in a white tank top (hereinafter "Tank Top"). [MP8] Plaintiff is in the background.

21. Gorcenski turned and moved south across the east face, then west across the south face, and then north along the west face, stopped behind Undersleeves, then turned around and headed back south, finally taking up a position some distance from the southwest corner, facing south. [MP9]

22. The following paragraphs describe the many events which take place within the space of approximately 25 *seconds*.

### Actions of Defendant Goad near the northwest corner.

23. Near the northwest corner, Undersleeves, Beanyman, and others attacked the man wearing a tank top. Tank Top defended himself, knocked Undersleeves to the ground, knocked Beanyman to the ground, and then retreated approximately 6 feet, as did nearby Monumentals. [MP10] Defendant Goad's glasses were on his nose.

24. Defendant Goad was near the northwest corner, approximately six feet to Beanyman's right and rear from Beanyman during Beanyman's attack on Undersleeves. [MP11] Defendant Goad's glasses were on his nose.

25. Beanyman rose up from the ground, and changed front to face Plaintiff. He and Defendant Goad led ANTIFA forward at Plaintiff. [MP12] Defendant Goad's glasses were on his nose.

26. Beanyman's face was contorted with rage, his teeth were clenched, he assumed an attack stance, and drew back his left clenched hand to strike the Plaintiff. [MP12], [MP13][MP14].

27. Outnumbered, Plaintiff pepper sprayed the leader, Beanyman, in the face at distance of about 12 inches. Beanyman retreated back to the Monument. Plaintiff retreated approximately five feet to the west. [MP15] Defendant Goad's glasses were on his nose.

28. Unaffected by Plaintiff's spray at Beanyman, within a split second Defendant identified Plaintiff as the sprayer and pointed to him for about two more whole seconds. [MP16] Defendant Goad's glasses were on his nose.

29. To Defendant Goad's left (south), Undersleeves was brawling and then kicked the head of a Monumental on the ground in a tracksuit (hereinafter "Tracksuit"). As Tracksuit attempted to rise up off the ground, Undersleeves kicked him mightily in the torso, and then then attacked in a northwesterly direction directly at Plaintiff and others, who were moving forward to rescue Tracksuit. [MP17] Cantwell displayed pepper spray from the rear rank. About to be overwhelmed by four or five Monumentals, Undersleeves turned around and attacked right back into the fight occurring to his rear and over tracksuit.

30. ANTIFA shifted laterally to their own left, putting a person (hereinafter "Gingham Shirt") in front of Defendant Goad. [MP18] Defendant Goad's glasses were on his nose.

31. A man with a 35 mm camera (hereinafter "Cameraman") was to Defendant Goad's immediate right. A large bearded Monumental in a gray shirt and baseball cap with a flashlight (hereinafter "Flashlight") was to Cameraman's right, and between Defendant and Plaintiff. [MP19] Defendant Goad looked to his right (north). [MP20] Defendant Goad's glasses were on his nose.

32. While Goad was looking north, to Goad's and Cameraman's right, an arm with a dragon tattoo "(hereinafter Dragonarm') went between Cameraman and Flashlight and pepper sprayed Goad, to which he reacted by covering his face. Gingham shirt reacted similarly. [MP21] Defendant Goad's glasses were on his nose.

33. At the time that Dragonarm sprayed Goad, Cantwell was approximately 10 feet from Goad, near the south<u>west</u> corner, heading to the south<u>east</u>. [MP21]

34. Cantwell was trying to stop Undersleeves from joining the fight above Tracksuit. [MP22]

35. About three seconds after Cantwell's interaction with Undersleeves, Dragonarm, not Cantwell, sprayed Defendant Goad. [MP23], [MP 21] Defendant Goad's glasses were on his nose.

36. At the northwest corner, two torch candles fell to the ground, and the respective lines parted. Gingham shirt was in front of and to the left of Defendant Goad, both on the north side of the monument. [MP24] Defendant Goad's glasses were on his nose.

37. Defendant Goad and ANTIFA moved back across the north face approximately 4 feet, putting their front midway on the north face of the monument. A person in a white shirt with a tiki torch (hereinafter "White Shirt Tiki" approached Gingham Shirt and Defendant Goad. Goad has his hands in a curious "praying mantis" position. [MP25] By this time, Plaintiff had been near the southwest corner of the monument for approximately four seconds. Defendant Goad's glasses were on his nose.

