| | | |
|---|---|---|
| Christopher Cantwell | ) | |
| Plaintiff | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 3:17-CV-00089 |
| | ) | |
| Emily Gorcenski, | ) | |
| Kristopher Goad, | ) | |
| Defendants | ) | |

## DEFENSE ANSWER TO PLAINTIFF CANTWELL'S COMPLAINT

Defendants Emily Gorcenski and Kristopher Goad (collectively, "Defendants"), by their

counsel, Sandra Freeman, Pamela Starsia, and Moira Meltzer-Cohen, as and for their Answer

to the Complaint of Plaintiff Christopher Cantwell state the following:

## NATURE OF THE ACTION

Ms. Gorcenski and Mr. Goad deny and strongly object to the claim that the explicitly

white supremacist "Unite the Right" gathering that took place on August 11-12, 2017 was

motivated only by nationwide worry for the future location of a Charlottesville statuary

artifact memorializing slavery and secession as positive historic episodes in which one should

take pride. It should be non-controversial to state that the history valorized by statues of

Robert E. Lee, Stonewall Jackson, and other notable Confederate figures centrally implicates

and exalts the disgraceful struggle over the moral permissibility of human chattel slavery,

racially-motivated atrocities, and continued violent repression of black people in the United

States. Defendants object to the complaint's reference to self-identified members of racial

1

purity and white power groups as "Monumentals," as though the primary concern of these individuals and groups is in fact the preservation of historical statues and monuments instead of their own commitment to practicing, upholding, and further promoting white supremacy.[1]

Defendants each object to being characterized as an "ANTIFA," because neither so identifies. Defendants further object to the idea that the Defendants belong to an association or group of "Antifas" because antifa is an adjective used to describe a set of practices developed in response to neo-fascist street violence, not a coherent, discrete membership organization to which one can belong.

## Jurisdiction and Venue

1. The allegations contained in Paragraph 1 are legal conclusions. However, it is not clear that the Plaintiff is in fact a resident of New Hampshire, or that he suffered damages in an amount over $75,000. See Paragraph 138, infra.

2. The allegations contained in Paragraph 2 are legal conclusions and no response is required

## Parties

3. The allegations contained in Paragraph 3 relate to Plaintiff's residency and his plans to speak at a rally in August 2017, and therefore cannot be confirmed or denied by

---

1    Mr. Cantwell will dispute that he is a white supremacist and prefers to refer to himself as a "white nationalist," ignoring that white supremacy is an inherent tenet of white nationalism. Defense Exhibit A, "Radical Agenda Season 3, Episode 17 - Black Sun Rising," published on January 17, 2018 by the Plaintiff, https://christophercantwell.com/2018/01/17/radical-agenda-s03e017-black-sun-rising, accessed on 1/21/2018. See, e.g., "White Nationalist." *Merriam-Webster.com*. Merriam-Webster, n.d. Web. 7 Feb. 2018.

2

Defendants. Defendants contest the claim that Mr. Cantwell was a "mere participant" in the Unite the Right rally, as he was in fact a key organizer of the rally. Defense Exhibit B, Poster for "Unite the Right" Rally. Plaintiff's Exhibit A, however, does not speak one way or another to the claim that Mr. Cantwell, an obscure fringe figure who, prior to becoming a full-blown white supremacist widely known as "the Crying Nazi"[2] was primarily known for his "anarcho-capitalist" views and harassing New Hampshire meter-maids, now receives "dire threats of death and bodily injury."

4.  Defendant Emily Gorcenski denies the allegations set forth in Paragraph 4. Ms. Gorcenski is neither white nor male, and counsel wishes now to encourage this Court to honor and enforce the use of gender-appropriate language when referring to Ms. Gorcenski. The allegation that Ms. Gorcenski "pretends to be a transgender woman of color" is heinously insulting and violates the obligation of counsel to act with civility as well as the Virginia State Bar principles of professionalism to avoid all bigotry, discrimination, and prejudice.

Defendant Ms. Gorcenski denies the allegation that she is a "Media relations assistant to Antifa." As noted above, antifa is not an organization of the kind that could have a media relations assistant, and in any case Ms. Gorcenski is not employed by any individual or organization to act as a media relations assistant. Defendant Gorcenski denies all of the allegations set forth in paragraph 4 regarding her apparel other than that regarding her

---

2   Following the events of August 11 and 12, 2017 the Plaintiff became somewhat of a minor internet celebrity due to his appearance in a short documentary produced by VICE news and Plaintiff's publication of a video wherein he learns that there is a warrant for his arrest. https://www.youtube.com/watch?v=X4_0CCaDI-A. In the self-published video the Plaintiff tearfully explains his reasons for engaging in violence on August 11 and 12, 2017 and then provides law enforcement with his own contact information, earning him the nickname "the Crying Nazi." In the interest of propriety and professionalism counsel for Ms. Gorcenski and Mr. Goad will refrain from referring to the Plaintiff as his sobriquet despite his renowned, tearful admissions.

purse, which she affirms was a black and brown leather handbag with a cross-body strap; Ms. Gorcenski states that on the evening of August 11, 2017 she wore blue jeans cuffed at the ankles, black and grey houndstooth canvas mary jane shoes, and a grey t-shirt. Defendant Gorcenski affirms that she made the statement attributed to her in Paragraph 4, but the statement is incompletely reproduced within Plaintiff's Complaint in a manner that entirely misses, subverts, and appears to purposefully misrepresent its meaning. The statement in its entirety, "I swore out the warrant against Cantwell. Me. Antifa. Where were you?" is in fact an indictment of antifa, who, according to Ms. Gorcenski, were conspicuously absent when she went to swear out a complaint against Mr. Cantwell. Defendant Ms. Gorcenski affirms the allegation that she believes the Department of Homeland Security to be "fascist," but objects as to the relevance of Plaintiff's Exhibit C, a tweet sent on August 30, 2017. Defendant Gorcenski denies the allegation that she believes "Republicans" seek to assassinate her, and further denies that Plaintiff's Exhibit B functions as evidence to suggest that she harbors such a fear.

5. Defendant Kristopher Goad admits the allegation that he is a resident of Richmond, Virginia. He denies the allegation that he is violent. He admits the allegation that he is an activist. As it is utterly unclear what is meant by the claim that he is a "supporter and adherent of Antifa," Mr. Goad asserts that he has insufficient information either to admit or deny this allegation. Mr. Goad will state for the record that he, like most thinking people, objects to the definitionally anti-democratic tenets of fascism. Mr. Goad admits the remaining allegations in Paragraph 5 regarding his appearance on August 11, 2017, and not only embraces but is delighted by the Plaintiff's characterization of his moustache.

4

6. Plaintiff's paragraph 6 seems to claim that a person identified only as "Beanyman" is an "adherent of Antifa," and as such is not susceptible to a meaningful response from these Defendants

7. Paragraph 7 seems to claim that a person identified only as "Undersleeves" is an "adherent of Antifa", and as such is not susceptible to a meaningful response from these Defendants.

8. Paragraph 8 is a mischaracterization of "ANTIFA" [sic]. Plaintiff's Exhibit F, intended to support the misguided claim that antifa "is an organization" that "seeks to overthrow the Constitution of the United States," is actually a reproduced advertisement placed in the New York Times by a subgroup of the Revolutionary Communist Party ("RCP"), an umbrella organization and cult of personality built around its figurehead, author Bob Avakian. This advertisement called for people of conscience to rally against the Trump administration on November 4, 2017.[3] Although it is certainly possible that some members of the RCP may support antifa tactics or views, the RCP is an authoritarian communist organization lacking any particularly definite or formal relationship to antifa, which as stated above, is a set of practices rather than a group or identity. To the extent that antifa has a coherent and discrete set of principles, those principles are almost certainly _opposed_ to the authoritarianism of the RCP. In any case, neither the RCP's November 4 advertisement nor the tenets of antifa advocates for the overthrow of the

---

3    Research suggests that nobody responded to this call, and that November 4, 2017 was an entirely unremarkable day despite the public exhortation of the RCP.

United States Constitution. Given that the sole guiding principle of antifa is its opposition to authoritarian fascism and white supremacy, it would be difficult to state that "adherents of Antifa" contemplate the Constitution at all, let alone wish to overthrow it.

9. Defendants Ms. Gorcenski and Mr. Goad admit that Robert Tracci is the Commonwealth's Attorney for Albemarle County.

### Statement of Facts[4]

10. Ms. Gorcenski renews her objection to the use of masculine pronouns to describe her. This paragraph is not susceptible to an answer, as it contains a narrative regarding the lawfulness of Chris Cantwell's sidearm and his intentions in the Wal-Mart parking lot. Ms. Gorcenski admits to having published a picture on Twitter of Chris Cantwell being questioned by police after he allegedly brandished a firearm in the Wal-Mart parking lot.

