IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| Christopher Cantwell, | ) | |
| Plaintiff, | ) | Civil Action No. 3:17Cv000089 |
| | ) | |
| v. | ) | Judge: Norman K. Moon |
| | ) | |
| | ) | |
| Emily Gorcenski et al. | ) | |
| Defendant. | ) | |

# Memorandum in Support of 12(b)6 Motion to Dismiss Counterclaim

In their counterclaim, Defendants state no claims upon which relief can be granted.

I.  Standard of Review

In order to survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain facts sufficient "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." When considering a Rule 12(b)(6) motion, a court must accept all factual allegations in the complaint as true, and must draw all reasonable inferences in favor of the plaintiff. However, a court is not required to "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." Caner  v.

<u>Autry</u>, 16 F.Supp.3d 689 (W.D. VA, Lynchburg Division, 2014). As set forth below

Defendants' counterclaim falls far below this standard.

## II.     The Counterclaim does not state a claim for Stalking.

Va. Code Sec 8.01-42.3 establishes a cause of action for a violation of Va. Code 18.260.3

60.3. The former specifies that a victim may file a civil action for a violation of the latter.

Accordingly, a civil claim must allege facts to support the elements of Va. Code 18.260.3. The

Supreme Court has explained that the crime comprises three elements:

> (1) the defendant directed his ... conduct toward the victim on at least two occasions; (2) the defendant intended to cause fear or knew or should have known that his ... conduct would cause fear; and (3) the defendant's conduct caused the victim "to experience reasonable fear of death, criminal sexual assault, or bodily injury."

<u>Stephens v. Rose</u>, 288 Va. 150, 155, 762 S.E.2d 758, 761 (2014).

### 1.  Conduct by defendant directed toward the victims on at least two occasions.

**(a) Conduct.**

The first requirement of the first element is "conduct" by the defendant.   Mere words are

insufficient.  "… [T]the statute is tailored so that it does not substantially infringe upon speech

protected by the First Amendment. It regulates the manner in which individuals interrelate with

one another and prohibits individuals from communicating with others in a way that is intended or

known to cause fear of physical harm. Code § 18.2-60.3 is not directed primarily at speech nor

does it overreach to prevent contact, speech or otherwise, between quarreling lovers as appellant

suggests. Indeed, the statute permits all communications between individuals that are conducted

in a time, place and manner that do not intentionally or knowingly cause the receiver of the

message reasonably to fear for his or her physical safety. The statute's legitimate sweep does not portend any substantial burden on constitutionally protected conduct, and we find no realistic danger that the statute will compromise the First Amendment rights of parties not before the Court."  Parker v. Com., 485 S.E.2d 150 24 Va.App. 681 (1997).

Accordingly, the court in Parker pointed out:  "Turning to appellant's conduct, we hold that Code § 18.2-60.3 was not overbroad as applied to him. Contrary to his assertion, appellant was not convicted of stalking solely because of the seven sentences he uttered on March 5 and March 8. He violated the stalking statute because he made a barrage of calls to a person with whom he had an abusive relationship with the knowledge that the calls caused the victim to reasonably fear bodily injury at his hands. Appellant's intimidating phone contact and veiled threats rendered his interaction with the victim from March 5 to March 11 without constitutional protection and violative of Code § 18.2-60.3."

Similarly, in Banks v. Commonwealth, it was not the Defendant's words that stalked, but his attempted renewal of a relationship after 15 years by locating her, leaving her letters at her workplace, being in the parking lot at work when the victim left, waiting a year and then grabbing her car door as she was trying to enter it, and then years later showing up again in the parking lot asking her to be his "doctor." Banks v. Com., 67 Va.App. 273 795 S.E.2d 908 (Va. Ct. App. 2017).

In Jordan v. Com., Record No. 2689-09-2, Va. Ct App. 2011 (Unpublished), Jordan called the victim at work asking her to meet him somewhere.  She refused and went home, where Defendant was waiting; he reached in the car door and groped her. Some months later, Jordan banged on the door to her home, was following her as she drove, and calling her at work.  See

also <u>Peters v. Com</u>, Record No. 1888-15-1 Va. Ct. App. 2016 (Unpublished)(100s of text messaged and hundreds of phone calls after relationship ended, house damaged and followed by defendant); <u>Frazier v. Com</u>., Record No. 0725-06-2. Va. Ct. App.  2007 (Unpublished) (accosting in various places, driving around victim's neighborhood).

