VIRGINIA: IN THE GENERAL DISTRICT COURT FOR THE COUNTY OF ALBEMARLE

COMMONWEALTH OF VIRGINIA,

Plaintiff,

v.

CHRISTOPHER CHARLES CANTWELL,

Defendant

COURT PROCEEDINGS

Taken on

November 9, 2017

2

1 APPEARANCES:

2 Robert Tracci
3 410 E. High Street
  Charlottesville, VA 22902
  Attorney for Commonwealth

  Elmer R. Woodard, III
  5661 US Hwy. 29
  Blairs, VA 24527
  Attorney for Defendant

4 BEFORE: The Honorable William G. Barkley

5

6 WITNESSES

7 Motion before Preliminary Hearing

8

| WITNESSES – Defense | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| Kristopher Goad | 12 | | | |

10

11 Preliminary Hearing

| WITNESSES – Commonwealth | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| Kristopher Goad | 40 | 68 | 107/111 | 113/119 |
| Emily Gorcenski | 123 | 146 | 185 | |

15

| WITNESSES – Defense | DIRECT | CROSS | REDIRECT | RECROSS |
|---|---|---|---|---|
| Teddy Newcome | 194 | 205 | | |
| David Rotter | 212 | 223 | | |
| Christopher Cantwell | 223 | 236 | 253 | |
| Sergeant Pleasants | 254 | 260 | 262 | |
| Elliott Cline | 264 | 269 | 271 | |

22

23

24

25

1  here. We are going to call Mr. Goad and he will have an,
2  counsel will have an opportunity to cross him as much as he
3  wishes, so I'm suggesting that this might be an unnecessary
4  step at this point. If, Your Honor wishes to allow this
5  questioning to continue, the Commonwealth would like some
6  explanation as to what its purpose is.
7          THE COURT: Are you opposing defense motion to
8  quash the warrant where Mr. Goad is the complainant?
9          MR. TRACCI: We are opposing the motion to quash,
10  Your Honor.
11          THE COURT: He's entitled to present his evidence.
12          MR. TRACCI: Okay.
13      Q  May I have exhibit, the complaint? Mr. Goad,
14  I show you a document. Did you mark it just now? Okay, I
15  don't care which one it is. All I need is one.
16          THE COURT: It should be on there. I wrote an A
17  and I wrote a B. Which one have you got?
18      Q  That was B. All right, I'm showing you a doc-
19  ument entitled, it's got up at the top email copy. It's
20  Defense Exhibit B. Can you take a look at that document?
21  Do you recognize that document?
22      A  Yes, I do.
23      Q  I'm directing your attention down here. May I
24  approach the witness, Judge?
25          THE COURT: Yes.

Case 3:17-cv-00089-NKM-JCH   Document 33-4   Filed 04/20/18   Page 3 of 16   Pageid#: 504

1   Q  Could you read beginning right there, please?

2   A  It says, the statements above are true and ac-

3 curate to the best of my knowledge and belief.

4   Q  And what are the two things by the dots under-

5 neath that?

6   A  I swear---by swearing to these facts I agree

7 to appear in court and testify if a warrant or summons is

8 issued and the charge in this warrant cannot be dismissed

9 except by the Court even at my request.

10   Q  And there's a name under there, it's Christo-

11 pher Cheney Goad, correct?

12   A  That is correct.

13   Q  And that is your signature there, correct?

14   A  That is correct.

15   Q  And could you please read for the Court begin-

16 ning with the word I and going to the word temporarily?

17   A  I'm sorry, can you---starting with I and then

18 temporarily?

19   Q  Start right here.

20   A  Oh, I'm sorry. Well, it's in the middle of a

21 sentence.

22   Q  I understand that. Would you prefer to read

23 the whole thing?

24

25

LANE'S COURT REPORTERS, INC.
401 8TH STREET NE
CHARLOTTESVILLE, VA 22902

1    Q   So let the record reflect that we're going to

2    begin the video at five seconds into the unicorn riot video.

3    (Video was played at this time.)

4    Q   And I'm just going to as she is playing it in

5    slow motion as you motion, ask   you could you identify,

6    could you identify that person right there?

7    A   That person is Christopher Cantwell.

8    Q   Is he in the courtroom?

9    A   Yes.

10   Q   Can you identify him?

11   A   This man.

12   Q   And we're going to identify a person here in a

13   moment---If you could pause it right there, Ms. Galloway.

14   And this is you again, Mr. Goad?

15   A   Yes, that is me in the denim jacket right

16   there.