38. White Shirt Tiki lowered his tiki torch and faked at Gingham Shirt. This caused White Shirt Tiki's torch candle to fall out of said torch towards Gingham Shirt. It bounced off of his thigh and onto the ground. [MP25] At this time, Plaintiff was near the southeast corner.

39. Defendant Goad looked at White Shirt Tiki's candle on the ground. White Shirt swung his rattan at Gingham Shirt, causing Gingham Shirt to retreat. Defendant's vision focused on White Shirt Tiki's candle and attempted to extinguish it. White Shirt Tiki swung his rattan at Defendant, who saw it coming and retreated. [MP26] At the same time, to Goad's right, a man in a red shirt swung his rattan at Goad, which also caused Goad to retreat. [MP27] Defendant Goad's glasses were on his nose.

40. Goad and ANTIFA retreated east across the north face of the monument. [MP28] Defendant Goad himself retreated across the north face of the monument to the northeast corner.

41. Upon reaching the northeast corner of the monument, unknown Monumentals were yelling out "Hold, Hold." Goad, still with "praying mantis" hands, was near Wheelchair, smiling and laughing. Goad, possibly without his glasses, joined the cluster of ANTIFA near the center of the east face of the monument. Inside the cluster, an unknown person knowingly and intentionally released a noxious gas. An individual is seen to cough, and a man in a touring cap in heard to cough. Defendant Goad, now minus his glasses, for the first time wipes his face and eyes. [MP29] The remark can be heard "f*****g ANTIFA just gassed themselves." [MP30]

42. Goad himself was gassed. He made his way without molestation through the Monumentals leaning on a bearded ANTIFA in a green jacket wearing a baseball cap with sunglasses on it, just after a person present says "strong smell of 'gas,' [MP50] [MP51] [MP30]

### Actions of Gorcenski near the southwest corner.

43. Gorcenski was a few feet from the southwest corner, facing south. (Reference Para. 22.) [MP38]; He turned to face east, then turned back to face south. [MP39] A fight broke out to Gorcenski's right front (Plaid Shirt), and another to his right involving a man in a white shirt with a distinctive haircut. (hereinafter "Haircut"). Gorcenski looked to his front, then right front, and then turned to the right and looked behind himself (east), towards Lindsay Elizabeth Moers, an ANTIFA who had an asp fully deployed. [MP40a]. Gorcenski rapidly retreated in an easterly direction across the south face of the monument to a position near the southeast corner. There he stopped and looked west, with a phone in the right hand. [MP40] Plaintiff, pursuing Undersleeves, also went east across the south face of the monument, approximately 10 feet behind Gorcenski. [MP40].

44. Plaintiff was near the southeast corner but was blocked by a black clad white male with a dark baseball cap, who went towards the ground. [MP41a Screencap] A very tall man in a green shirt with a backpack (Tall Greenshirt) was to Gorcenski's right. [MP41b Screencap] Cantwell was approximately 6 feet from Gorcenski, whose shoulders fill the frame. Gorcenski raised his phone and took a picture. Plaintiff is to Gorcenski's left. Gorcenski and Greenshirt block the view. [MP41]

45. At the southeast corner of the monument, between Gorcenski/TallGreenshirt and the corner of the monument, Lindsay Elizabeth Moers raised her asp to strike. Plaintiff went forward to disarm her, calling "get that stick!" [MP34]

46. As Cantwell was attempting to disarm Lindsay Elizabeth Moers, Beanyman attacked Cantwell from the base of the monument. Another Monumental (hereinafter "Headlock") intercepted Beanyman and put him in a headlock. [MP35] [MP35a Screencap]. Cantwell was pepper sprayed by Beanyman. [MP36] [MP36a Screencap] Cantwell reacted to the pepper spray attack. [MP37]

47. At the time Cantwell was sprayed, Gorcenski's head was about level with Greenshirt's armpit, [MP42] and Gorcenski was immediately behind Cantwell.

48. After being sprayed, Cantwell moved southeasterly, turned around, and then retired out of the crowd away to the southeast. [MP42] He was treated for the effects of pepper spray.