11. This paragraph is not susceptible to a clear response, as it contains not allegations, but a narrative involving Chris Cantwell's participation in the now-infamous Tiki Torch march on the evening of August 11, 2017, and the pepper spray he carried with him in place of the firearm about which police had already questioned him that day. Ms. Gorcenski admits that she went to observe the rally, but denies that she purposefully sought out the Plaintiff. Ms. Gorcenski does admit that she asked Chris Cantwell about the Wal-Mart

---

4    The video mentioned in Plaintiff's prefatory note was not uploaded to ECF and cannot be viewed by defense counsel. It appears that Defendants were each served a copy of the video on a compact disc contained in a clear plastic ziplock bag. The defense objects to the video as an attempt by the Plaintiff to mislead this Court by submitting video that is clipped up into approximately 40 different short video clips, with some clips being as short as one second, rather than submitting complete, unedited video clips, presumably for the purpose of presenting the video in the light the Plaintiff perceives to be most favorable to himself.

meetup.

12.  Mr. Goad admits that he arrived at the Thomas Jefferson statue prior to the torch-bearing white supremacists. He can neither admit nor deny the arrival of "Antifa," for reasons already explained. See Defense Answer Paragraph 8, supra.

13. Paragraph 13 requires no response because it contains assertions of fact, including, conveniently, Plaintiff's Exhibit G which serves to apprise the reader of cardinal directions.

14. Paragraph 14 contains no allegations regarding the Defendants. Ms. Gorcenski and Mr. Goad, as well as their attorneys, take grave exception to the assignment of the identifier "Wheelchair" being applied to a person with a disability.[5] Furthermore, there is no evidence that the people with whom the Defendants stood were anything more than a group of local professors and students gathering to demonstrate their distaste for a rally that explicitly and intentionally evoked the aesthetic sensibilities of the Ku Klux Klan and Nazi Germany.

15. Paragraph 15 is not susceptible to an answer, although Ms. Gorcenski and Mr. Goad renew their objections to the characterization of all people who are against fascism and enforced racial segregation by an authoritarian nationalist state as "Antifa." Ms. Gorcenski and Mr. Goad are unable to respond to allegations involving an individual identified only as "Undersleeves" and his "wingman."

---

5      Counsel and the defendants respectfully prevails upon the Court to use and encourage the use of a more respectful naming convention. For example, the individual in question might henceforth be referred to by their name or clothing.

16. Defendants admit that they were present at the Jefferson statue when people linked arms around the base of the statue. Defendants again object to the characterization of themselves and all persons who oppose fascism's exaltation and promotion of national and racial purity as "Antifa." The defendants deny that the white supremacists formed a cheerful or delicious "doughnut" around them, and submit that they were menacingly surrounded by a hostile crowd of men chanting translations of white nationalist slogans used by the National Socialist party under Adolf Hitler. The Defendants do stipulate and agree that the white supremacists were within feet of them. Defendants admit that the Constitution of the United States guarantees the rights of people to engage in controversial political speech.

17. Neither defendant can admit or deny the allegation of Paragraph 17 of Plaintiff's Complaint, which involves the conduct of an individual identified by counsel for Mr. Cantwell only as "Undersleeves."

18. Ms. Gorcenski and Mr. Goad, while renewing their objections to misgendering as well as to the language used to identify a person with a disability, admit respectively to filming and standing at the northwest corner of a statue while surrounded by a hostile torch-bearing crowd.[6]

19. Defendants take no position on the allegations contained in Paragraph 19, which involve

---

[6] Members of that crowd, including Mr. Cantwell, routinely make public statements about their desire to commit acts of violence against marginalized groups and individuals, including making threats of criminal and civil prosecution, violence, and death toward Mr. Goad and Ms. Gorcenski. See Defense Exhibit C, "Radical Agenda Gassing Kikes and Trannies (Song)," published on December 10, 2017 by the Plaintiff, https://christophercantwell.com/2017/12/10/gassing-kikes-trannies-song/ (accessed 02/03/2018). These threats cannot be assumed to be idle; indeed, less than 24 hours after the rally on August 11, a man who marched on August 12, 2017 with the "Monumentals" crowd murdered Heather Heyer.

Chris Cantwell's participation in the hostile, torch-wielding crowd that surrounded them. Defendants renew their objection to the euphemistic characterizations of the crowd of torch-carrying men in matching clothing[7] chanting "Blood and Soil," and "Jews will not replace us" as "Monumentals" forming only a benign "doughnut" ensconcing "mere participant" Christopher Cantwell.

20. Defendants take no position on the allegations of fact contained in Paragraph 20 regarding a conversation between the individuals identified as "Undersleeves" and "Tank Top." Defendants take no position on the location or activity of Chris Cantwell.

21. Ms. Gorcenski admits that the allegations in Paragraph 21 accurately describe her movements as she realized that the thirty to forty people with whom she stood were encircled by hundreds of hostile white supremacists. Ms. Gorcenski further admits that she stayed at the southwest corner of the monument when it became clear to her that she would be unable to leave the plinth, lest she herself become individually encircled by hundreds of hostile white supremacists.

---

[7]     The United States and the Commonwealth of Virginia both have a rich history of incidents involving mobs wearing matching clothing, uniforms, or costumes while committing racial and ethnic violence. The function of coordinated or matching clothing was and is two fold: to disguise the identity of specific participants, and to signify belonging to a group so that other group members can be easily identified. Given the history of lynching and violence perpetrated by persons disguising their identity in order to assault, maim, rape, and murder black people, both the General Assembly of the Commonwealth of Virginia and the United States Congress passed and enacted laws specifically to protect vulnerable communities from the Ku Klux Klan and other white supremacist groups. The laws forbid many of the acts associated with white supremacists' pattern of extra-judicial assault and execution, to include lynching, wearing of disguises, and participation in acts of violence while part of a mob. See e.g., United States Code Title 42 §1985(3)(outlawing the use of disguise while committing acts depriving others of their civil rights), Virginia Code § 18.2, Chapter 4, Article 2 "Crimes by Mobs" (prohibiting lynching and other acts of mob violence, compelling public officials to investigate and prosecute persons engaged in mob violence, and providing for civil liability and recovery of damages from lynching participants), Virginia Code §18.2, Chapter 9, Article 5 "Activities Tending to Cause Violence" (prohibiting the wearing of masks, intentional use of swastikas, nooses, or burning items as a means of intimidation). The passage of such statutes recognizes and affirms the horror, fear, and dread felt by Ms. Gorcenski, Mr. Goad, and the approximately three-dozen students and faculty gathered at the base of the Thomas Jefferson statue on August 11, 2017 upon realizing they were surrounded by a crowd of torch-wielding racists purposefully wearing matching clothing.

9

22. Ms. Gorcenski and Mr. Goad do not dispute that Mr. Cantwell's counsel intends to describe twenty-five seconds of video in the ensuing thirty-one paragraphs. However, given the choppy and spliced nature of the exhibits submitted and cited as evidence in paragraphs 23- 52 the defense can neither admit nor deny that the order in which the video clips are presented in the Plaintiff's complaint are in fact in the correct sequence, nor will the Defendants concede or admit to the Plaintiff's editorializing and characterization of the actions of anyone allegedly depicted in said exhibits. <u>See</u> FN 4, <u>supra</u>.

*Actions of Defendant Kristopher Goad near the northwest corner*

23. The allegations contained in Paragraph 23 are largely a narrative involving third parties, and as such Mr. Goad takes no position. He does however dispute as misleading the implication that "Beanyman" and "Undersleeves" engaged in an unprovoked attack on "Tank Top," who is shown in the video submitted as Plaintiff's Exhibit MP10.[8] Mr. Goad admits that his glasses were still on his nose.

24. Mr. Goad does not dispute the allegations contained in Paragraph 24 regarding his placement relative to the statue and other individuals shown in the video. Mr. Goad denies that the information known to him in any way depicts the person identified as

---

[8] Mr. Goad again objects to the use of the neologism "Monumentals" which suggests that the primary imperative of the participants in the Tiki Torch rally was to protect monuments that were in some way being threatened. The use of this term serves to obscure the settled fact that this crowd is in fact motivated by extreme and distasteful ideological commitments. Indeed, the funds used to pay counsel in this very case were raised on crowd-funding platforms set up by members of the far-right after being removed by Patreon and Go Fund Me for violating their terms of service. In a move that belies their guiding principles, the founders of these funding platforms named them, respectively, "Hatreon," and "Goy Fund Me." Proverbial boots do not become biscuits just because Mr. Cantwell bakes them in the oven, and hateful ideologues do not become less hateful or harmful by adopting alternative names in order to avoid the social stigma that necessarily comes with endorsing racism and genocide.

"Beanyman" attacking the person identified as "Undersleeves." Mr. Goad further admits that his glasses were yet on his nose.

25. Mr. Goad cannot speak to the allegations contained herein regarding "Beanyman." Mr. Goad denies the allegations contained in Paragraph 25, as "ANTIFA" [sic] is an essentially meaningless term as it is used, and because Mr. Goad in any case did not "lead" anyone, "ANTIFA" or otherwise, toward Plaintiff. Mr. Goad admits that his glasses remained on his nose.

26. Mr. Goad again makes no claim with respect to any allegations regarding "Beanyman," Beanyman's facial expressions, his stance, or the position or intent of his allegedly clenched fist.

27. Mr. Goad denies that Plaintiff was outnumbered. As is clear from documentary evidence, the students and professors gathered around the base of the statue numbered no more than forty, whereas Plaintiff Mr. Cantwell was acting as a headline speaker and "security" in support of the largest gathering of white supremacists in the United States this century. Mr. Goad affirms that Plaintiff deployed pepper spray into a cluster of people trapped and surrounded by Plaintiff and his many companions. Mr. Goad admits that even now, his glasses were indeed upon his nose.