In this case, Defendants assert that Plaintiff pepper sprayed *someone else* "in an area where the Defendants were present." Para. 143.   They assert that at the same time, he made "menacing, threatening, and/or frightening" gestures that night at the Jefferson monument, at same time, and once again, in their presence. There is no allegation of what these menacing, threatening or frightening gestures were, nor whether any Defendant knew of them at the time. One would think that a victim who was menaced, threatened, or frightened would be able to detail which gestures did so, and which ones were which.  It may well be that these gestures were not within the personal knowledge of the Defendants, but conjured only after "reviewing videos."  Defendants then allege that Plaintiff talked about his defensive use of pepper spray on a blog, Para. 144, and on a podcast (Para. 148), and on other media (Para. 149).  Plaintiffs allege no more actual ***conduct*** other than that occurring on August 11, 2017, other than citing a "swatting" incident made by unknown persons while Defendant was in jail. Accordingly, they have not alleged conduct on at least two occasions, and have not stated a claim.

### (b) Conduct directed at the victim.

The Defendants admit that the words about which they complain were on "blog posts, podcasts, media interviews, and "other media."  Nowhere do they allege that the words were directed at them, nor even whether either Defendant Gorcenski or Goad ever knew of the words before their attorneys filed their counterclaim. It may well be that Defendants, or their agents, sought out the words and found them on Cantwell's own two blogs, on his own podcast, or on

other internet sites. Alleged victims, or their attorneys, gathering information from the internet is hardly conduct by Cantwell directed at the victims. Defendants have not alleged any facts to support that any of these words were directed at them, such as letters, phone calls, postings on their own Facebook or twitter accounts, and the like, and accordingly have not state a claim for conduct directed at the victim.

### (2) Intended to cause fear or reasonably should have known so.

Defendants have alleged no facts to support any inference that Cantwell intended to cause fear, or reasonably should have known so, by defensively pepper spraying someone else in Defendants' presence. Plaintiff has admitted that he deployed pepper spray in response to an immediate threat of harm to his person, to wit, Beanyman.

Va. Code Sec. 18.2-312, illegal use of tear gas, provides:

Nothing herein contained shall prevent the use of tear gas or other gases by police officers or other peace officers in the proper performance of their duties, or by any person or persons in the protection of person, life or property.

Furthermore, Cantwell had the right to arm himself under Gilbert v. Com., 506 S.E.2d 543, 28 Va.App. 466 (Va. App., 1998):

…We note the "fundamental doctrine that a person who has been threatened with death or serious bodily harm and has reasonable grounds to believe that such threats will be carried into execution, has the right to arm himself [or herself] in order to combat such an emergency." *Bevley v. Commonwealth,* 185 Va. 210, 215, 38 S.E.2d 331, 333 (1946). *See also Pike v. Commonwealth,* 24 Va.App. 373, 375, 482 S.E.2d 839, 840 (1997) (noting that "[t]he common law in this state has long recognized the right of a landowner to order a trespasser to leave, and if the trespasser refuses to go, to employ proper force to expel him").

Exercising one's right to self-defense is just that; coupling it with a requirement that it not frighten anyone else makes the very concept of self-defense illusory.

Defendants have set forth no facts supporting their claims that Plaintiff's comments and actions on the internet were intended to cause fear, or that he reasonably should have known so. Parody songs and cartoons meant to cause persons to laugh are not reasonably calculated to induce fear in anyone, but rather amusement and laughter. Elmer Fudd's shotgun will NOT backfire in his face when Bugs Bunny puts his fingers in the barrel.

### (3) Caused victim to experience reasonable fear of death, criminal sexual assault, or bodily injury

A victim's fear must be reasonable.

While Defendants have claimed much fear, they have alleged no facts that their fear was reasonable. Fearing Plaintiff while he is in jail is not reasonable. Fearing a cartoon is not reasonable. Fearing parody Christmas songs is not reasonable. Fearing Plaintiff because of a comment to his blog by another person is not reasonable. Fearing Plaintiff because someone else attacked Plaintiff and got pepper sprayed is not reasonable. "Reasonable fear" is alien to a person who thinks that Republicans will assassinate him while fueling his vehicle, or a person who misidentifies a fat guy with a beard as a skinny guy with no hair. Curiously, neither Plaintiff has even alleged fear enough to justify seeking a protective order after Plaintiff was released from jail on December 7, let alone the granting of one. Defendants' conclusory allegations of fear of bodily injury are insufficient to state a claim for stalking.

Defendants' allegations of stalking are conclusory allegations, unsupported by fact. The claim should be dismissed.

## III.   The Counterclaim does not state a claim for Unlawful use of Name and Photographs.

Code § 8.01-40(A) provides that if a person's "name, portrait, or picture" is used for "advertising purposes or for the purposes of trade" without written consent, the person may maintain a suit in equity to prevent the use, and may sue and recover damages for any injuries resulting from such use.