17   Q   Okay.  That is at 21 seconds in the video on

18   the left side.  And can you stop it right there?  Now, who

19   are these two individuals here at 23 seconds in?  Who is

20   that spraying the mace?

21   A   That is Christopher Cantwell spraying the mace.

22   Q   Okay, and that's you right there?

23   MR. WOODARD:  Objection, Your Honor, to the extent

24   that he is somehow figuring out that that is mace instead

25   of pepper spray I would object.  If he's using the word

LANE'S COURT REPORTERS, INC.
401 8TH STREET NE
CHARLOTTESVILLE, VA 22902

| | |
|---|---|
| 1 | Q  No.  In your complaint you talk about the gel |
| 2 | directly to your face. |
| 3 | MR. WOODARD:  Objection, he's leading him now, |
| 4 | taking him to the complaint.  Let him go back and ask the |
| 5 | question. |
| 6 | THE COURT:  That question is all right.  I'll al- |
| 7 | low it.  Go ahead. |
| 8 | Q  Is that true?  That's what the complaint was |
| 9 | about? |
| 10 | A  Yes, that is correct. |
| 11 | Q  Was that the only time you suffered the ef- |
| 12 | fects of a caustic substance that night, August 11th, what |
| 13 | you described in the statement? |
| 14 | MR. WOODARD:  Objection, irrelevant. |
| 15 | THE COURT:  I'll allow it.  Go ahead. |
| 16 | A  I suffered more instances of being attacked |
| 17 | with a caustic agent than in my original statement. |
| 18 | Q  And that was made clear as a result of review- |
| 19 | ing the testimony and the video, correct? |
| 20 | A  That is correct. |
| 21 | Q  Some of which we just saw and the Court has |
| 22 | just observed, correct? |
| 23 | A  That is correct. |
| 24 | Q  How well do you see without your glasses? |
| 25 | |

LANE'S COURT REPORTERS, INC.
401 8TH STREET NE
CHARLOTTESVILLE, VA 22902

1    A    I would say my vision is about 20/60, so I can
2    see up close really well, but further than that things get
3    a little blurry.   So like if I take it off right now I can
4    see you.   I can see the judge all right, but I can't see
5    what's going on in the gallery.
6    Q    Fair to say if it were dark and there was a
7    lot of chaos going on it would be difficult to identify
8    everything that's going on, everything happening?
9    A    Yes, that would definitely be the case.
10   Q    And you testified earlier that you suffered
11   after the first deployment toward Mr. beanie man, at Mr.
12   beanie man?
13         MR. WOODARD:   Objection, asked and answered.
14         THE COURT:   That has been asked and answered.
15   Sustain the objection.
16   Q    Okay, withdrawn.   Did you see any counter pro-
17   testers deploying?
18   A    I did not see any counter protesters---
19         MR. WOODARD:   Objection, Your Honor.   Just be-
20   cause he didn't see it doesn't mean it isn't happening.   He
21   probably (unintelligible) flying by either.
22         THE COURT:   Just as far as he knows.   I'll allow
23   it.   What he observed.   You can answer.
24   A    Oh.   I did not see any counter protestors use
25   any caustic agent or use any type of weapon.

LANE'S COURT REPORTERS, INC.
401 8TH STREET NE
CHARLOTTESVILLE, VA 22902

1  Q  You stood there without any aggressive action
2  whatsoever, isn't that right?  That's your testimony,
3  right?
4  A  In regards to your client.
5  Q  No, any action whatsoever.  The question is
6  any aggressive action whatsoever, yes or no.
7  A  I do not---
8  MR. TRACCI:  I would like to ask the relevance of
9  that question, Your Honor.  I think we're talking about his
10  position with respect to the defendant in this case.  And
11  he also testified earlier, and it's been asked and answered,
12  that he was not engaged in aggressive behavior including
13  aggressive kicking or punching.
14  THE COURT:  I'll allow the question, go ahead.
15  Q  No aggressive behavior toward anyone, right?
16  That's your sworn testimony.
17  A  That is correct.
18  Q  Now, after the event you learned of the exist-
19  ence of video, correct?
20  A  That is correct.
21  Q  Is the video here, one of them that you re-
22  viewed?  The one you just looked at?
23  A  That is correct.
24  Q  Was that one of the videos you learned about?
25  A  That is correct.

LANE'S COURT REPORTERS, INC.
401 8TH STREET NE
CHARLOTTESVILLE, VA 22902

1    pepper spray at my face and caused me to lose my vision

2    temporarily.   Is that what you swore under oath back then?