49. Officers Bryant and Climore, UVa. Police, arrived. [MP37]

50. Over at the <u>northeast</u> corner of the monument, unknown persons were yelling out "Hold, Hold." [MP29] Gorcenski was standing opposite the eastern east face of the Monument, looking at his phone, and put his glasses in his hair. Goad then came around the northeast corner of the monument near Wheelchair, smiling and laughing. An individual is seen to cough, and a man in a touring cap in heard to cough. Someone remarked that "f*****g ANTIFA just gassed themselves." Despite claiming to be pepper sprayed long before, for the first time Gorcenski wipes his face. He is standing next to a short man in a yellow shirt (Yellowshirt), who covers his nose with the shirt. [MP43]

51. By approximately 10.17, the UVA ANTIFA and their white sign passed unmolested through the Monumentals and took up a position at the base of an overhead light about 20 yards east of the monument, passing by a police officer while doing so. [MP44]

52. After he put his glasses in his hair, Gorcenski resumed livestreaming himself from his phone. Yellowshirt, with his shirt over his nose, can be seen in the background. Gorcenski claimed: "So I've been maced. There have been brawls. The Nazis f*****g attacked us. They pinned us around the statute. There are brawls. I got my glasses stuck in my hair." Gorcenski made her way unmolested through the Monumentals, to the UVA ANTIFA with their sign, and asking only for help to remove his glasses. [MP45]

53. Both Goad and Gorcenski were present at the ANTIFA gas release on the east face of the monument near the end of the event when persons were shouting "Hold, Hold".

**August 12, 2017**

54. After the Jefferson Monument event, Gorcenski saw the attached photograph of Cantwell spraying Beanyman near the northwest corner of the monument. Exhibit H. Gorcenski tweeted out this image with the caption "This is Chris Cantwell deploying pepper spray against people who are clearly in de-escalation poses." Gorcenski realized an opportunity to conflate the ANTIFA gas release with the image of Cantwell's spraying of Beanyman in an effort to thwart Cantwell's speaking on August 12 by having him arrested, to create a false narrative that the Monumentals had gratuitously attacked ANTIFA the night before, and to thereby discredit, vex, harass, and intimidate Cantwell and those opposed to ANTIFA.

55. At approximately 9:00 a.m. Gorcenski contacted the University of Virginia Police. Gorcenski identified himself as a "media relations assistant to ANTIFA," who had "followed the alt Right for some time." Gorcenski reported that he was "sprayed in the eyes with pepper spray." In his written statement to law enforcement, Gorcenski represented only that he "felt the burning in my eyes of pepper spray or mace. Soon my mucus membranes burned and I had trouble breathing." In her sworn statement to the magistrate, however, Gorcenski claimed only "I inhaled/was affected by a chemical spray" and "the overspray affected me directly. My eyes and sinuses were burning."

56. Gorcenski claimed to identify Cantwell as having sprayed him from Exhibit H.

57. Officer Smallwood, UVa Police, would not take out warrants on his own authority. Instead, he required Gorcenski to do so, but signed as authorizing it pursuant to Va. Code Sec. 19.2-71 and 72. Officer Smallwood erroneously informed Gorcenski that Cantwell was only person who used pepper spray at the August 11 event. Despite her presence when Beanyman sprayed Cantwell, and at the east face ANTIFA gas release, Gorcenski promptly put out on social media the false statement that Cantwell was the only pepper sprayer at the August 11 event.

58. Two warrants were issued, one for <u>unlawful</u> wounding by acid or caustic agent under Va. Code Sec. 18.2- 52 and another for <u>unlawful</u> release of a noxious gas, under Va. Code Sec. 18.2-312. Curiously, the same affidavit was used for both charges. Both are Class 6 felonies. A copy teste of the 18.2-52 charge is attached hereto as Exhibit I.

59. Gorcenski made sure that the warrants were issued, and then "leaked details on social media."

60. According to Goad, he was informed by "other people" and "social media" that the person who sprayed him was Christopher Cantwell before Gorcenski informed him. At some time on August 12, 2017, Gorcenski personally met with Goad and informed Goad that he, Gorcenski, had seen an image of Cantwell pepper spraying and that he recognized Cantwell from that image. Gorcenski also informed Goad that he, Gorcenski, had taken out warrants against Cantwell.