28. Mr. Goad denies the allegation in Paragraph 28 that he was "unaffected" by the pepper spray which had just been deployed by Plaintiff. He admits to having accurately identified Plaintiff as the individual who deployed pepper spray. He further admits to pointing him out. He takes no position as to whether his finger remained extended for

"two more whole seconds." Mr. Goad once more confesses that his glasses perched atop his nose, while his disco moustache luxuriated gently beneath.

29. Mr. Goad can make no meaningful statements as to the actions or locations of "Undersleeves," an alleged anti-fascist, or "Tracksuit," an apparent Nazi sympathizer. Mr. Goad has no information as to the mightiness with which "Undersleeves" may or may not have kicked "Tracksuit," or what may have preceded or prompted such an allegedly mighty kick. Mr. Goad has no knowledge of anyone who might have been motivated to help "Tracksuit." Nor can Mr. Goad respond to the allegation that Plaintiff displayed or possibly deployed his pepper spray, or where he was standing when he did. Neither can Mr. Goad speak to the allegations that "Undersleeves" was confronted and overwhelmed by Chris Cantwell's confederates, or to the allegations concerning the response of "Undersleeves" when attacked by Cantwell's companions.

30. The allegations in Paragraph 30 are incomprehensible, as antifa is not an organization[9]. Mr. Goad can neither affirm nor deny that his glasses were on his nose, given that the view of him in this video is obscured by "Gingham Shirt."

31. Mr. Goad does not dispute the allegations in Paragraph 31, involving "Flashlight" (hereinafter William Williams), although he is beginning to be perplexed as to their significance. Mr. Goad does thankfully recall and admit that his glasses remained upon his nose.

32. Mr. Goad affirms the allegation that "Dragonarm," (hereinafter to be referred to by the

---

9  See Defendant's Answer Paragraph 8

name he uses on Facebook, "Wil Atteberry") deployed pepper spray directly into Mr. Goad's face while he was wearing his glasses. Insofar as Mr. Goad was wearing his glasses, he necessarily admits that his glasses rested upon his nose. Defendant Goad further admits that he reacted to searing pain, temporary blindness, and inability to breathe following Atteberry's pepper spray attack. Due to Mr. Goad's incapacitation, he can neither admit or deny what kind of reaction "Gingham shirt" may have had. Despite the maliciousness of the pepper spray attack, Mr. Goad's glasses remained steadfast upon his nose.

33. Mr. Goad can neither admit nor deny the alleged location of Plaintiff in the moments immediately following Atteberry's point blank deployment of pepper spray into his face.

34. Similarly, Mr. Goad can neither admit nor deny allegations regarding the behavior or state of mind of Plaintiff.

35. Mr. Goad admits that Atteberry pepper sprayed him; he disputes the implication that Plaintiff Cantwell did not *also* spray him at an earlier time, as shown on the video attached to Plaintiff's own Complaint. Mr. Goad admits in perpetuity all further allegations regarding the placement of his glasses.

36. Mr. Goad disputes the implication contained in Paragraph 36 that "two torch candles fell to the ground," given that the video submitted by the Plaintiff shows those candles flying from the ends of torches as the torch-bearers swung their staffs violently at the small group trapped around the statue.[10] Mr. Goad makes no statement as to the position of

---

10      One of the University of Virginia employees protesting the tiki-torch rally suffered a stroke four days after being assaulted and hit in the neck by a tiki-torch carried by a "Monumental" at the base of the statue.  See Susan Svriuga, "After clashes with white nationalists, U-Va library employee suffers a stroke," The

"Gingham Shirt," and of course affirms that his glasses were on his nose.

37. Mr. Goad admits the allegations contained in Paragraph 37 with respect only to his own efforts to retreat away from the hostile crowd, and the allegation that "White Shirt Tiki" (hereinafter William Fears)[11] approached him at that time. Mr. Goad does not know how to even attempt to respond to the allegations regarding his "curious praying mantis hands." He reinvokes his final admission of Paragraph 35, supra.

38. Mr. Goad admits that William Fears attempted to stab the individual identified as "Gingham Shirt" with a tiki torch, causing the candle to fly from the torch such that Mr. Shirt's leg was hit with an open flame. Mr. Goad admits to having been at that moment located near the southeast corner of the statue.

39. Mr. Goad admits that William Fears continued to accost Mr. Shirt as described in the Complaint, and that Mr. Goad attempted to extinguish the candle in the interests of fire prevention. Mr. Goad admits the allegation that both William Fears and another man attempted to assault him with a tiki torch, and that he himself was able to avoid those assaults.

---

Washington Post, 2017, https://www.washingtonpost.com/news/grade-point/wp/2017/08/16/after-clashes-with-white-nationalists-u-va-library-employee-suffers-a-stroke/ (accessed 02/10/2018).

11      Mr. Fears has since been charged with offenses relating to shooting a gun into a crowd of people gathered to protest a speech by Richard Spencer, himself best known for the internet memes that proliferated after he was elbowed in the head while explaining the relationship between white pride movements and his Pepe the Frog lapel pin on live television during Donald Trump's inauguration. See Lori Rozsa and Susan Svriuga, "'Kill them': Three men charged in shooting after Richard Spencer speech," The Washington Post, 2017, https://www.washingtonpost.com/news/grade-point/wp/2017/10/20/kill-them-three-men-charged-in-shooting-after-richard-spencer-speech/ (last visited Feb 2, 2018). see also "White Nationalist Richard Spencer gets punched in the face camera while doing interview," https://www.youtube.com/watch?v=9rh1dhur4aI, "Neo-nazi Richard Spencer getting punched in the face to (Bruce Springsteen - Born In The U.S.A.), https://www.youtube.com/watch?v=huoVOe7Rwok

14

40. Mr. Goad admits only those allegations of Paragraph 40 regarding his own movements.

41. Paragraph 41 is not susceptible to a response from Mr. Goad, except that he admits to wiping his face and eyes.

42. Mr. Goad admits the allegation in Paragraph 42 that he himself was gassed. As admitted in paragraph 41 of the Plaintiff's complaint, the Plaintiff and his cohort sprayed aerosol mace and mace gel into the crowd before they yelled "hold, hold," and joined arms to block the Defendants and others from leaving the statue; for this reason Mr. Goad disputes the Plaintiff's claim that Mr. Goad made his way through the torch-wielding crowd "without molestation."

*Actions of Defendant Emily Gorcenski near the southwest corner*

43. Ms. Gorcenski is not in a position to respond to the many of the allegations contained within the  complex narrative that is Paragraph 43. Ms. Gorcenski does admit that she repeatedly looked around various sides of the statue to find a way to escape the violence being inflicted all around her, including that inflicted by the Plaintiff, who in his own Exhibit MP40 is seen repeatedly punching an individual at the base of the statue. For reasons already stated, Ms. Gorcenski objects to the labeling of any group or individual person, herself included, as "an ANTIFA." Ms. Gorcenski denies that the person the Plaintiff identified as Lindsay Elizabeth Moers in Plaintiff's paragraph 43 was holding an asp, or that the Plaintiff's Exhibits MP40 and MP40a demonstrate as much; rather, Ms. Gorcenski submits that the person identified in Plaintiff's complaint was holding what appears to be a selfie-stick and using said selfie-stick to obtain a 360° panoramic image

of what it was like to be at the center of the largest hate-gathering of its kind in decades.

44. Paragraph 44 is not susceptible to a response from Ms. Gorcenski because it provides only a narrative interpretation of the Plaintiff's exhibits.

45. As none of the allegations in Paragraph 45 involve Ms. Gorcenski, no response is required. Ms. Gorcenski denies that Plaintiff's Exhibit MP34 shows the person identified in Paragraph 43 raising anything, asp or selfie-stick, such that the Plaintiff would have reasonably been placed in fear for his own safety. Defendant Gorcenski does stipulate that Plaintiff's Exhibit MP34 shows the Plaintiff Christopher Cantwell rushing across the face of the Jefferson statue yelling "Get that stick! Take that shit from her. Right now!"

46. As none of the allegations in Paragraph 46 involve Ms. Gorcenski, no response is required. The Defendants deny that Plaintiff's exhibits show anyone, including "Beanyman," attacking the Plaintiff. The Defendants do admit that Plaintiff's Exhibit MP35a does appear to show Mr. Cantwell's friend identified by the Plaintiff only as "Headlock" jumping onto another person. The defendants deny that any of the Plaintiff's exhibits show that "Beanyman" pepper sprayed the Plaintiff. The defense admits that Plaintiff's Exhibit MP37 shows that the Plaintiff's eyes are squinted and crying, as well as the Plaintiff's red, puffy, torchlit face.

47. Ms. Gorcenski can at this time neither admit nor deny the allegations contained in Paragraph 47.

48. As none of the allegations in Paragraph 48 involve Ms. Gorcenski, no response is

required. The Defendants do, however, dispute that the Plaintiff "retired out of the crowd," inasmuch as Plaintiff's Exhibit MP42 shows the Plaintiff, wearing his self-promoting "Radical Agenda Helicopter" t-shirt[12], swinging his fists at people in the crowd while being forcibly pushed and removed from the melee by a man presumably known to the Plaintiff who tells the Plaintiff "Cantwell, Cantwell, you're out of here. You're out of here" while pushing the Plaintiff out of the area and away from the police.