The Virginia and New York statutes are similar, and thus New York law on the matter is instructive. Town & Country Properties, Inc. v. Riggins, 457 S.E.2d 356, 249 Va. 387 (Va., 1995).

In Flores v. Mosler Safe Co., 7 N.Y.2d 276, 196 N.Y.S.2d 975, 164 N.E.2d 853 (N.Y., 1959), Flores sued because Mosler used his name and photograph in an advertisement.  Mosler defended on many grounds, including that the use "would not in any way draw trade to its firm. The court disagreed: "Such a contention might be valid if the only prohibited use was one for 'purposes of trade.'"

Here, neither Defendant has plead any facts to support its allegation that the use was intended or even had the effect of drawing trade to the Plaintiff. There is no allegation that his revenues nor even web traffic increased, nor that he realized any other commercial benefit.

Plaintiff's use appears to be more in line with *Messenger v. Gruner + Jahr Printing and Publishing,* 94 N.Y.2d 436, 706 N.Y.S.2d 52, 727 N.E.2d 549 (2000), the New York Court of Appeals reiterated its long-standing position that the right of privacy does not extend "to reports of newsworthy events or matters of public interest." *Id.* at 552. So long as there is a "real

relationship between" the use of a person's name or image and the report, and the report is not merely "an advertisement in disguise," there is no misappropriation. *Id.* at 554.

Based on <u>Messenger</u>, the Virginia Supreme Court dismissed a claim in   WJAL-TV v. Levin, 564 S.E.2d 383264 Va. 140, 2002.  There, WJAL ran a sexual abuse "dirty doctor" expose on Dr. Levin, who ran a clinic wherein sciatica was treated by internal vaginal massage. Levin sued, winning $2 million for defamation and $575,000 for the use of name and image. WJAL appealed.  The Virginia Supreme Court reversed the $575,000 jury award on the illegal use of name, finding that a doctor accused of sexually abusing his patients is a matter of public interest and a newsworthy event.

Moreover, the public has an interest in knowing about persons who is a revolutionary communist, fears that Republicans intend to assassinate him, cannot identify assailants just a few feet away, and will make false statements to law enforcement to attack those who disagree with them.

Because the Complaint alleges no facts indicating that the use was for advertising nor trade, it should be dismissed.


# IV.   The Counterclaim does not state a claim for a violation of Va. Code Sec. 8.01-42.1.

Va. Code Sec. 8.01-42.1 provides:

A. An action for injunctive relief or civil damages, or both, shall lie for any person who is subjected to acts of (i) intimidation or harassment or (ii) violence directed against his person; or (iii) vandalism directed against his real or personal property, where such acts are motivated by racial, religious, or ethnic animosity.

Defendants have not alleged any vandalism to property. Further, they have not alleged any violence directed at *their* persons. Paragraphs 143 and 144 merely allege that Plaintiff used pepper spray in their general presence, not specifically at them. Nowhere does the Complaint set forth any facts supporting any claim that the spraying was motivated by racial animosity, religious animosity, nor ethnic animosity. Like Plaintiff, both Defendants appear to be white Europeans. Like plaintiff, their appearances do not indicate any religion, nor any particular religion. One cannot discriminate against a minority without *some* indication that the alleged victim is actually a member of a minority, especially when in a crowd where both sides are expressing their views pursuant to the rights guaranteed them by the First Amendment. In short, Defendant's claims may only be those of "intimidation or harassment."

Like the stalking statute, Va. Code 8.01-42.1 is self-limited to "acts." Expressing oneself under the First Amendment to the United States Constitution, whether in a newspaper, by holding a sign, by shouting in a crowd, or in a blog on the internet are not an "act" as contemplated by the statute, no matter how much the listener may claim "intimidation" or "harassment." Indeed such utterly subjective standards may render this statute constitutionally overbroad, as every unagreed-to word uttered by a member of a different racial, religious, or ethnic group than the hearer would create a civil cause of action, as would any "act" of disagreement, such as walking out of a human sacrifice "religious" service. "The Constitution gives significant protection from overbroad laws that chill speech within the First Amendment's vast and privileged sphere." *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 244 (2002). "[A] law may be invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 473 (2010) (internal quotation marks omitted); *see also United States v.*

*Williams*, 553 U.S. 285, 292 (2008) ("[S]tatute's overbreadth must be *substantial*, not only in an absolute sense, but also relative to the statute's plainly legitimate sweep.") (Emphasis in original). United States v. Battle, (4th Cir., 2017).

Once again, Defendants' allegations are that Plaintiff put words on the internet that they did not like. They have alleged no facts indicating that these were directed at them because of racial, religious, nor ethnic grounds. They have offered no allegation that any of the words were motivated by anything other than Plaintiff's perfectly reasonable discomfiture with losing his liberty for 107 days in jail because of the false sworn testimony of the Defendants. This cause of action should be dismissed.