3         A    That is what I swore.

4         Q    You didn't say anything about Cantwell sprayed

5    beanie man next to me, correct?

6         A    I did not put that in that document.

7         Q    You didn't say anything about Cantwell sprayed

8    up in the air and it affected me, correct?

9         A    I did not put that in the document.

10        Q    The only thing you put in the document was

11   used gel mace pepper spray, right?

12        A    That is correct.

13        Q    So when you took this out you didn't give a

14   darn about anything but gel mace pepper spray, isn't that

15   right?   The other two weren't worth your time, right?

16        A    No, that is not correct.   I was answering it

17   on the best of my ability at the time.

18        Q    Well, you took out this charge just for gel

19   mace pepper spray and what about the other two?   Did you

20   care about those?   Weren't they worth filling out a crimi-

21   nal complaint?   No, correct?

22        A    No.

23        Q    Now.

24        A    No, as in I don't agree with your statement.

25

LANE'S COURT REPORTERS, INC.
401 8TH STREET NE
CHARLOTTESVILLE, VA 22902

1    THE COURT:  Mr. Goad has got to answer the ques-

2    tion.

3    Q  Okay.

4    A  I filled out a criminal complaint on what I

5    had the best knowledge of at that time.

6    Q  But you were there, you had knowledge of the

7    beanie man spray and the up in the air spray, correct, when

8    you filled this out?  Correct?

9    A  I had knowledge of that but that person is re-

10   sponsible---

11   Q  But yet you didn't---

12   A  Let me finish my question please.  That person

13   is responsible for filling out their own crime reports.  I

14   cannot fill out their crime reports.

15   Q  You just testified you got affected by the

16   over two sprays.  You're the person who is supposed to fill

17   out the crime report, Mr. Goad, and you didn't do it.  You

18   only filled out the gel mace spray.

19   THE COURT:  Just ask---ask him a question.

20   Q  Isn't that right?

21   A  I filled out a crime report involving being

22   affected by gel mace spray.

23   Q  And no other sprays, correct?

24   A  At the time, yeah.

25

Case 3:17-cv-00089-NKM-JCH   Document 33-4   Filed 04/20/18   Page 10 of 16   Pageid#: 511

1     Q  Now, a week ago you met with someone and de-

2 termined that gel mace spray wasn't Mr. Cantwell, correct?

3     A  If we're talking about the additional deploy-

4 ments later then yes, I found out that that was not Mr.

5 Cantwell.

6     Q  So the gel mace spray, you found out the gel

7 mace spray guy was dragon arm, correct?

8     A  That is correct.

9     Q  Did you contact the police to correct your er-

10 roneous sworn statement?

11     A  I have been in contact with---

12     Q  Did you do it to correct this sworn statement

13 that was no longer true?

14     A  I don't know how to change a sworn statement

15 that has already been issued.

16     Q  Do you know how to call the police?

17     A  Yes. I've been talking to---

18     Q  Okay. And Mr. Tracci knew this thing was no

19 longer true. Did you insist that he should file something

20 with the Court to bring to attention that your sworn state-

21 ment was no longer true?

22     MR. TRACCI: Your Honor, that's not---

23     THE COURT: Is there an objection? Is there an

24 objection?

25

LANE'S COURT REPORTERS, INC.
401 8TH STREET NE
CHARLOTTESVILLE, VA 22902

1  Cantwell disappears towards the monument, doesn't he?  He's
2  no longer in the frame.
3  A  In the video, but I was still able to see him.
4  Q  Bump it forward.  Bump it forward.  Bump it
5  forward.  Bump it forward.  Bump it forward.  And right
6  there you're crouched down, isn't that right?  You're
7  crouched down in your fighting stance, aren't you?
8  A  That's not a fighting stance.
9  Q  Bump it forward.  Bump it forward.  You look
10  over there.  Bump it forward.
11  A  I can see Mr. Cantwell's center frame.  I can
12  see Mr. Cantwell's center frame.  I was looking at him at
13  the time.  He had mace while someone else is macing me.
14  That led to the misidentification of the gel mace.
15  Q  Mr. Cantwell is twenty (20) feet away from you
16  now, isn't he?
17  A  I wouldn't say that's twenty (20) feet.
18  Q  Ten feet?
19  A  Again, these are very difficult, but twenty
20  (20) is a great distance.
21  Q  And you're getting, you're getting---the gel
22  mace is coming from dragon arm, right?
23  A  Yeah, I would say that----
24  Q  Bump it forward.  Bump it forward.  Bump it
25  forward.  Bump it forward.  Bump it forward.  Bump it for-

96

1    A    No, wait, no, they're not.  It's in my hand.

2    That's why I'm making---my glasses are in my hand.  That's

3    why I'm making---

4    Q    Those glasses, those aren't glasses on your

5    nose?