61. In the cleanup after the August 11 event, UVa. Police recovered an empty canister of "Sabre Red" pepper spray.

**August 17, 2017**

62. Based on Gorcenski's false information, on or about August 17, 2017, Defendant Goad travelled to Charlottesville and met with Sgt. Acord of the UVa. Police. He narrated the sequence of events to Acord: "I saw a person in a brown shirt get pepper sprayed by a person I know is Christopher Cantwell. I yelled 'this man has mase [sic] and people started swinging torches at me. I dodged them and removed my prescription glasses. I saw a canister of citronella on fire and tried to exhaustion [sic] the fire with my foot. When I failed to do so, I looked up and Cantwell mased [sic] me, I could not see, [sic] beyond that but felt strikes to my body after that."

63. On August 17, 2017, and pursuant to Va. Code Sec. 19.2-71 and 72, Defendant Goad completed a form entitled "Criminal Complaint" before the magistrate. On it, Goad

swore that the statements thereon were true to the best of his knowledge and belief, including the statement "Cantwell used a gel mase [sic] pepper spray at my face and cause [sic] me to lose my vision temporarily [sic]. I was struck by torches by unknown persons while my vision was gone." A copy teste of the Goad charges is attached as Exhibit J.

64. Sgt. Acord would not take the warrant out of his own accord; he, too, required Goad to do so, but Acord authorized it under Va. Code Sec. 19.2-71 and 72. This prompted the issuance of a third warrant for <u>malicious</u> gas release, a Class 3 felony.

### August 21, 2017

65. On or about August 21, 2017, Plaintiff turned himself in to the Lynchburg police. The Charlottesville magistrate denied bond.

66. On or about August 21, 2017, Plaintiff moved the Albemarle County General District Court for bond.

### August 31, 2017

67. On August 31, 2017, when the case was called for the bond hearing, the Commonwealth of Virginia, by Robert Tracci, Esquire, Attorney for the Commonwealth, moved to amend the two Gorcenski charges, upgrading them from unlawful (a Class 6 Felony) to malicious (a Class 3 felony), which was allowed over Plaintiff's objection.

68. Pursuant to Va. Code 19.2-120(d), a presumption against bond exists for any malicious wounding under Va. Code 18.2-51 et seq., which includes Va. Code 18.2-52, one of the charges that Gorcenski took out.

69. After the amendment, the Albemarle General District Court awarded Plaintiff a bond in the amount of $25,000. A preliminary hearing was scheduled for November 9, 2017.

70. The Commonwealth appealed the bond decision to the Albemarle Circuit Court, which later that day denied bond on the grounds that the Va. Code Sec. 19.2-120(d) presumption against bond had not been rebutted.

### November 3, 2017

71. Sometime between November 3, 2017, and November 7, 2017, Defendant Goad met alone with Robert Tracci Esquire, Commonwealth's Attorney for Albemarle County.

72. The recovered empty pepper spray canister was sent to the state laboratory for fingerprint comparison to Cantwell's fingerprints only. Cantwell's fingerprints were not on it.

### November 8, 2017- Goad case

73. On or about November 8, 2017, approximately 19 hours before the preliminary hearing, Mr. Tracci informed defendant's counsel that "Mr. Goad was no longer certain that the direct deployment of gel pepper spray he described in that complaint resulted from an action by Mr. Cantwell." Tracci also claimed "Mr. Goad will indicate that his glasses had been removed by that point making positive identification of Mr. Cantwell difficult." Tracci also intended to continue to pursue the Goad charge anyway. See email of 11/8/17 at 2.38 p.m., attached hereto as Exhibit K. See, generally, MP 11-MP 30.

### November 9, 2017-Goad case

74. On November 9, 2017, Defendant Goad admitted that he had sworn out the warrant under oath. Goad admitted that he signed the sworn statement. Goad admitted that the sworn statement was: "Cantwell used a gel mace spray at my face and caused me to lose my vision temporarily."

75. Despite the light from scores of torches and the blinding camera light, after claiming 20/60 vision without his glasses, Goad testified that he agreed with Tracci that it would be fair to say if it were dark and there was a lot of chaos going on it would be difficult to identify everything that's going on, everything happening, insinuating that Goad's poor vision caused him to misidentify the two utterly different persons in Exhibit L. (Cantwell and Dragonarm) On Cross examination, Goad admitted repeatedly that his glasses were on his nose before claiming the video resolution was too poor to further say.

76. After meeting with Tracci, Defendant Goad's new sworn testimony was that "multiple people," but not Cantwell, had used gel mace pepper spray in Defendant's face.