49. As none of the allegations in Paragraph 49 involve Mr. Goad or Ms. Gorcenski, no response is required.

50. Ms. Gorcenski admits the allegation in Paragraph 50 that she did at some point put her glasses in her hair and look at her phone. She can neither admit nor deny the remainder of the allegations, and questions the basis of the allegation that she "for the first time" wiped her face at this point as she had already wiped her face. Mr. Goad denies that he was smiling and laughing; he was in grimacing excruciating pain and squinting in order to see.

51. The Defendants deny that the group of Charlottesville residents, students, and faculty present at the statue on their campus on the night of August 11, 2017 in opposition to the gathering of fascists are "UVA ANTIFA," inasmuch as antifa is not an organization to which one can obtain a membership or form a student chapter. See paragraph 8 supra.

---

12  The Plaintiff can be identified throughout the videos and submitted with his Complaint by his black t-shirt with "RADICAL AGENDA" printed on the front in large white text and the depiction of a person falling from a helicopter on the back. Defense Exhibit D1. A different version of this shirt is available for purchase on the Plaintiff's website, https://christophercantwell.com/product/radical-agenda-helicopter-t-shirt-short-sleeves/, and is described as having "RADICAL AGENDA on the front, and a man hanging from a helicopter, Pinochet style, on the back." Defense Exhibit D2. The logo seen on the shirt Plaintiff wore on August 11 is described elsewhere described by the Plaintiff as "a helicopter leaving its former passenger stranded in mid air," which Plaintiff promotes by claiming this image is "a must have for any self respecting member of the Right Wing Death Squads, especially those living in colder climates, or those considering physical removal before the emperor issues the licenses." Defense Exhibit D3.

The Defendants again renew their objection to the Plaintiff's use of the word "ANTIFA" to identify all persons who disagree with Mr. Cantwell's ideology of appreciation for right-wing death squads and the strategies of former Chilean dictator Augusto Pinochet. The remaining allegations set forth in Paragraph 51 of the Plaintiff's Complaint are not susceptible to a response by Ms. Gorcenski or Mr. Goad.

52. Ms. Gorcenski admits that she recorded herself saying that she had been maced, that there had been brawls, that the nazis attacked and then pinned in those gathered in opposition around the statute. Ms. Gorcenski further admits that her glasses were removed as she asked for someone to give her water to flush the prickly, burning sensation of capsaicin from her eyes, skin, nose, and mouth.

53. Ms. Gorcenski and Mr. Goad admit to having been present during what Plaintiff refers to as "the ANTIFA gas release," but have insufficient information to either affirm or dispute that attribution of blame.

*August 12, 2017*

54. Ms. Gorcenski admits the allegation in Paragraph 53 that she tweeted a picture of Plaintiff deploying pepper spray with the caption as alleged. She denies the allegations that this was an opportunistic effort to "thwart" Cantwell's plans to speak. She submits that documentary evidence gathered by many journalists, including right-wing media and submitted by the Plaintiff himself, speaks compellingly to the events associated with the tiki torch rally. Ms. Gorcenski further reiterates and prevails upon this Court to recognize that she and all others opposed to those who support the use of political

18

violence to implement a single-party nationalist state are not "ANTIFA," but anti-fascist. Ms. Gorcenski denies she made any efforts to discredit, vex, harass, or intimidate the Plaintiff and states in response that Mr. Cantwell is doing just fine at discrediting himself without help from anybody, antifa, anti-fascist, or otherwise.

55. Ms. Gorcenski admits that she contacted the University of Virginia Police, but denies entirely the allegation that she identified herself as the "Media Relations Assistant" to "Antifa," which, as already explained elsewhere, is not the kind of organization for which a person might be employed. She admits to having made statements to the police that suggested in sum and substance that she was sprayed with a chemical that caused burning in her eyes and other mucous membranes and caused trouble breathing. She denies that any of the statements she made to the police or magistrate were in any manner incomplete or mutually contradictory, as the eyes and sinuses are both locations of major mucous membranes.

56. Ms. Gorcenski admits that she identified Cantwell as the person who deployed pepper spray, recognized as a chemical weapon banned from use in combat by Article I.5 of the Chemical Weapons Convention, into the group of people in which she stood on August 11, 2017.

57. Most of the allegations in Paragraph 57 are conclusory declarations about the reaction of police and law enforcement to the issuance of a warrant for Cantwell's arrest, and are thus not susceptible to a response from Ms. Gorcenski. Ms. Gorcenski admits that she said on social media that she learned from law enforcement (Officer Smallwood) that only one person released pepper spray at the tiki-torch rally.

58. Ms. Gorcenski agrees to stipulate to the statements included in Paragraph 58, with the exception of the word "curiously," as there is nothing in the Code of Virginia, the Virginia Constitution, or the United States Constitution that would require a separate complaint or allegation of facts to support multiple criminal charges.

59. Ms. Gorcenski is neither a magistrate, law enforcement officer, or Commonwealth's Attorney. She thus denies the allegation that she has or had the authority to personally issue felony arrest warrants, oversee the felony warrant issuance process, or otherwise ensure commencement of criminal action. See U.S. Const. Amend. IV, Code of Virginia §§ 19.2-71, 72. Ms. Gorcenski admits that on August 12 she did release information about the issuance of the warrant against Mr. Cantwell. However, Ms. Gorcenski denies that such information was "leaked," as the fact that a felony warrant or indictment issued in the ordinary course is a matter of public record. Compare Code of Virginia §19.2-54, authorizing the sealing of a search warrant, affidavit, and search warrant return upon application by the Commonwealth.

60. Mr. Goad admits he learned that Cantwell sprayed him with pepper spray from other people, to include posts on social media. Both Ms. Gorcenski and Mr. Goad deny that they "personally met," on August 12, although they did briefly encounter each other, and Ms. Gorcenski confirmed that she recognized Goad from an image she had seen of Cantwell deploying pepper spray at him. Ms. Gorcenski admits to having informed Mr. Goad at that time that she had made a complaint against Cantwell for the same act.

61. The allegation in Paragraph 61, that police recovered a can of "Sabre Red" pepper spray is irrelevant and not susceptible to a response by either Mr. Goad or Ms. Gorcenski.

62. Ms. Gorcenski denies having given Mr. Goad false information. Mr. Goad denies having traveled to Charlottesville on the basis of Ms. Gorcenski's information. He admits that he wrote a statement for police as described in Paragraph 62.

63. Mr. Goad affirms that he offered information in good faith, to the best of his knowledge, recollection, and belief, to include the statement quoted in Paragraph 63.

64. Mr. Goad is not a magistrate, law enforcement officer, or Commonwealth's Attorney. He thus denies the allegation that he has or had the authority to personally issue felony arrest warrants, oversee the felony warrant issuance process, or otherwise ensure commencement of criminal action. See U.S. Const. Amend. IV, Code of Virginia §§ 19.2-71, 72.

*August 21, 2017*

65. Ms. Gorcenski and Mr. Goad admit to having seen news of Cantwell's voluntary surrender to Lynchburg police in the wake of his now-infamous "Crying Nazi" video, including that the magistrate denied bond on the basis that Plaintiff was not at that time a resident of Virginia, and because he was accused of an offense for which there is a statutory presumption against admission to bail. See Virginia Code §19.2-120(B).

66. Neither Ms. Gorcenski nor Mr. Goad can answer to the allegations contained in Paragraph 66.

*August 31, 2017*

67. Neither Ms. Gorcenski nor Mr. Goad can answer to the allegations contained in Paragraph 67.

68. Neither Ms. Gorcenski nor Mr. Goad can answer to the allegations contained in Paragraph 68.

69. Neither Ms. Gorcenski nor Mr. Goad can answer to the allegations contained in Paragraph 69.

70. Neither Ms. Gorcenski nor Mr. Goad can answer to the allegations contained in Paragraph 70.

*November 3, 2017*

71. Mr. Goad admits to having met with Albemarle Country Prosecutor, Robert Tracci.

72. Neither Ms. Gorcenski nor Mr. Goad can answer to the allegations contained in Paragraph 72.

*November 8, 2017 – Goad Case*

73. Ms. Gorcenski and Mr. Goad are prepared to stipulate to the allegations set forth in Paragraph 73.

*November 9, 2017 – Goad Case*

74. Mr. Goad stipulates to his testimony as memorialized in the transcript of the court proceedings on November 9, 2017.[13] He denies the characterizations and implications contained in the allegations set forth in Paragraph 74. He admits that he could see from video that his glasses remained on his face during part of the video, after which point it was impossible for him to see himself clearly in the video and therefore confirm one way or another whether he remained bespectacled.

75. Mr. Goad stipulates to his testimony as memorialized in the transcript of the court proceedings on November 9, 2017. He denies the characterizations and implications contained in the allegations set forth in Paragraph 75. He affirms that multiple people deployed pepper sprays, but that he was indeed mistaken; Cantwell used aerosol pepper spray, and not gel mace.

76. Mr. Goad stipulates to his testimony as memorialized in the transcript of the court proceedings on November 9, 2017. He denies the characterizations and implications contained in the allegations set forth in Paragraph 76.