# V.     The Counterclaim does not state a claim for Conspiracy to Interfere with Civil Rights/Obstruction/Witness Intimidation.

42 U.S.C. 1985(2) says:

> **(2) OBSTRUCTING JUSTICE; INTIMIDATING PARTY, WITNESS, OR JUROR**
> If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to

injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws

"Section 1985(2) prohibits obstructing justice in federal or state court, especially intimidating witnesses. *Id*.; s*ee Haddle v. Garrison*, 525 U.S. 121, 125 (1998) ("The gist of the wrong at which § 1985(2) is directed is . . . [the] intimidation or retaliation against witnesses in federal-court proceedings.")." Hunter v. Holsinger, (W.D. Va., 2016)

The second clause of section 1985(2) applies to "conspiracies to obstruct the course of justice in state courts" or, more specifically, joint efforts to prevent equal access to state judicial proceedings. *Kush v. Rutledge,* 460 U.S. 719, 725, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983); *see also Lewis v. Green,* 629 F.Supp. 546, 550 (D.D.C. 1986. *See Haddle v. Garrison,* 525 U.S. 121, 125, 119 S.Ct. 489, 142 L.Ed.2d 502 (1998) ("The gist of the wrong at which § 1985(2) is directed is ... [the] intimidation or retaliation against witnesses in federal-court proceedings.")." Shooting Point, L.L.C. v. Cumming, 238 F.Supp.2d 729 (E.D. Va., 2002).

Nowhere does the complaint allege that either Defendant actually has been obstructed from "appearing" in any court. As set forth in the Complaint, both Goad and Gorcenski met with Albemarle Commonwealth's attorney on or about November 5, 2017, presumably in his offices at the Albemarle County courthouse, as set forth in the Complaint. On November 9, 2017, they both came to the Albemarle General District Court and testified, resulting in the dismissal of two charges. Other than exercising his rights to sue under Virginia and Federal law, the Counterclaim sets forth no facts supporting any act, nor conspiracy, to deny Defendants access to any court, as shown by the fact that each has filed a the Counterclaim and are presumably prepared to come to court to testify in support of their claims.

As in <u>Shooting Point</u>, nowhere do Defendants they allege any facts to support a claim of interference with access to any state nor federal courts, let alone by more than one person. This cause of action should be dismissed.

## VI.   The Counterclaim does not state a claim for Conspiracy to Deprive Defendants of any other civil rights.

The 4th Circuit set for the law concerning 1985(3) conspiracies in <u>Simmons v. Poe</u>, 47 F.3d 1370 (C.A.4 (Va.), 1995):

Section 1985 of Title 42 of the United States Code provides:

> If two or more persons ... conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws ... whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. Sec. 1985(3).

The law is well settled that to establish a sufficient cause of action for "conspiracy to deny equal protection of the laws" under section 1985(3), a plaintiff must prove: (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy . <u>Buschi v. Kirven, 775 F.2d 1240</u>, 1257 (4th Cir.1985); see also Griffin v. Breckenridge, <u>403 U.S. 88</u>, 102-03, <u>91 S.Ct. 1790</u>, 1798-99, <u>29 L.Ed.2d 338 (1971)</u>. Moreover, the law is well settled that to prove a section 1985 "conspiracy," a claimant must show an agreement or a "meeting of the minds" by defendants to violate the claimant's constitutional rights. See <u>Caldeira v. County of Kauai, 866 F.2d 1175</u>, 1181 (9th Cir.1989), cert. denied, <u>493 U.S. 817</u>, <u>110 S.Ct. 69</u>, <u>107 L.Ed.2d 36 (1989)</u>; see also <u>Lenard v. Argento, 699 F.2d 874</u>, 882-83 (7th Cir.1983), cert. denied, <u>464 U.S. 815</u>, <u>104</u>

S.Ct. 69, 78 L.Ed.2d 84 (1983) (a civil conspiracy under section 1985 is a combination of two or more persons acting in concert to commit an unlawful act, the principal element of which is an agreement or single plan between the parties to inflict a wrong against or injury upon another).