6    A    I can't tell in this resolution.

7    Q    Bump it forward.

8    A    Look at how my hand---

9    Q    Bump it forward.  Bump it forward.  Bump it

10   forward.  Chris Cantwell is right over here on the other

11   side of the monument now, isn't he?

12   A    Yeah, that's what I'm been saying, that he

13   didn't get me in the last two deployments.

14   Q    And you said, when I failed to do so---when

15   you failed to put the citronella candle out you looked up

16   and Cantwell maced me, isn't that right?  That's what

17   you told---

18   A    That's what I wrote.

19   Q    So your testimony is Cantwell maced you after

20   the citronella candle from the other side of the monument,

21   right?

22   A    When it was really before when I did not re-

23   member that because I did not have---

24   Q    So this is another---

25   A    Please let me finish, sir.

1  A   I was, I was in the room with Mr. Tracci when
2  I found out that I had been hit multiple times.
3  Q   And you were in the room, you were in the room
4  when Mr. Tracci said it wasn't Cantwell spraying you with
5  the gel, it was Cantwell spraying you these two other times,
6  isn't that right?
7  MR. TRACCI:   That's inaccurate, Your Honor.  He's
8  misrepresenting---
9  Q   I'm asking him the question.  If he wants to
10  testify to what happened I'll call him as a witness.
11  THE COURT:   Mr. Woodard is correct.
12  Q   Isn't that right?
13  A   No, that is a gross mischaracter---
14  Q   Mr. Tracci is the one who told you you were
15  affected by the other two deployments, isn't that right?
16  A   No.  I can look at the video.  I can see my
17  face go ah---
18  Q   Now what about the fourth deployment?
19  A   The fourth deployment, the stream that I---
20  Q   You didn't take a warrant out about the fourth
21  deployment either, correct?
22  A   You can't even see---
23  Q   Correct?
24  A   You can't even see the person who it is.  How
25  am I supposed to say it, unknown person?

LANE'S COURT REPORTERS, INC.
401 8TH STREET NE
CHARLOTTESVILLE, VA 22902

1  of shooting above the crowd and you testified that you suf-
2  fered as a result of that deployment as well.
3       A   That is correct.
4            MR. WOODARD:  Your Honor, we're going over it all
5  again.
6       Q   Is that true?
7            MR. WOODARD:  I do have a question.
8       A   Yes.
9            THE COURT:  What's your question?
10
11                    RECROSS-EXAMINATION
12  BY:  Mr. Woodard
13       Q   Mr. Goad, now there are four pepper spray in-
14  cidents with you, right?
15       A   Yeah, you saw the video.
16       Q   And two of those you didn't care about until
17  you talked to the Commonwealth's Attorney a week ago,
18  right?  Didn't take out any warrants on those, right?
19       A   Didn't know they existed.
20       Q   You didn't, now you didn't know you got pepper
21  sprayed four times?
22       A   No, uh---
23       Q   Okay, now you didn't take a warrant---
24       A   Let me finish, let me finish the question.
25       Q   Go ahead.  Go ahead.

Case 3:17-cv-00089-NKM-JCH   Document 33-4   Filed 04/20/18   Page 15 of 16   Pageid#: 516

1 STATE OF VIRGINIA AT LARGE:

2     I, Brittany L. Herring, Notary Public in and for

3 the State of Virginia at Large, having been so duly commis-

4 sioned and qualified, do certify that the foregoing court

5 proceeding was so duly taken at the time and place speci-

6 fied in the caption hereof.

7     I do further certify that said hearing was

8 correctly taken by mechanical methods and that the same was

9 accurately written out in full and transcribed into the

10 English language by Sarah R. Lane and that said transcript

11 is a true, accurate and correct record of the testimony by

12 said witness.

13     I further certify that I am neither attorney nor

14 counsel for or related to or employed by any of the parties

15 to the action in which this hearing was taken and, further,

16 that I am not a relative or employee of any attorney or

17 counsel employed by the parties hereto or financially in-

18 terested in this action.

19     My commission expires November 30, 2019.

20     Given under my hand and seal this 12th day of De-

21 cember, 2017.

22

23

24

25

Case 3:17-cv-00089-NKM-JCH   Document 33-4   Filed 04/20/18   Page 16 of 16   Pageid#: 517