77. After meeting with Tracci, Goad's new sworn testimony was that "I suffered more instances of being attacked with a caustic agent than in my original statement." Despite swearing only to gel mace from Cantwell in his face, Goad now swore under oath had also been affected by overspray from the Beanyman spray and Cantwell's display against Undersleeves.

78. Goad testified that "I was, I was in the room with Mr. Tracci when I found out that I had been hit multiple times."

79. Despite the video [MP10, 12] showing Goad watching Beanyman fight Tank Top, Goad testified that he did not see Beanyman strike anyone, nor be violent.

80. After his meeting with Tracci, Goad abandoned the "Cantwell gel mace" version and testified that he instantaneously felt "burning on his face" after Beanyman's spraying.

81. After meeting alone with Tracci, and despite the video showing Goad behind Gingham shirt, with his glasses on, and about 7 feet to Undersleeves' right, [MP17, 18], Goad further testified that he was also "affected" when Cantwell displayed at Undersleeves. After his meeting with Tracci, and despite the video showing Dragonarm spraying Goad 4 seconds thereafter, Goad testified that he "was affected" in "a few seconds" to "completely lose [his] vision," "feel burning on [his] skin, and difficulty breathing" by Cantwell's spray, and not by Dragon Arm's.

82. Despite just "completely losing his vision," Goad nevertheless watched a person swing a torch at him.

83. Despite the video showing Goad retreating halfway across the north face of the monument, stomping at a torch candle, and avoiding another torch swing, Goad testified that he "tried to open my eye just enough to see one person I was familiar with, asked them to walk me out of [t]here." Despite the presence of Officers Climore, Bryant, and most of the UVa and Charlottesville Police Departments, Goad further testified that he later "attempted to look for a law enforcement officer to have a statement."

84. Despite previously testifying that Emily Gorcenski had told him that Cantwell was the sprayer, Goad testified that he only reviewed video and by that means alone identified Cantwell as the person who had sprayed gel mace in his face.

85. Goad attempted to explain how his story changed after his meeting with Tracci by claiming that his story had not changed after his meeting with Tracci.

**November 9, 2017- Gorcenski case**

86. Despite swearing under oath that she saw the man whose spray affected her, Exhibit I, Gorcenski testified that she did not in fact see the man spraying, but only a small altercation to her right.

87. After reporting to Officer Smallwood that he was "sprayed in the eyes with pepper spray," and then swearing under oath that he was only affected by pepper spray after a fight broke out to his right, Gorcenski testified that she "was affected specifically by the Beanyman spray," despite being on the opposite corner of the monument, about 30 feet

away, with several bodies between them. [MP52; Gorcenski is the red circle; Cantwell is the blue oval.]

88. After reporting to Officer Smallwood that he "felt the burning in my eyes of pepper spray or mace. Soon my mucus membranes burned and I had trouble breathing," and swearing that "I inhaled/was affected by a chemical spray" and "the overspray affected me directly. My eyes and sinuses were burning," Gorcenski testified "I recall having a burning sensation in my face and my eyes and my nose and my eyes started to water and I started to lose my vision." He then again testified that he only "inhaled the substance and it started burning in my nose and eyes."

89. Despite video showing 21 seconds of Gorcenski retreating across the south face of the monument, taking a picture of Cantwell with his phone while doing so, being behind Cantwell when he was sprayed, reactivating her livestream on his phone, and walking unmolested out of the crowd while livestraming, Gorcenski testified "I was *incapacitated* for a period of 15 to 30 seconds. Initially I just started seeing—feeling my eyes water. My initial reaction was to try to get to safety and to retrieve my phone which had been knocked out of my hand. Once I retrieved my phone, I tried to find a path to safety and could not see a way out." [Emphasis added].

90. Despite never before mentioning two spray events, at Tracci's prompting, Gorcenski testified that she was also affected by a second, separate event that she saw on a video. Despite earlier swearing that she had <u>not</u> seen the man who sprayed on August 11, Gorcenski now claimed that she in fact saw Cantwell versus Undersleeves, implying that this was a separate event from the Beanyman spray, even though the two events were at the same place and only five seconds apart: "I observed Mr. Cantwell reaching over a group spraying pepper spray into the group of people I was surrounded by." At the time, Gorcenski was on the opposite (south) side of the (opaque) monument.