77. Mr. Goad stipulates to his testimony as memorialized in the transcript of the court proceedings on November 9, 2017. He denies the characterizations and implications contained in the allegations set forth in Paragraph 77.

78. Mr. Goad stipulates to his testimony as memorialized in the transcript of the court proceedings on November 9, 2017.

---

13  Throughout the Plaintiff's complaint the Plaintiff uses quotation marks to signify a direct quote from previous testimony but does indicate the source, date, or circumstances of the statement. Defense Counsel respectfully requests that henceforth Mr. Woodard provide citations to the transcript for the various claims and allegations set forth in those paragraphs that refer directly to testimony.

23

79. Mr. Goad stipulates to his testimony as memorialized in the transcript of the court proceedings on November 9, 2017. He denies the characterizations and implications contained in the allegations set forth in Paragraph 79. Mr. Goad was proximate to "BeanyMan" during the course of the relevant events, and was also shown video of those events; in neither case did he see any violence on the part of BeanyMan.

80. Mr. Goad stipulates to his testimony as memorialized in the transcript of the court proceedings on November 9, 2017. He denies the characterizations and implications contained in the allegations set forth in Paragraph 80.

81. Mr. Goad stipulates to his testimony as memorialized in the transcript of the court proceedings on November 9, 2017. He denies the characterizations and implications contained in the allegations set forth in Paragraph 81.

82. Mr. Goad stipulates to his testimony as memorialized in the transcript of the court proceedings on November 9, 2017. He denies the characterizations and implications contained in the allegations set forth in Paragraph 82.

83. Mr. Goad stipulates to his testimony as memorialized in the transcript of the court proceedings on November 9, 2017. He denies the characterization of that testimony contained in the allegations set forth in Paragraph 83.

84. Mr. Goad stipulates to his testimony as memorialized in the transcript of the court proceedings on November 9, 2017. He denies the characterizations and implications contained in the allegations set forth in Paragraph 84.

85. Mr. Goad stipulates to his testimony as memorialized in the transcript of the court proceedings on November 9, 2017. He denies the characterizations and implications contained in the allegations set forth in Paragraph 85.

*November 9, 2017 – Gorcenski Case*

86. Ms. Gorcenski stipulates to her testimony as memorialized in the transcript of the court proceedings on November 9, 2017.

87. Ms. Gorcenski stipulates to her testimony as memorialized in the transcript of the court proceedings on November 9, 2017, and to statements made to law enforcement; she denies that she has ever testified that she "was directly affected by the Beanyman spray" as alleged in paragraph 87 of the Complaint. See FN 13. Ms. Gorcenski denies that she was on the opposite corner of the monument, 30 feet away, "with several bodies between" herself and Cantwell..

88. Ms. Gorcenski stipulates to her testimony as memorialized in the transcript of the court proceedings on November 9, 2017 and to the substance of the statements made to law enforcement; she denies that these statements are in any manner contradictory.

89. Ms. Gorcenski stipulates to her testimony as memorialized in the transcript of the court proceedings on November 9, 2017; She denies that her testimony of November 9, 2017 is accurately represented by the allegations and characterizations set forth in Paragraph 89. In response to a question asked on direct examination by the Commonwealth's attorney about the effect of pepper spray and whether Ms. Gorcenski was completely

incapacitated, Ms. Gorcenski specifically said that she was incapacitated *over* a period of fifteen to thirty seconds and described the onset of the effects of the pepper spray. Preliminary Hearing T. 139, lines 12-20. Ms. Gorcenski objects to the characterization of the video referenced, and denies that her testimony in any manner conflicts with what is actually contained in the video.

90. Ms. Gorcenski stipulates to her testimony as memorialized in the transcript of the court proceedings on November 9, 2017. The remaining allegations and characterizations set forth in Paragraph 90 are not susceptible to a coherent response.

91. Ms. Gorcenski stipulates to her testimony as memorialized in the transcript of the court proceedings on November 9, 2017. Ms. Gorcenski denies that she "reactivated" her livestream on her phone while walking out of the crowd, or that what she endured on the evening of August 11 can fairly and accurately be characterized as an experience that she was able to leave "unmolested." The remaining allegations and characterizations set forth in Paragraph 91 regarding 21 seconds of video are not susceptible to a coherent response, given the nature of the video provided by the Plaintiff. See FN 4.

92. Ms. Gorcenski stipulates to her testimony as memorialized in the transcript of the court proceedings on November 9, 2017, and has seen no evidence to support the allegation set forth for the first time in Paragraphs 46 and 92 of the Plaintiff's Complaint that BeanyMan sprayed Cantwell.

93. Ms. Gorcenski stipulates to her testimony as memorialized in the transcript of the court proceedings on November 9, 2017. She denies that her testimony of November 9, 2017 is

accurately represented by the allegations and characterizations set forth in Paragraph 93.

*November 9, 2017 – 6:00 PM*

94. Ms. Gorcenski and Mr. Goad stipulate to the findings of the court as set forth in Paragraph 94.

95. Ms. Gorcenski and Mr. Goad stipulate to the findings of the court as set forth in Paragraph 95.

*December 7, 2017*

96. Ms. Gorcenski and Mr. Goad admit that Cantwell posted bond and was released from jail.[14] They deny the allegation as set forth in Paragraph 96 that Cantwell was improperly detained by law enforcement and the courts, and further deny that their testimony was in any manner false, fraudulent, or offered in anything less than good faith.

**Defense Response to Plaintiff's Claims for Relief**

*First Cause of Action – Malicious Prosecution*

97. Ms. Gorcenski and Mr. Goad reiterate and incorporate each and every one of the above paragraphs 1 through 96 as if fully set forth herein.

98. Ms. Gorcenski and Mr. Goad admit that the charges against Mr. Cantwell alleging the

---

14 *Durance vile* is an arcane term of art reserved for sentences of indeterminate length, usually life without parole. Ms. Gorcenski, Mr. Goad, and their counsel object to the notion that Cantwell's three and a half months in county jail rises to the level of *durance vile* or that Mr. Cantwell is or was a "political prisoner."

27

Malicious Use of a Caustic Substance in violation of Virginia Code §18.2-52 were dismissed after the preliminary hearing, but deny that the prosecutions based on their statements to law enforcement, video evidence, and Cantwell's own admissions have terminated in a manner not unfavorable to Cantwell. On November 9, 2017 the General District Court did certify that there was probable cause for felony Illegal Use of Gas in violation of Virginia Code §18.2-312, and the charge was certified to the Grand Jury. On December 4, 2017 the Plaintiff was indicted by the grand jury for two counts of Illegal Use of Gas and is currently awaiting trial in the Albemarle County Circuit Court. The representation to this Court that the criminal proceedings against Mr. Cantwell have been dismissed is materially misleading when, in fact, the criminal proceedings initiated on August 11 against Mr. Cantwell are ongoing.

99. Ms. Gorcenski and Mr. Goad deny that the criminal prosecutions were and are without probable cause. The Plaintiff's claim of malicious prosecution is contradicted by video evidence, photographic evidence, the testimony of multiple witnesses, and Cantwell's own admissions, including testimony at his bond and preliminary hearings.

100. Both Mr. Goad and Ms. Gorcenski deny the allegation set forth in Paragraph 100.

101. Plaintiff has crowd-funded monies for his defense from two explicitly white supremacist platforms, Hatreon and Goy Fund Me. Plaintiff has suffered economic losses because he is widely known to be a virulent racist who runs a call-in program, the phone number for which is 424-3-GO-NAZI. He had no reputation or good name such as would have been susceptible to injury.

28

_Second Cause of Action – Abuse of Process_

102. Ms. Gorcenski and Mr. Goad reiterate and reincorporate each and every one of the above paragraphs 1 through 101 as if fully set forth herein.

103. Ms. Gorcenski and Mr. Goad deny that their purpose in reporting the offense conduct of Christopher Cantwell was related to politics, or any improper purpose. It is noteworthy that, on August 11, Ms. Gorcenski and Mr. Goad were surrounded by several hundred torch-wielding white supremacists and neo-fascists, many of whom are very "prominent" and "influential" within white supremacist and neo-facist culture relative to Mr. Cantwell. Ms. Gorcenski and Mr. Goad only sought criminal warrants against Mr. Cantwell because, with respect to the events of August 11, he is the person whom Defendants know to have unlawfully deployed the pepper spray that injured them.

104. Ms. Gorcenski and Mr. Goad deny any untoward alteration of testimony, and deny any improper purpose motivating their testimony.

105. Ms. Gorcenski and Mr. Goad reiterate and incorporate their answer as set forth in Paragraph 101.

_Third Cause of Action – False Imprisonment_

106. Ms. Gorcenski and Mr. Goad reiterate each and every answer as if fully set forth herein.

107. Ms. Gorcenski and Mr. Goad deny making false statements or any statements motivated by malice.

108. Ms. Gorcenski and Mr. Goad reiterate their answer as set forth in Paragraph 101.

109. Paragraph 109 is not susceptible to answer.

110. - 126. The defense has no response for paragraphs 110 through 126, inasmuch as there are no allegations to which the defense can respond because the paragraphs do not exist. In the event that paragraphs 110 through 126 are merely lost, the defense will respond when the paragraphs are found or otherwise produced.