This Court, under that standard, has rarely, if ever, found that a plaintiff has set forth sufficient facts to establish a section 1985conspiracy, such that the claim can withstand a summary judgment motion. Indeed, we have specifically rejected section 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts. In Gooden v. Howard County, 954 F.2d 960 (4th Cir.1992) (en banc), for example, we rejected a section 1985 claim brought by an African-American apartment tenant against police officers who had responded to a report of a disturbance at an apartment complex, and had subsequently taken the tenant for an emergency psychiatric evaluation under the mistaken assumption that she was mentally ill. In dismissing the appellant's section 1985 conspiracy claim, we held:

> To avoid evisceration of the purposes of qualified immunity, courts have [ ] required that plaintiffs alleging unlawful intent in conspiracy claims under Sec. 1985(3) or Sec. 1983 plead specific facts in a nonconclusory fashion to survive a motion to dismiss. Here, plaintiff fails to satisfy that requirement. The Sec. 1985(3) claim was essentially an afterthought with little more to support it than the respective racial identities of the individuals involved. The mere statement, however, that the officers in question and Ms. Beck were white and Ms. Gooden was black cannot suffice to overcome the fact that the officers acted upon the basis of a citizen's complaint, confirmed repeatedly by their own observations, that Ms. Gooden was in distress. Nor has Ms. Gooden presented any evidence of a conspiracy of two or more persons as required to state a claim under Sec. 1985(3).  954 F.2d at 969-70 (emphasis added); see also Scott v. Greenville County, 716 F.2d 1409, 1424 (4th Cir.1983) (rejecting the allegation that private citizens were liable for section 1985(3) conspiracy simply because they wrote letters and spoke at public meetings in opposition to low-income housing in an effort to influence the County Council's actions, because there was "no joint plan of action"); Ballinger v. North Carolina Agricultural Extension Service, 815 F.2d 1001, 1006-07 (4th Cir.1987), cert. denied, 484 U.S. 897, 108 S.Ct. 232, 98 L.Ed.2d 191 (1987) (dismissing a section 1985(3) claim alleging conspiracy on the basis of age, because there was no direct or indirect proof of participation in any conspiracy by appellees).

Under this relatively stringent standard for establishing section 1985 conspiracies, it is clear that Simmons did not put forth sufficient evidence that Appellees, McCann and Poe, "conspired" or participated in any joint plan, to deprive him of his constitutional rights under section 1985(3).

*See also* Heily v. Woodcrest Props. (W.D. Va., 2010).

The Fourth Circuit later opined:

"[W]here a conspiracy is alleged, the plaintiff must plead facts amounting to more than 'parallel conduct and a bare assertion of conspiracy . . . . Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality.'" A Soc'y Without a Name, for People without a Home, Millennium Future-Present v. Virginia, 655 F.3d 342, 346 (4th Cir. 2011) (quoting Twombly, 550 U.S. at 556-57).

The Eastern District of Virginia explained the requirement of "a specific class-based,

invidiously discriminatory animus:"

Finally, section 1985(3) prohibits conspiracies to deprive persons of the equal protection of the law. Griffin v. Breckenridge, 403 U.S. 88, 102-03, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). This claim is fatally defective in that no allegation has been made that the acts of defendants were motivated by class-based animus. See United Brotherhood of Carpenters v. Scott, 463 U.S. 825, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983) (suggesting that nonracially motivated discrimination not actionable under § 1985(3)). A properly asserted section 1985(3) conspiracy must necessarily contain allegations of unlawful class-based, discriminatory animus on the part of defendants to deprive a plaintiff of equal protection of the laws. Simmons v. Poe, 47 F.3d 1370 (4th Cir.1995). Indeed, there is no allegation of record that any of the plaintiffs are members of a suspect class or that any of the defendants' acts were based on racial animus.

Shooting Point, L.L.C. v. Cumming, 238 F.Supp.2d 729 (E.D. Va., 2002).

In 2015, this court had occasion to review a civil conspiracy case in Smalls v. Binner

(W.D. Va., 2015) Kiser, J.:

Even if the Complaint did allege that Count IX was stating a conspiracy claim under § 1983, however, it would still fail under the standards outlined in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009). "To establish a prima facie case of section 1983 conspiracy, a plaintiff must show, among other things, that the defendants 'reached an understanding to violate [the plaintiff's] rights.'" Rowe v. City of Fort Lauderdale, 279 F.3d 1271, 1283 (11th Cir. 2002) (quoting Strength v. Hubert, 854 F.2d 421, 425 (11th Cir. 1988). Plaintiff's Complaint lacks any allegation that Defendants ever reached an agreement—either explicitly or tacitly—to violate Lambert's rights. See Hinkle v. City of Clarksburg, W. Va., 81 F.3d 416, 421 (4th Cir. 1996).
    Plaintiff argues that it can make the required showing through circumstantial evidence, but that misses the point. Although Plaintiff can make her required showing by circumstantial evidence, she cannot plead her claim by innuendo. Plaintiff has failed "to allege a meeting of the minds, a necessary element of a

conspiracy . . . ." <u>Smith v. McCarthy</u>, 349 F. App'x 851, 858 (4th Cir. 2009) (per curiam) (unpublished). The allegations she does make are "wholly conclusory and devoid of sufficient allegation of a meeting of the minds." <u>Id.</u> Therefore, even if Count IX of Plaintiff's Complaint could be read as asserting a conspiracy to violate civil rights under 42 U.S.C. § 1983, Count IX would still fail to state a claim. Therefore, Count IX will be dismissed.