91. Despite video showing 21 seconds of Gorcenski retreating across the south face of the monument, taking a picture of Cantwell with his phone while doing so, being behind Cantwell when he was sprayed, and reactivating his livestream on the phone, and walking unmolested out of the crowd while livestreaming, Gorcenski testified to different sequence of events that occurred after the second deployment: "After being impaired, I looked for a way out of the crowd knowing I had only a few seconds before I would completely lose my vision. I could not find a way out so I tried to take a couple of pictures with my phone…"

92. Despite being mere feet away when Beanyman sprayed Haircut, and despite being within inches of Cantwell when Beanyman sprayed Cantwell, and despite being where "ANTIFA gassed themselves," Gorcenski swore under oath that Cantwell was responsible for her spraying because "It was the closest to me and it was in a direction in which I was standing."

93. Despite video of Dragonarm's spray in her direction, Gorcenski testified that she was not affected by Dragonarm's spray because it was not in her direction and three feet further away than Cantwell's.

**November 9, 2017- 6:00 p.m.**

94. On Goad's charge, the Albemarle General District Court found as follows: "I order the accused discharged at preliminary hearing and the charge dismissed. Exhibit J, second page, upper left hand corner.

95. On Gorcenski's 18.2-52 charge, the Albemarle General District Court found as follows: "I order the accused discharged at preliminary hearing and the charge dismissed. Exhibit I. second page, upper left hand corner.

**December 7, 2017**

96. Plaintiff posted bond and was released from jail, having served 107 days or durance vile based on the false, fraudulent, and changed statements of Goad and Gorcenski.

## *Claims for Relief*

### First Cause of Action

### Malicious Prosecution

97. Plaintiff reasserts and realleges the foregoing paragraphs as if fully set forth herein.

98. Goad and Gorcenski initiated the prosecutions in Exhibits I and J both of which terminated in a manner not unfavorable to the plaintiff.

99. The prosecutions were without probable cause.

100. Goad and Gorcenski acted with actual malice.

101. Plaintiff has had to expend monies to defend against Defendants' claims, has had direct injury in the loss of present and future earnings and profits in his business, and has suffered injury to his reputation and good name.

## Second Cause of Action

## Abuse of Process

102. Plaintiff reasserts and realleges the foregoing paragraphs as if fully set forth herein.

103. Defendant Goad's purpose in swearing under oath "Cantwell used a gel mase [sic] pepper spray at my face and cause [sic] me to lose my vision temporarily [sic]" and his other contradictory and false statements was to punish, vex and harass a political opponent rather than to bring an offender to justice. Defendant Gorcenski's purpose in making false statements to police to obtain arrest warrants, and his other contradictory and false statements were to prevent Cantwell from speaking, and to punish, vex and harass a political opponent rather than to bring an offender to justice.

104. Defendants Goad and Gorcenski's alteration of their sworn testimony after meeting with the Commonwealth's Attorney were acts in the use of process not proper in the regular prosecution of the proceedings. These actions were motivated by actual malice.

105. Plaintiff has had to expend monies to defend against Defendants' claims, has had direct injury in the loss of present and future earnings and profits in his business, and has suffered injury to his reputation and good name.

## Third Cause of Action

## False imprisonment

106. Plaintiff reasserts and realleges the foregoing paragraphs as if fully set forth herein.

107. By making false statements under oath, based on tainted information, and by communicating this false information to the UVa Police, the magistrate, and the Albemarle County General District Court, Goad and Gorcenski caused the illegal detention of the Plaintiff's person, by the unlawful execution of lawful process. These actions were motivated by actual malice.

108. Plaintiff has had to expend monies to defend against Defendants' claims, has had direct injury in the loss of present and future earnings and profits in his business, and has suffered injury to his reputation and good name.

109. Plaintiff will elect his damages for this cause of action after the jury renders its verdict.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs respectfully request an award of the following relief:

127. damages in an amount in excess of $107,000 from each Defendant;

128. Punitive damages in the amount of $350,000 from each Defendant;

129. Such other relief as to justice shall seem meet.

A JURY TRIAL IS DEMANDED

Christopher Cantwell

By Counsel

/s/ Elmer Woodard
Elmer Woodard
Attorney at Law P.C.
VSB 27734
5661 US Hwy 29
Blairs, VA 24527
434-TRiangle 8-3422
434.878.3422
isuecrooks@comcast.net