## **Affirmative Defenses**

127. The Plaintiff's Complaint fails to state any claims upon which relief can be granted.

128. The Complaint fails to state a cause of action for malicious prosecution recognized under applicable Virginia law, insomuch as two of the four felony criminal charges that resulted, at least in part, from the Defendants' respective complaints to law enforcement are still pending, and insomuch as the Albemarle County Circuit Court denied bond to Plaintiff as stated in ¶70 of the Complaint. On information and belief, on August 12, 2017 the Plaintiff was charged with Illegal Use of Gas in violation of Virginia Code § 18.2-312. The charge was certified by the General District Court to a grand jury, which on December 4, 2017 issued an indictment now pending before the Albemarle County Circuit Court. See Commonwealth of Virginia v. Christopher Cantwell, Albemarle Co. Cir. Ct. CR17000784. Also on December 4, 2017 the Commonwealth sought and obtained a direct indictment for a second charge of Illegal Use of Gas alleged to have occurred on August 11, 2017, Commonwealth of Virginia v.

30

<u>Christopher Cantwell</u>, Albemarle Co. Cir. Ct. CR17000845; both matters were scheduled to begin a jury trial on February 12, 2018. On February 9, 2018 the trial was continued and is currently awaiting a new trial date. Both Defendants Gorcenski and Goad have been subpoenaed to testify as witnesses for the Commonwealth at Plaintiff's criminal trial. As such, Plaintiff Christopher Cantwell has failed to allege sufficient facts which, even if presumed to be true, would sustain a cause of action for malicious prosecution.

129. The Complaint fails to state a cause of action against Defendants for false imprisonment recognized under Virginia law, because, *inter alia*, Virginia law does not recognize a cause of action for false imprisonment against private, non-governmental parties.

130. Plaintiff's allegations, even if assumed to be true (which Defendants do not admit, as described above), fail to allege any facts that would constitute malice on the part of Defendants, and as such the Complaint fails to allege sufficient facts to maintain a cause of action for malicious prosecution.

131. Plaintiff's claims are all barred by judicial estoppel, insomuch as:

    a) The Albemarle County General District Court found probable cause for and certified the felony criminal charge against Plaintiff for Illegal Use of Gas in violation of Virginia Code § 18.2-312;

    b) The Albemarle County Circuit Court denied Plaintiff's bond in relation to the

criminal felony charges about which he complains;

    c) An Albemarle County Magistrate found probable cause to issue warrants for Plaintiff's arrest for the criminal felony charges about which he complains.

132. Plaintiff's claims are barred by Defendants' protected right under the First Amendment to the U.S. Constitution, and their corresponding right under Article 1, Section 12 of the Constitution of Virginia, to petition the government for redress of grievances.

133. Plaintiff failed to mitigate or otherwise act to reduce his purported injuries and damages, if any, allegedly resulting from the occurrences complained of in the Complaint. Ms. Gorcenski and Mr. Goad together allege that any losses the Plaintiff claims to have suffered are the result of Plaintiff's own actions, to include appearing in a highly publicized documentary in which Cantwell claims the murder of Heather Heyer was justified and that "a lot more people are going to die before we're done here," self-publishing a video wherein the Plaintiff admits to committing acts of violence, and the continued publication of the "Radical Agenda" podcast featuring songs composed by Cantwell with titles such as "Gassing Kikes and Trannies," featuring photographs of Mr. Goad and Ms. Gorcenski. See Defense Exhibit C.

134. Plaintiff assumed the risk of his purported injuries and damages, if any, allegedly resulting from the occurrences complained of in the Complaint by, among other acts, participating in and organizing a violent white supremacist rally, admittedly deploying pepper spray into a crowd, failing to leave the area once violence erupted, and by enacting his vision of white supremacy and white nationalism calling for the

extermination and expulsion of entire groups of people.

135. Defendants at no time acted willfully or maliciously in disregard of Plaintiff's rights, and Plaintiff is therefore not entitled to punitive damages or other relief.

136. Defendants Goad and Gorcenski both acted on advice of, and/or in consultation with, the University of Virginia Police, the Albemarle County Police Department, and/or Commonwealth's Attorney for Albemarle County Robert Tracci.

137. On August 31, 2017, the Commonwealth 's Attorney for Albemarle County moved the Albemarle County General District Court to amend the Unlawful Use of Caustic Substance and Unlawful Release of Gas charges based on Mr. Cantwell's actions toward Ms. Gorcenski from "unlawful" use of caustic substance and release of gas to "malicious" use of a caustic substance  in violation of Virginia §18.2-52 and "malicious" release of gas in violation of §18.2-312. Without admitting that the Plaintiff has suffered any injury at all, the Defendants state that the amendments to the charges were both intervening causes to the injuries alleged by the Plaintiff.

138. On December 4, 2017 an Albemarle County grand jury issued an indictment for one count of felony Illegal Use of Gas alleged to have been committed on August 11, 2017. On the same day, the Commonwealth of Virginia, by and through Albemarle County Commonwealth's Attorney Robert Tracci, sought and obtained a direct indictment against for a second count of Illegal Use of Gas on August 17, 2017. Without admitting that the Plaintiff has suffered any injury at all, the Defendants state that amendments to the charges were both intervening causes to the injuries alleged by the Plaintiff.

33

139. Plaintiff's claims for relief are all barred in their entirety under the doctrine of unclean hands, insomuch as:

    a) Plaintiff admits in the Complaint to deploying pepper spray in a crowd of people, the action which formed the basis of Defendants' criminal complaints against him;

    b) The video evidence submitted by Plaintiff contains video evidence of Plaintiff committing multiple violent crimes, including the felony charge for Illegal Use of Gas that is currently awaiting trial, and numerous other assaults and batteries against various individuals;

    c) Plaintiff has attempted to materially mislead this Court by omitting from the Complaint that Plaintiff is currently awaiting a felony trial in the Albemarle County Circuit Court on the charge of Illegal Use of Gas related to the events about which Plaintiff complains;

    d) Plaintiff has further attempted to mislead this Court by submitting, as evidence attached to the Complaint, video that is clipped up into approximately 40 different short video clips, with some clips being as short as one second, rather than submitting complete, unedited video clips, presumably for the purpose of presenting the video in the light the Plaintiff perceives to be most favorable to himself;

    e) Despite the complete lack of foundation in law or fact for any of the causes of action set forth in the Complaint, Plaintiff has filed this action while his criminal case is

still pending, naming the Commonwealth's two key witnesses against him as Defendants, in an attempt to intimidate or impede Defendants from giving testimony in the criminal proceedings against Plaintiff, in violation of Title 42 of the United States Code §1985(2), Virginia Code § 18.2-460(B) and/or Virginia Code § 18.2-460(c).

140.    Plaintiff has failed to allege damages with specificity. To the extent Plaintiff has alleged damages with specificity, Defendants deny Plaintiff has sustained any damage, deny the nature and extent of the damages, if any, and deny that Defendants caused Plaintiff to sustain any damage.

141.    Plaintiff has failed to join necessary parties to this action, including, without limitation, the Commonwealth's Attorney for Albemarle County, the Albemarle County Police Department, the University of Virginia Police Department, the individual officers or officials who controlled, directed, or carried out the actions Plaintiff complains of, and/or the other individuals who committed violent crimes that night (to include Mr. Wil Atteberry, Mr. William Fears, and Mr. William Williams) and who may be necessary to the just and complete disposition of this action.

## **Defendants' Demand for Relief on Plaintiff's Complaint**

WHEREFORE, for the foregoing reasons and any others that may appear to this Court, Defendants Emily Gorcenski and Kristopher Goad respectfully request that the Plaintiff's Complaint be dismissed and Defendants be awarded their costs and attorneys' fees for this action and that the Defendants be granted such other relief as the Court deems just and

proper.

## DEFENDANTS GORCENSKI AND GOAD'S COUNTERCLAIMS AGAINST CHRISTOPHER CANTWELL

### Parties

140.   Defendant/Counter Claimant Emily Gorcenski is an individual resident of Charlottesville, Virginia.

141.   Defendant/Counter Claimant Kristopher Goad is an individual resident of Richmond, Virginia (together, with Ms. Gorcenski, "Defendants")

142.   Plaintiff/Counter Defendant Christopher Cantwell ("Mr. Cantwell" or "Plaintiff") is the individual Plaintiff in the above-captioned action.

### Facts of the Counterclaims

143.   On the night of August 11, 2017, Plaintiff deployed pepper spray into a group of people gathered in a crowd, causing physical injury and emotional injury to both Defendants. Plaintiff admits to deploying pepper spray in his Complaint (*see* Compl. ¶ 27) and the video and photographic evidence appended to the Plaintiff's Complaint shows Plaintiff deploying pepper spray in the area where both Defendants were present.

144.   Plaintiff has admitted in various other forums that he deployed pepper spray in a crowded area in the immediate vicinity of Defendants. For example, in one blog post

Plaintiff states:

> "*I did pepper spray one person, using the pepper spray that I always keep on my keychain. I made no secret of this, in part because I was certain my actions were lawful. I even made one journalist's photo of the spraying my Facebook cover photo.*"

In the photo mentioned by Plaintiff, Defendant Goad can be seen clearly in the immediate vicinity of Plaintiff's spray. <u>See</u> Compl. Ex. H.