Though Defendant's counterclaim contains a conclusory allegation of a conspiracy, it contains no allegation of facts setting it forth, other than, at best, "parallel conduct" by Plaintiff and mysterious, unnamed others. It sets forth no facts alleging any class, nor any animus based on class at all, other than the class of those two persons having criminal cases against Cantwell dismissed. Further, it contains no allegation of any "meeting of the conspirators' minds," let alone some overt act. This cause of action should be dismissed.

# VII. The Counterclaim does not state a claim for Abuse of Process.

The Virginia Supreme Court set for the law of abuse of process, malicious prosecution, and the interrelation between the two in civil and criminal matters in <u>Donahoe Construction Co., Inc. v. Mount Vernon Associates</u>, 369 S.E.2d 857, 235 Va. 531 (1988).

"To sustain a cause of action for abuse of process, a plaintiff must plead and prove: (1) the existence of an ulterior purpose; and (2) an act in the use of the process not proper in the regular prosecution of the proceedings. Mullins v. Sanders, 189 Va. 624, 633, 54 S.E.2d 116, 121 (1949); Glidewell v. Murray-Lacy, 124 Va. 563, 570, 98 S.E. 665, 668 (1919).

The distinctive nature of malicious abuse of process lies in the perversion of regularly-issued process to accomplish some ulterior purpose for which the procedure was not intended. Glidewell, [235 Va. 540] 124 Va. at 569, 98 S.E. at 667. A legitimate use of process to its authorized conclusion, even when carried out with bad intention, is not a malicious abuse of that process. Id. at 570, 98 S.E. at 668. Process is maliciously abused when it is used oppressively, e.g., as "a whip to force the payment of an alleged indebtedness," Mullins, 189 Va. at 635, 54 S.E.2d at 122 (citation omitted), or as a means of extortion, see Glidewell, 124 Va. at 575, 98 S.E. at 669. The gravamen of the tort lies in the abuse or the perversion of the process after it has been issued. Consequently, "it is not necessary to allege or prove that the process was maliciously [issued]." Id. at 571, 98 S.E. at 668.

A kindred, but distinctly different, cause of action lies for malicious prosecution. An action for malicious prosecution most often is based upon an underlying criminal proceeding maliciously instigated without probable cause, which terminated in a manner not unfavorable to the plaintiff. Pallas v. Zaharopoulos, 219 Va. 751, 754, 250 S.E.2d 357, 359 (1979); Bain v. Phillips, 217 Va. 387, 393, 228 S.E.2d 576, 581 (1976).

We also have recognized that a cause of action for malicious prosecution will lie for the malicious institution of a groundless civil proceeding. Ailstock v. Moore Lime Co., 104 Va. 565, 570-71, 52 S.E. 213, 215 (1905). Because we have adopted the strict English position, a plaintiff in a malicious prosecution action based upon civil proceedings must plead and prove arrest of his person, seizure of his property, or special injury. Ayyildiz v. Kidd, 220 Va. 1080, 1084, 266 S.E.2d 108, 111 (1980). Malicious prosecution differs from abuse of process in that malicious prosecution lies for "maliciously causing process to issue," Glidewell, 124 Va. at 570, 98 S.E. at 667-68, while abuse of process "lies for the improper use of process after it has been issued," id

The Defendants have not stated a claim for abuse of process. Nowhere do they allege any act in the use of regularly issued process that is not proper in the regular prosecution of Plaintiff's civil claims against them.  These claims arise out of dismissed actions, not any pending one. Nowhere do they allege any sort facts indicating "abuse or perversion of the process after it has been issued, such as enforcing a debt." Nowhere do they plead any facts, as required by Ayvildiz, alleging any arrest of their persons, seizures of their property, nor any special injury.  Accordingly, this cause of action should be dismissed.

# VIII. The Counterclaim does not state a claim for Copyright Infringement.

Defendant Goad has made no claim of copyright infringement.  Gorcenski's allegations do not state a claim therefor.

17 U.S.C. Sec 411 sets forth:

> (a) Except for an action brought for a violation of the rights of the author under section 106A(a), and subject to the provisions of subsection (b),[1] no civil action

for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title.

Defendant Gorcenski has not plead any facts alleging preregistration nor registration, and so his claim must fail, unless it fits into the 106(a) exception. Caner v. Autry, 16 F.Supp.3d 689 (W.D. Va. 2014).