145. The video evidence attached to the Complaint demonstrates clearly that Plaintiff's deployment of pepper spray was unjustified, and was done negligently, willfully, or with reckless disregard for the safety of others in the area.

146. The video evidence appended to the Complaint also shows that, on the night of August 11, on numerous occasions, Plaintiff made menacing, threatening, and/or frightening gestures and acts (including brandishing of pepper spray) combined with threatening comments, towards a number of people, including both Ms. Gorcenski and Mr. Goad, which gestures and comments put both Defendants in imminent fear of bodily harm. <u>See</u>, <u>e.g.</u>, Compl. Exs. MP42, MP48.

147. The video evidence appended to the Complaint shows that, on the night of August 11, on numerous occasions, Plaintiff intentionally made physical contact with and caused actual physical harm to numerous individuals, including Ms. Gorcenski and Mr. Goad, by, *inter alia*, deploying pepper spray that made contact with both Defendants, and hitting, shoving, slapping at, and/or intentionally coming into other physical contact with both Defendants. <u>See</u>, <u>e.g.</u>, Compl. Exs. MP42, MP48

148. In a podcast published on October 19, 2017[15], Plaintiff made statements again admitting to the intentional physical contact and physical injury he perpetrated against Defendants and other counter-protesters on the evening of August 11. In statements where the context made clear such were directed towards and intended to be heard by Defendants for the purpose of threatening, harassing, and/or intimidating them, Plaintiff stated[16]:

> *"I let my anger build up. Put me anywhere and I will improve because I'm a white man and not some kike fucking degenerate. Sorry for the f. Lock me up it's not bad, I can handle I wasn't crying because I was afraid of jail.* ***I was brought to tears by what's going to happen to my enemies and the fact that I'm going to do it to them***. *I want to be a good person, I don't want to hate. I want to love people, I want peace and nonviolence, but you can tell my defensive instinct. If you attack the people and things I care most about and I feel the monster inside me as the Saxon begins to hate and I become afraid of myself. Do you know the last time I actually hurt somebody was? Before August 11th? Because I don't. It's been years.* ***What scares the shit out of me is how much I enjoyed physically removing all your fag ass friends***." (emphasis added)

See Defense Exhibit E, "LIVE from Seg! Ep. 011 - Heteronormative" published on October 19, 2017 by the Plaintiff and his agent Jared Howe, https://radicalagenda.com/2017/10/19/live-seg-ep-011-heteronormative/, accessed on February 9, 2018.

149. In the months since August 11, Plaintiff has engaged in a sustained and systematic campaign of harassment and abuse of both Defendants over the internet, through harassing statements and images made via podcasts, his blog, social media outlets, and

---

15  On information and belief, Plaintiff was incarcerated at the Albemarle County Regional Jail when he recorded this podcast. During the time when he was incarcerated, Plaintiff recorded podcast episodes via telephone from the jail, which were published to his website under the title "Live from the Inside."

16  Although Ms. Gorcenski, Mr. Goad, and their counsel would prefer not to reproduce or amplify the violence of Plaintiff's bigoted language, in the interest of maximum transparency Plaintiff's language will be reproduced herein verbatim when necessary.

other online outlets, each of which was knowingly made with the intent to place Defendants in reasonable fear of death or bodily injury. These statements and images include without limitation the following:

a) In blog posts, podcasts, media interviews, and through other media, Plaintiff has repeatedly referred to, and continues to refer to Ms. Gorcenski using vulgar, violent, language that demonstrates a vitriolic, derogatory animus towards her and other transgender people, including referring to Ms. Gorcenski as a "tranny lunatic", and "that tranny fucking fanatic, that suicide waiting to happen."

b) On November 10, 2017, the webmaster for Plaintiff's website (or another person acting at Plaintiff's direction or under his supervision) posted a video of Mr. Goad to Mr. Cantwell's Youtube channel and blog along with Mr. Goad's name, noting that Mr. Goad was "Cantwell's accuser", for the apparent purpose of encouraging Cantwell's audience members and followers to harass, threaten, and intimidate Mr. Goad.

c) On a blog post posted to his blog dated August 22, 2017, Plaintiff allowed a commenter to post a comment referring to Ms. Gorcenski by name, in which the commenter called her "a tranny faggot (mentally ill by definition)", posted her home address, and stated that "Someone should go talk to it", in an effort to incite others to harass, threaten, intimidate and/or physically harm Ms. Gorcenski's person or property. Plaintiff has allowed the threatening comment to remain on his blog at least up through the date of this filing.

d) On a blog post dated December 10, 2017, Plaintiff published a song to his blog, together with photos of Mr. Goad and Ms. Gorcenski, titled "Gassing Kikes and Trannies" (Defense Exhibit C), in an effort to harass, threaten, or intimidate and/or encourage others to harass threaten, or intimidate Mr. Goad and Ms. Gorcenski. The song included the following lyrics:

> *"A tranny is a fuckin mental patient*
> *A Jew is born to parasite to whites*
> *And if you see the both of them a droppin*
> *You know it's time to really celebrate*
>
> *Well we're gassing kikes and trannies*
> *Make the God Emperor proud*
> *We can laugh with glee, while she stands and pees*
> *In a caustic OC cloud*
> *....*
> *You might say we're violating rights now*
> *But trannies aren't human after all*
> *Jews are victims even if you don't spray*
> *So might as well have fun and gas them all*
>
> *Oh we're gassing kikes and trannies*
> *Cause we'll be prosecuted even if we don't*
> *They always lie, so they deserve to die*
> *The least we can do is make their eyes hurt"*

e) Plaintiff published to social media two drawings depicting apparent caricatures of anti-racist protesters, including one person who was clearly intended to represent Ms. Gorcenski, being run over and dismembered by a Dodge Challenger, in apparent homage and twisted, violent reverence to the white supremacist terrorist car attack that took place in Charlottesville, VA on August 12, 2017, murdering Heather Heyer and leaving dozens severely wounded. Defense Exhibits F, G. In the drawings a cartoon frog appears to murder counter protester caricatures out the car window with a large firearm. A caricature of Ms. Gorcenski pleading to

40

livestream viewers is depicted being run over by the car. Defense Exhibit F.

These terrifying statements, coupled with the action of Plaintiff having already pepper sprayed and assaulted Defendants on August 11, were knowingly made with the intent to place Defendants in reasonable fear of death or bodily injury.

150. On October 8, 2017, Ms. Gorcenski was the victim of what is known as a "swatting" attack—a harassment and/or attempted murder tactic where the harasser makes a false police report, usually of an urgent or violent crime, with the intention of luring law enforcement or SWAT to an address to harass, intimidate, injure, or murder the targeted individual. In this instance, an unknown individual called the Charlottesville Police Department and falsely reported a violent domestic disturbance in progress at Ms. Gorcenksi's house, prompting an urgent police response. On information and belief, the person instigating the "swatting" attempt was motivated by Cantwell's online harassment and incitement of his followers to violence against Ms. Gorcenski.

151. Plaintiff has repeatedly made false allegations against Ms. Gorcenski and Mr. Goad in his blog, in his podcast, on social media, in the Complaint, and in court throughout his criminal case proceedings, falsely accusing Defendants of committing perjury and lying. The Plaintiff has engaged in this conduct for the purpose of inciting violence, harassment, and/or intimidating conduct against Mr. Goad and Ms. Gorcenski.

152. As a result of such conduct, Defendants have been placed in reasonable fear of death, criminal sexual assault, or bodily injury to themselves or to their family members or household members.

153.   Plaintiffs have incurred damages as a result of Plaintiff's harassing conduct,   including the costs of emotional damages and the costs of taking reasonable increased  security measures to secure their persons and property from harm.

154.   Plaintiff now seeks to enlist this Court in his continued campaign of unlawful harassment against Defendants by filing the Complaint in this Court, notwithstanding the fact that the claims made against Defendants are utterly without merit. Plaintiff initiated these meritless proceedings while there are active criminal proceedings pending against him in Albemarle County Circuit Court for the unlawful use of gas. Ms. Gorcenski and Mr. Goad have both been subpoenaed to testify against Plaintiff as witnesses for the Commonwealth in that criminal case. Plaintiff's intent in initiating a frivolous lawsuit against Defendants when they are scheduled to testify against him in a criminal trial is to harass, threaten, or intimidate Defendants from testifying in the trial against him.

### **Defendants' Counterclaim Causes of Action**

*First Cause of Action – Stalking*

155.   Defendants/Counterclaimants allege and incorporate all allegations and statements of fact set forth in response to the Plaintiff's complaint and those contained in paragraphs 143 through 154 of the Defendants' counterclaim above.

156.   By his conduct in having engaged and continuing to engage in the pattern of harassing conduct described above (including, without limitation, the filing of the Complaint),

Plaintiff and/or others working on his behalf, on more than one occasion has engaged and continues to engage in conduct directed at Defendants with the intent to place, or when he knows or reasonably should know that the conduct places Defendants in reasonable fear of death, criminal sexual assault, or bodily injury to Defendants or to their other families or household members in violation of Virginia Code § 18.2-60.3.

157.    Defendants have incurred actual physical and emotional damages as a result of Plaintiff's stalking, and are entitled to an injunction, and to compensatory and punitive damages pursuant to Virginia Code § 8.01-42.3.