17 U.S.C. 106(a) provides:

RIGHTS OF ATTRIBUTION AND INTEGRITY.—Subject to section 107 and independent of the exclusive rights provided in section 106, the author of a work of visual art—
(1) shall have the right—
(A) to claim authorship of that work, and
(B) to prevent the use of his or her name as the author of any work of visual art which he or she did not create;

A "work of visual art" is defined in 17 U.S.C. 101:

A "work of visual art" is—(1) a painting, drawing, print, or sculpture, existing in a single copy, in a limited edition of 200 copies or fewer that are signed and consecutively numbered by the author, or, in the case of a sculpture, in multiple cast, carved, or fabricated sculptures of 200 or fewer that are consecutively numbered by the author and bear the signature or other identifying mark of the author; or (2) a still photographic image produced for exhibition purposes only, existing in a single copy that is signed by the author, or in a limited edition of 200 copies or fewer that are signed and consecutively numbered by the author. A work of visual art does not include—(A)(i) any poster, map, globe, chart, technical drawing, diagram, model, applied art, motion picture or other audiovisual work, book, magazine, newspaper, periodical, data base, electronic information service, electronic publication, or similar publication;(ii) any merchandising item or advertising, promotional, descriptive, covering, or packaging material or container;(iii) any portion or part of any item described in clause (i) or (ii);(B) any work made for hire; or(C) any work not subject to copyright protection under this title.

In Scott v. Carlson, (W.D. Va., 2017), Scott sued Carlson for distributing her videos, which contained her company logo. The court dismissed her action, holding:

The Copyright Act generally provides that "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a). The Supreme Court held in 2010 that this "registration requirement is a precondition to filing a claim that does not restrict a federal court's subject-matter jurisdiction." *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 157 (2010). Nevertheless, the registration requirement is an element of a cause of action for infringement that must be pleaded and proved by the plaintiff. *See Fourth Estate Pub. Benefit Corp. v. Wall-Street.Com, LLC*, 856 F.3d 1338, 1342 (11th Cir. 2017); *Airframe Sys., Inc. v. L-3 Commc'ns Corp*., 658 F.3d 100, 105 (1st Cir. 2011).

There is no exception to the preregistration requirement for infringement suits seeking statutory damages under 17 U.S.C. § 504. That section of the Copyright Act simply sets forth the damages to which a successful plaintiff may be entitled. Section 501 explicitly states that a copyright owner's right to relief is "subject to the requirements of section 411," which requires registration. 17 U.S.C. § 501(b).

The plaintiff's reliance on 17 U.S.C. § 106A(a) does not save her Complaint. Section 411 does include an exception to the preregistration requirement for actions brought under § 106A(a). That subsection addresses works of visual art. As the defendant correctly notes, however, the Copyright Act explicitly excludes a "motion picture or other audiovisual work" from the definition of a "work of visual art." 17 U.S.C. § 101. The plaintiff's videos are thus subject to the general rule requiring registration of copyrighted works as a prerequisite to filing suit for infringement. Because the Complaint does not allege that the plaintiff registered the videos at issue, it fails to state a claim upon which relief can be granted.

The plaintiff contends that the company logo displayed on the videos is a work of visual art under § 106A(a) that is exempt from the registration requirement. Section 106A, known as the Visual Artists Rights Act ("VARA"), applies only to a very narrow subset of copyrightable works, namely paintings, drawings, prints, sculptures, and still photographic images produced for exhibition purposes. 17 U.S.C. § 101; *Kelley v. Chi. Park Dist*., 635 F.3d 290, 300 (7th Cir. 2011); *Pollara v. Seymour*, 344 F.3d 265, 269-70 (2d Cir. 2003) (discussing legislative history of VARA). Under VARA, "[d]rawings and paintings are protected, but only if they do not advertise or promote." *Id*. at 269. The statutory definition of a "work of visual art" expressly excludes "any merchandising item or advertising, promotional, descriptive, covering, or packaging material or container." 17 U.S.C. § 101. I find that the term "work of visual art" as used in § 106A(a) does not include a company logo. *See Kleinman v. City of San Marcos*, 597 F.3d 323, 329 (5th Cir. 2010) (finding that an item which was a distinctive symbol of the owner's business did not qualify as a work of visual art). Therefore, the plaintiff cannot avail herself of the exception to the registration requirement for works of visual art.

Defendant Gorcenski has not plead that the photograph in question has been preregistered nor registered. Accordingly, Gorcenski's claim may only survive if he has plead a claim under 17 .U.S.C. 106(a). However, he has not **plead any facts to establish that the image was** produced for exhibition purposes only, existing in a single copy, signed by the author, nor in a limited edition of 200 copies or fewer that are signed and consecutively numbered by the author. There is no such allegation. Finally, Gorcenski has not plead any facts supporting his contention that he image is even copyrightable.