_Second Cause of Action – Unlawful Use of Names & Photographs_

158.    Defendants/Counterclaimants allege and incorporate all allegations and statements of fact set forth in response to the Plaintiff's complaint and those contained in paragraphs 143 through 154 of the Defendants' counterclaim above.

159.    By his conduct in having engaged and continuing to engage in the pattern of harassing conduct described above, Plaintiff and/or others working on his behalf, has knowingly published and otherwise used the names, photographs, and likenesses of and references to Ms. Gorcenski and Mr. Goad for the purposes of trade. This publication and use occurred without the written consent of either Ms. Gorcenski or Mr. Goad and in violation of Virginia Code § 8.01-40.

160.    Defendants have incurred actual damages as a result of Plaintiff's unlawful use of their names, pictures, and likenesses and are entitled to a restraining order as well as

compensatory and punitive damages pursuant to Virginia Code § 8.01-40.

*Third Cause of Action – Harassment & Violence Motivated by Cantwell's Racial, Religious, & Ethnic Animus toward Ms. Gorcenski and Mr. Goad*

161. Defendants/Counterclaimants allege and incorporate all allegations and statements of fact set forth in response to the Plaintiff's complaint and those contained in paragraphs 143 through 154 of the Defendants' counterclaim above.

162. By his conduct in having engaged in and continuing to engage in the pattern of conduct described above (including, without limitation, the filing of the Complaint), Plaintiff and/or others working on his behalf, has targeted Ms. Gorcenski and Mr. Goad for the violations of law alleged in the previously stated causes of action based on the Defendants' racial, religious, and ethnic backgrounds. An admitted white nationalist, the Plaintiff was motivated to engage in this activity by his own racial, religious, ethnic animus.

163. Defendants have incurred and continue to incur actual damages as a result of being targeted by the Plaintiff and are entitled to an injunction, compensatory damages, punitive damages, and reasonable attorney fees and costs pursuant to Virginia Code § 8.01-42.1.

*Fourth Cause of Action - Conspiracy to Interfere with Civil Rights: Obstruction of Justice, Witness Intimidation*

164. Defendants/Counterclaimants allege and incorporate all allegations and statements of fact set forth in response to the Plaintiff's complaint and those contained in paragraphs 1 through 15 of the Defendants' counterclaim above.

44

165. By his conduct in having engaged in and continuing to engage in the pattern of harassing, intimidating, and threatening conduct described above (including, without limitation, the filing of the Complaint), Plaintiff and/or others working on his behalf, has conspired with one or more others to deter, by force, intimidation, or threat, Mr. Goad and Ms. Gorcenski from appearing in a court of the United States from attending such court, or from testifying to a matter pending therein, freely, fully, and truthfully, in violation of 42 U.S.C. § 1985(2).

166. Defendants have incurred and continue to incur actual damages as a result of being targeted by the Plaintiff for witness intimidation, and are entitled to an injunction, compensatory damages, punitive damages, and reasonable attorney fees and costs pursuant to 42 U.S.C. § 1985.

*Fifth Cause of Action - Conspiracy to Interfere with Civil Rights: Depriving Persons of Rights or Privileges*

167. Defendants/Counterclaimants allege and incorporate all allegations and statements of fact set forth in response to the Plaintiff's complaint and those contained in paragraphs 143 through 154 of the Defendants' counterclaim above.

168. By his conduct in having engaged in and continuing to engage in the pattern of harassing, intimidating, and threatening conduct described above (including, without limitation, the filing of the Complaint), Plaintiff and/or others working on his behalf, has conspired with one or more others for the purpose of depriving, either directly or indirectly, Mr. Goad and Ms. Gorcenski of the equal protection of the laws, or of equal privileges and immunities under the laws, and Mr. Goad and Ms. Gorcenski have, by

45

such conspiracy, been injured in their persons and property, and deprived of exercising the rights and privileges bestowed to them as citizens of the United States, in violation of 42 U.S.C. § 1985(3).

169.   Defendants have incurred and continue to incur actual damages as a result of being targeted by the Plaintiff for deprivation of rights and privileges, and are entitled to an injunction, compensatory damages, punitive damages, and reasonable attorney fees and costs pursuant to 42 U.S.C. § 1985.

*Sixth Cause of Action - Abuse of Process*

170.   Defendants/Counterclaimants allege and incorporate all allegations and statements of fact set forth in response to the Plaintiff's complaint and those contained in paragraphs 143 through 154 of the Defendants' counterclaim above

171.   By his conduct in having filed the Complaint in this action and having caused the Complaint and summons to be served upon Defendants, despite the Complaint's utter lack of basis in law, and by including materially misleading statements in the Complaint, Plaintiff has abused the process of this Court for the improper purpose of threatening, harassing, and intimidating Defendants to deter them from testifying in the criminal case against Plaintiff.

172.   Defendants have incurred and continue to incur actual damages as a result of being targeted by the Plaintiff for deprivation of rights and privileges, and are entitled to an injunction, compensatory damages, punitive damages, and reasonable attorney fees

and costs pursuant to 42 U.S.C. § 1985.

*Seventh Cause of Action – Copyright Infringement*

173.     Defendants/Counterclaimants allege and incorporate all allegations and statements of fact set forth in response to the Plaintiff's complaint and those contained in paragraphs 143 through 154 of the Defendants' counterclaim above

174.     Plaintiff published an image of Ms. Gorcenski to his blog on December 10, 2017. *See* Defense Exhibit C. This image was used and published without Ms. Gorcenski's consent. As the creator of the photo used on the Plaintiff's blog, Ms. Gorcenski is the sole copyright owner. *See* Defense Exhibit H, original photograph by Emily Gorcenski. *See also*, 17 U.S.C.A. § 501, As the owner of the work in question, Ms. Gorcenski is entitled to an injunction, as well as to recovery of actual damages and profits earned by Plaintiff from the infringement, regardless of whether the infringement was intentional or willful. 17 U.S.C.A. §§ 502, 504.

175.     Ms. Gorcenski has incurred and continues to incur damages as the result of Plaintiff's unauthorized use of Ms. Gorcenski's work, and is entitled to recover actual damages and all profits earned by the Plaintiff from the infringement.

**Demand for Relief on Defendants' Counterclaims**

WHEREFORE, for the foregoing reasons and all others that may appear to this Court, Defendants/Counterclaimants Emily Gorcenski and Kristopher Goad respectfully request the following relief:

47

176. That this Court issue an injunction enjoining Mr. Cantwell from continuing the pattern of harassment, intimidation, abusive, and threatening conduct described above towards either Mr. Goad or Ms. Gorcenski, and enjoining him from engaging in any conduct that would constitute further violation of the laws referenced above or violation or depravation of Mr. Goad and Ms. Gorcenski's rights;

177. That Defendant/Counterclaimant Ms. Gorcenski be awarded compensatory damages in the amount of $150,000, or in an amount to be determined at trial;

178. That Defendant/Counterclaimant Mr. Goad be awarded compensatory damages in the amount of $150,000, or in an amount to be determined at trial;

179. That Defendant/Counterclaimant Ms. Gorcenski be awarded punitive damages in the amount to $350,000;

180. That Defendant/Counterclaimant Mr. Goad be awarded punitive damages in the amount $350,000;

181. That Defendants/Counterclaimants be awarded their costs and attorneys' fees for this action in bringing these counterclaims; and

182. That this Court grant the Defendants/Counterclaimants such other relief as the Court deems just and proper.

Respectfully submitted,
EMILY GORCENSKI
KRISTOPHER GOAD
By Counsel

48

Dated: February 11, 2018

/s/
Sandra C. Freeman, Esq.
Virginia State Bar No. 78499
5023 W. 120th Avenue, #280
Broomfield, Colorado 80020
sandra.c.freeman@protonmail.com
720-593-9004


/s/ Pamela Starsia
Pamela Starsia, Esq.
Virginia State Bar No. 88657[17]
3006 Maplelawn Circle
Austin, Texas  78723
pamstarsia@starsialaw.com
518-441-2695


/s/ Moira Meltzer-Cohen
Moira Meltzer-Cohen, Esq.[18]
277 Broadway, Suite 1501
New York, New York  10007
meltzercohen@gmail.com
718-450-3035


Counsel for Emily Gorcenski and Kristopher Goad

---

17  Ms. Starsia is licensed to practice in Virginia and currently pending admission to practice before the District Court for the Western District of Virginia. She is scheduled to be sworn in on February 21, 2018.

18  Ms. Meltzer-Cohen is licensed to practice in the state of New York and before the United States District Courts for District of North Dakota, the Northern, Eastern, Western, and Southern Districts of New York. Sandra Freeman will be filing a motion for Ms. Meltzer-Cohen to be admitted to practice *pro hac vice* before the Western District in the above-captioned matter.

49

<u>CERTIFICATE OF SERVICE</u>

I, Sandra C. Freeman, hereby certify that I served a true and correct copy of the foregoing document upon the person(s) herein next designated, on the date shown below, by electronically delivering the same at his/her/their last known address(es), to wit:

ELMER WOODARD, Attorney for Christopher Cantwell
5661 US Highway 29
Blairs, Virginia  24527
434-Triangle 8-3422
434-878-3422
isuecrooks@comcast.net


Dated February 11, 2018.            /s/ *Sandra C. Freeman* _____
                                    Sandra C. Freeman