> "Photography was initially met by critics with a degree of skepticism: a photograph, some said, "copies everything and explains nothing," and it was debated whether a camera could do anything more than merely record the physical world. 117 F.Supp.2d 301, 307 (S.D.N.Y.2000) (internal quotation omitted). These largely aesthetic debates migrated into legal territory when Oscar Wilde toured the United States in the 1880s and sought out Napoleon Sarony for a series of publicity photographs to promote the event.[6] Burrow-Giles, a lithography firm, quickly copied one of Sarony's photos and sold 85,000 prints without the photographer's permission. Burrow-Giles defended its conduct on the ground that the photograph was a "mere mechanical reproduction of the physical features" of Wilde and thus not copyrightable. *Burrow-Giles,* 111 U.S. at 59, 4 S.Ct. 279. Recognizing that Oscar Wilde's inimitable visage does not belong, or "owe its origins" to any photographer, the Supreme Court noted that photographs may well sometimes lack originality and are thus not *per se* coprightable. *Id.* ("the ordinary production of a photograph" may involve "no protection" in copyright). At the same time, the Court held, a copyright may be had to the extent a photograph involves "posing the said Oscar Wilde in front of the camera, selecting and arranging the costume, draperies, and other various accessories in said photograph, arranging the subject so as to present graceful outlines, arranging and disposing the light and shade, suggesting and evoking the desired expression. . . ." *Id.* at 60, 4 S.Ct. 279. Accordingly, the Court indicated, photographs are copyrightable if only to the extent of their *original* depiction of the subject. Wilde's image is not coprightable; but to the extent a photograph reflects the photographer's decisions regarding pose, positioning, background, lighting, shading, and the like, those elements can be said to "owe their origins" to the photographer, making the photograph copyrightable, at least to that extent.

> As the Court more recently explained in *Feist,* the operative distinction is between, on the one hand, ideas or facts in the world, items that cannot be copyrighted, and a particular expression of that idea or fact, that can be. "This principle, known as the idea/expression or fact/expression dichotomy, applies to all works of authorship. As applied to a factual compilation," the particular matter at issue in *Feist,* "assuming the absence of original written expression, only the compiler's selection and arrangement may be protected; the raw facts may be copied at will. This result is neither unfair nor unfortunate. It is the means by which copyright advances the progress of science and art." *Feist,* 499 U.S. at

350, [111 S.Ct. 1282](#); *see also id.* at 351, [111 S.Ct. 1282](#) ("In no event may copyright extend to the facts themselves."). So, in the case of photographs, for which Meshwerks' digital models were designed to serve as practically advantageous substitutes, authors are entitled to copyright protection only for the "incremental contribution," *SHL Imaging, Inc.,* 117 F.Supp.2d at 311 (internal quotation omitted), represented by their interpretation or expression of the objects of their attention." <u>Meshwerks, Inc. v. Toyota Motor Sales,</u> U.S.A., Inc., 528 F.3d 1258 (10th Cir., 2008).

Gorcenski has plead no facts indicating that the posing was original, nor the costume, background, other accessories, posing, nor the light nor shade. Indeed, the image itself appears to be a selfie, merely recording facts in the world, and not any ***original*** depiction of the subject.

Finally, Gorcenski has not plead that Plaintiff received any additional revenues, let alone profits, from the use, as required by <u>Dash v. Mayweather</u>, 731 F.3d 303 (4th Cir., 2013). His claim of copyright infringement should be dismissed.

## IX.   Conclusion.

Defendant's counterclaim asks these court to accept the legal conclusions drawn from the facts and accept as true unwarranted inferences, unreasonable conclusions, and arguments. It should be dismissed.

_____

Elmer Woodard
Attorney at Law
5661 US Hwy 29
Blairs VA 24527
434-878-3422
VSB 27734
isuecrooks@comcast.net

CERTIFICATE OF SERVICE

      The undersigned, being an attorney duly licensed to practice law in the State of Virginia, does hereby certify that a copy of the foregoing was duly served upon the opposing counsel this date as follows:

          By personally hand delivering a copy the same to him or to one of his employees at his office;

          By fax transmission;

XXX        By electronic mail or the court's electronic means;

          By depositing a copy of same in the United States Mail, postage prepaid, and addressed as follows:

          ADDRESSEE:

Sandra C. Freeman, Esq.
Virginia State Bar No. 78499
5023 W. 120th Avenue, #280
Broomfield, Colorado 80020
sandra.c.freeman@protonmail.com 720-593-9004

      This Tuesday, February 27, 2018.

*Elmer Woodard*