| | |
|---|---|
| Christopher Cantwell | ) |
| Plaintiff/Counter Defendant | ) |
| | ) |
| v. | ) Case No. 3:17-CV-00089 (NKM/JCH) |
| | ) |
| Emily Gorcenski, | ) |
| Kristopher Goad, | ) |
| Defendants/Counter Claimants | ) |

**OPPOSITION OF DEFENDANTS EMILY GORCENSKI AND KRISTOPHER GOAD TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINT**

### I.  PRELIMINARY STATEMENT

This Memorandum of Law and the accompanying Declaration of Emily Gorcenski are submitted on behalf of Defendants Emily Gorcenski and Kristopher Goad (collectively "Defendants") in opposition to Plaintiff Christopher Cantwell's ("Plaintiff") Motion to File a First Amended Complaint (ECF No. 22). Defendants respectfully request that the Court exercise its discretion under Rule 15(a)(2) to deny Plaintiff's Motion for Leave to Amend the Complaint in this action on three independent grounds.

First, Plaintiff's amended complaint alleges facts that are, at best, untethered to material reality, and in any event fail to state a claim upon which relief can be granted, and are therefore futile. Second, if leave is granted, Defendants will be prejudiced by having to spend significant additional resources to continue to respond to baseless claims while the resolution of litigation is kicked unjustifiably ever father down the road, thus exacerbating Plaintiff's harassment and intimidation of Defendants for acting as witnesses in the ongoing criminal proceeding against him.

Finally, and most troublingly, Plaintiff's proposed amendments appear for a number of reasons to have been made in bad faith, and contain a number of material misrepresentations of fact and law.

## II.   PROCEDURAL HISTORY

On December 28, 2017, Plaintiff, appearing through counsel Mr. Woodard — who also represents Plaintiff in the ongoing criminal case that forms the basis of this action — filed a Complaint against Ms. Gorcenski and Mr. Goad (ECF No. 1). On December 28, 2017, and again on January 2, 2018, Mr. Woodard filed additional evidence with this Court (ECF Nos. 4 and 5). Defendants filed an Answer to the Complaint and Counterclaims pursuant to Rule 13(a) on February 12, 2018 (ECF No. 9). On March 5, 2018, a telephonic scheduling conference was held before Judge Hoppe. At that time, Mr. Woodard informed the Court of Plaintiff's intent to amend the Complaint. As his time to amend the Complaint as a matter of course pursuant to Rule 15(a)(1) had lapsed, Plaintiff's counsel informed the Court and counsel for Defendants that Plaintiff would file a Motion for Leave to Amend pursuant to Rule 15(a)(2). Defense counsel noted their intention to oppose such motion. On March 19, 2018, Plaintiff filed the Motion for Leave to Amend, a supporting Memorandum of Law, and the Proposed Amended Complaint; at some point between March 20 and March 26, 2018, he filed and served additional photo and video Exhibits to the Proposed Amended Complaint. (ECF Nos. 22-25) Upon request by Defense counsel, the Court extended Defendants' time to oppose the Motion for Leave to Amend until April 23, 2018.

As noted in their Answer to the initial Complaint, it is important for the Court to bear in mind that this civil case is inextricably linked to the *pending* state felony charges against Plaintiff for Illegal Use of Gas on August 11, 2017, for which he is currently awaiting trial in the Circuit Court for Albemarle County. Both Defendants have testified as witnesses for the Commonwealth in the pre-trial criminal proceedings, and both have been subpoenaed to testify at the criminal trial.

On information and belief, Defendants are the only two witnesses for the Commonwealth who have come forward to testify against Plaintiff. As a threshold matter, because the criminal case is *still ongoing*, Plaintiff's foundational claim in the initial Complaint for malicious prosecution is patently insufficient as a matter of law.[1]

Furthermore, despite Plaintiff's repeated and insistent conclusions that Defendants made false statements to the police and to the Magistrate, he has not actually alleged any facts that, even if proven to be true, would establish false statements sufficient to sustain a claim for malicious prosecution. Plaintiff is being prosecuted criminally for the illegal use of pepper spray, in a case in which *he admits to having deployed pepper spray multiple times* in close proximity to Defendants. *See* Proposed Amended Complaint, ¶¶ 77, 86. Plaintiff has included video and photo evidence of himself deploying pepper spray in multiple Exhibits. Under such circumstances, regardless of any self-defense justification Plaintiff may wish to bring out at his criminal trial, it is outrageous for Plaintiff to claim that Defendants lacked probable cause to complain to police and the Magistrate about his conduct. All of Plaintiff's new factual allegations are wholly irrelevant to his claim for malicious prosecution, because Plaintiff *admits* to the conduct that gave rise to the

---

[1] Plaintiff has preposterously asserted that his civil claims in this case are not related to the *pending* criminal proceedings, but that this case somehow only relates to the enhanced "Malicious" Use of Gas charges that were initially issued against him by the Albemarle County Magistrate for the same deployment of gas on August 11, and which were subsequently dismissed. This argument is so thoroughly devoid of any legal foundation or reasonable basis in fact that it in and of itself evidences extreme bad faith. Plaintiff—who is represented by counsel—knows full well that in reporting Plaintiff's conduct of deploying pepper spray to police, and later to the Albemarle County Magistrate, Defendants had no control over or input into whether the charges brought against Plaintiff in his criminal case were for "Malicious" or "Unlawful" use of gas. As Plaintiff's counsel well knows, that decision is in the sole discretion of the Magistrate issuing the warrant, and the decision whether to prosecute each charge is within the sole discretion of the Commonwealth's Attorney. Though it may theoretically be that Plaintiff was initially "over-charged" in his criminal case when the Magistrate and the Commonwealth's Attorney enhanced the charges to "malicious" use of gas, the assertion that *Defendants* would bear responsibility for any such over-charging is wholly nonsensical, and serves as evidence of extreme bad faith.

criminal charges.[2] Plaintiff's proposed new allegations, even if taken as true, are also irrelevant to the newly proposed causes of action, as they do not support the necessary elements of those claims.

Because of the overtly frivolous nature of the claims asserted in the original Complaint, Defendants contend that, from the outset, this litigation has never been reasonably grounded in fact or warranted by law, and that it has been interposed solely for the improper purpose of harassing, intimidating, and retaliating against Defendants for their cooperation in the criminal proceedings against Plaintiff. Indeed, and as described more fully below, Plaintiff's Proposed Amended Complaint is merely another tiresome chapter in his abhorrent efforts to enlist this Court in his campaign of witness intimidation, harassment, and retaliation. As such, and for the reasons set forth below, Defendants respectfully urge the Court to exercise its discretion to deny Plaintiff's Motion for Leave to Amend, on the basis that it is interposed in extreme bad faith, that it would be unduly prejudicial to Defendants as a result of Plaintiff's bad faith, and that the new claims asserted therein are, at a minimum, futile, if not a deliberate attempt to materially mislead this Court.

## III. LEGAL STANDARD

The Fourth Circuit has consistently held that a District Court need not grant leave to amend pleadings under Rule 15(a)(2) in circumstances where the proposed amendments evidence bad faith, futility, or undue prejudice to the non-moving party:

> Rule 15(a) provides that "leave [to amend] shall be freely given when justice so requires." However, leave to amend is not to be granted automatically, and the decision whether to do so rests within the sound discretion of the district court. A district court may properly deny leave in light of undue delay, bad faith, or prejudice to the opposing party.

---

[2] Based on, *inter alia*, the foregoing, and without waiving any other arguments, once the pleadings have closed in this case, Defendants intend to move to dismiss Plaintiff's claims in their entirety pursuant to Rule 12(c). Defendants also believe that this Court, being unbound by the procedural requirement to wait until the pleadings are fully closed, would be wholly justified in dismissing Plaintiff's claims *sua sponte* at any time, as frivolous on their face.

*Skinner v. First Am. Bank of Virginia*, 64 F.3d 659 (4th Cir. 1995)(internal citations omitted); *see also Nat'l Bank of Washington v. Pearson*, 863 F.2d 322, 328 (4th Cir. 1988)(upholding District Court's denial of leave to amend where there was "ample evidence of undue delay, bad faith, and prejudice.") The Fourth Circuit has also held that a District Court may properly deny leave to amend "on the ground of futility when the proposed amendment is clearly insufficient or frivolous on its face." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986)(internal citations omitted).

Though Rule 15(a)(2) should not be should not operate to frustrate legitimate claims of a party asserted in good faith, the Court's discretion under the Rule serves an important gatekeeping function to prevent distortion and abuse of this Court's process for improper purposes. In this case, the additional claims in Plaintiff's proposed amendment are so thoroughly devoid of legitimacy on their face, so plainly motivated by bad faith, and so disturbingly fraught with material misrepresentation that the Court can, and should, properly exercise its discretion to disallow the proposed amendment.

### IV. PLAINTIFF'S PROPOSED FIRST AMENDED COMPLAINT

Plaintiff moves to amend his Complaint, originally filed December 28, 2017 (ECF No. 1). Contrary to his suggestion that the factual portion of the proposed amendment merely provides more factual details marshaled in support of his existing claims, Plaintiff's proposed amendments add 72 pages to the original 16 of his initial complaint. Plaintiff seeks to add several novel causes of action based upon new theories of liability. These proposed amendments include, *inter alia*, a convoluted, illegible conspiracy theory, the origins of which are simply opaque, and the

underpinnings of which theory, in any case, are flatly and self-evidently false. (*See* Declaration of Emily Gorcenski, dated April 23, 2018, annexed hereto, "Declaration of Ms. Gorcenski".) Moreover, the basis on which Mr. Cantwell, a member of no protected class, believes himself to have been discriminated against, remains unclear. The Proposed Amendment further includes a claim for stalking, the basis of which seems to be that by making an unintelligible remark about "staying out all night drinking" Mr. Cantwell "gave notice" to Ms. Gorcenski that he wished to have no further contact with her. For nearly 90 pages, Mr. Cantwell sets forth allegations that, in addition to being untrue, are ultimately unrelated to the legal claims in whose support those allegations are levied. Notably, it was only after Defendants asserted their counterclaims in this case, including claims for conspiracy to violate civil rights and stalking, that Plaintiff suddenly decided to file unsupported but identical amended claims.

Were Plaintiff in fact plausibly aggrieved by legitimate violations of his rights, and were his proposed amendments reasonably grounded in fact, counsel would be hard-pressed to oppose his amendment, given that artificial time constraints ought not interfere with the earnest pursuit of justice. Here, however, Plaintiff brings to the table only "alternative facts" so absurd that they serve largely to suggest that this suit is not being prosecuted in good faith. Counsel indeed is of the belief that both Plaintiff and Mr. Woodard are, incredibly, attempting to use this Court to harass and disparage Ms. Gorcenski and Mr. Goad, and to demean the very practice of law.

While difficult to track, given that the numbered paragraphs in both the initial and the Proposed Amended Complaint routinely include several un-numbered paragraphs, a thorough review of the factual allegations reveals pervasive misrepresentation, offers of irrelevant but prejudicial information, and assertions of legal conclusions that are logically unrelated to, and therefore unsupported by the proffered evidence. These, along with wild speculation and uncivil

editorializing[3], are pervasive throughout both the initial and Proposed Amended Complaints, and speak to the prejudice, futility, and bad faith of Plaintiff's claims.

## V.  ARGUMENT

### A)  Allowing Plaintiff to amend would be prejudicial to the Defendants.

Plaintiff acknowledges on page two of his Motion for Leave to Amend, that in general, an amendment is appropriate and will not prejudice a defendant where it merely adds a new theory of liability to facts already pled. Plaintiff cites to *Ashcroft v Iqbal*, for the proposition that legal claims must be adequately supported by facts, which, while true, is inapposite given the posture of the case at bar. 556 US 662, 129 S Ct 1937, 1939 (2009). While *Iqbal* is addressed to initial pleadings, this case is currently in a posture in which further amended claims ought to be supportable by facts already pled. Citing to *Iqbal* therefore does not at this point support the near-exponential expansion of his pleadings to include more than 60 pages of new allegations.

That is, Plaintiff amazingly contends both that the proposed amendment "merely adds an additional theory of recovery" which is "based primarily on facts … all of which were already known," and simultaneously admits that the proposed amendment "contains a host of specific factual allegations" to support the new claims. In any event, the claim that these allegations of facts were "already known to Defendants" is baffling, given that Ms. Gorcenski and Mr. Goad could not possibly have knowledge of things that did not happen. *See* Declaration of Ms. Gorcenski.

---

[3] In direct contravention of this Court's admonition at the March 5 scheduling conference, Plaintiff not only continues to inconsistently misgender Ms. Gorcenski (who is of Asian descent), but doubles down on the claim that despite her legal name and gender-marker changes, she is a "white male… who pretends to be a transgender woman of color."

Notwithstanding that discovery has not yet commenced, inundating counsel for Ms. Gorcenski and Mr. Goad with a flurry of nonsensical allegations to which we must respond is in fact prejudicial. It distracts from and dilutes counsel's ability to defend this case by demanding attention to a veritable flood of meaningless, groundless, and utterly confounding allegations. Allowing Plaintiff leave to file this proposed amendment will also unnecessarily prolong this litigation, increase costs, and will function to drain the resources of and exhaust Defendants to the point of potentially affecting their ability to testify freely and truthfully at Plaintiff's criminal trial. Counsel for Defendants contend that this is precisely Plaintiff's goal. Although increased costs and delay in and of themselves do not generally constitute undue prejudice, when viewed in the context of Plaintiff's extreme bad faith, the frivolous nature of the litigation, and the potential impact that allowing the Proposed Amendment would have on Defendants' ability to freely testify in the criminal case without fear of incurring ever-increasing legal fees in this civil case, the burden here imposed would rise to the level of being unduly prejudicial. It would also thwart the important public policy goal of not allowing criminal defendants to use the civil litigation system to influence a criminal case, or to coerce, threaten, harass, and intimidate witnesses.

This Proposed Amendment fails even under Plaintiff's own analysis: it does not merely add new theories of liability to known facts, but pleads scores of new facts, each stranger than the last. For example, Plaintiff cannot possibly in good faith contend that, based on the allegations contained in his original Complaint, Defendant Gorcenski was put on notice that Plaintiff would baselessly accuse her of directing a mysterious "Antifa hit squad," comprised of individuals she does not know, who allegedly (but unsuccessfully) conspired to assassinate Plaintiff in a Wal-Mart parking lot. *See* Proposed Amended Complaint, Preliminary Statement, ¶¶ 7, 18, generally 20-42, 47, 48, 59, 69, 105; *compare* Declaration of Ms. Gorcenski. That Plaintiff would make such an

assertion is in and of itself evidence of bad faith and the disingenuous nature of the additional claims included in the proposed amendment.

In the context of the ongoing criminal proceedings against Plaintiff, and his blatant campaign of witness harassment and intimidation against Defendants, the mental and financial burden of even having to respond to this Motion for Leave to Amend constitutes undue prejudice borne by Defendants. This Proposed Amendment would greatly prejudice Ms. Gorcenski and Mr. Goad, and leave to amend must be denied.

**B) Plaintiff's Proposed Amendments alleging various conspiracies and stalking should not be permitted on the grounds that the amendments are futile.**

Plaintiff has added innumerable factual allegations to his Proposed Amended Complaint. The best that can be said of these allegations is that most of them are factually unsupported and easily disproved, and that he has imposed upon disparate artifacts and pieces of evidence a narrative that is simply unwarranted by reality. The claims, *inter alia*, of stalking and conspiracy are — at *best* — futile, as the critical allegations in support have no basis in reality. *See* Declaration of Ms. Gorcenski. Moreover, even taken as true, the proposed claims, if based on these fact allegations, could not survive a motion to dismiss.

Leave to amend may properly "be denied on the ground of futility when the proposed amendment is clearly insufficient or frivolous on its face." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986). Where "a proposed amendment may clearly be seen to be futile because of substantive or procedural considerations", the District Court may examine the merits of the litigation in rendering its decision on whether to allow amendment. See *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980)(citing to *DeLoach v. Woodley*, 405 F.2d 496, 496–97 (5th Cir. 1968)("The liberal amendment rules of F.R.Civ.P. 15(a) do not require that courts

indulge in futile gestures. Where a complaint, as amended, would be subject to dismissal, leave to amend need not be granted."). *See also Blick v. Shapiro & Brown, LLP*, No. 3:16-CV-00070, 2017 WL 8774234, at *1 (W.D. Va. Mar. 15, 2017, Moon, J.)(denying leave to amend pleading where futility and bad faith were evidenced).

Plaintiff's additional claims are not plausible on their face, because they are entirely untethered to reality, and are demonstrably false and/or materially misleading. Furthermore, even if grotesquely accepted as true for purposes of arguing this motion, Plaintiff's additional claims still do not state any claim for relief that is plausible or sufficient as a matter of law on its face. For example, even if Plaintiff's fantastical conspiracy theory that Ms. Gorcenski "conspired" with an "Antifa hit squad" to phone in a report to police that Plaintiff was allegedly brandishing a weapon in the Wal-Mart parking lot were somehow true (it is not true), such would still not constitute a conspiracy to violate his civil rights. The remainder of Plaintiff's fact allegations regarding third parties who "approached," "filmed," "exchanged insults," and ultimately walked away, do not support a claim of stalking, or in fact any threatening conduct whatsoever, and in no event do these allegations support a claim of any kind against either named Defendant.

Similarly, even if Plaintiff's unfounded and demonstrably false assertion that Ms. Gorcenski could not overhear the identification of Plaintiff over the police radio were true (it is not true), this would still not be sufficient to establish that Ms. Gorcenski lacked probable cause to file a police complaint against Plaintiff for deployment of pepper spray. As Defendants will argue more fully in their 12(c) motion on Plaintiff's malicious prosecution claim, no matter how many conspiracy theories he alleges or how many Tweets with misleading timestamps he produces, Plaintiff cannot succeed on his malicious prosecution claim without satisfying the requirement to demonstrate that Defendants lacked probable cause to file their police reports or

Page 10 of 18

Case 3:17-cv-00089-NKM-JCH   Document 34   Filed 04/23/18   Page 10 of 18   Pageid#: 534

cooperate in the criminal proceedings against him. Under Virginia law, a claim for malicious prosecution can never be maintained where, as a matter of law, probable cause existed for the criminal charges in question. The Virginia Supreme Court has held:

> In an action for malicious prosecution, the plaintiff has the burden of proving four essential elements: that the prosecution was (1) malicious, (2) instituted by or with the cooperation of the defendant, *(3) without probable cause*, and (4) terminated in a manner not unfavorable to the plaintiff.
>
> …
>
> *Malice may be inferred from a lack of probable cause, but a lack of probable cause may not be inferred from malice. Bill Edwards Oldsmobile, Inc. v. Carey*, 219 Va. 90, 100, 244 S.E.2d 767, 773 (1978). Accordingly, it is appropriate to begin by considering whether the evidence was sufficient to support a finding of probable cause. In this context, we have defined probable cause as "knowledge of such a state of facts and circumstances as excite the belief in a reasonable mind, acting on such facts and circumstances, that the plaintiff is guilty of the crime of which he is suspected." *Commissary Concepts Mgmt. Corp. v. Mziguir*, 267 Va. 586, 589–90, 594 S.E.2d 915, 917 (2004). Whether probable cause existed is determined as of the time when the action complained of was taken. *Id.* at 590, 594 S.E.2d at 917. [emphasis added].

*Reilly v. Shepherd,* 273 Va. 728, 733, 643 S.E.2d 216, 219 (2007). Where "the facts relating to probable cause are not in dispute", the issue of factual sufficiency to establish probable cause is a question of law for the Court to decide. *See id.* As discussed above, the facts giving rise to probable cause in the criminal proceeding against Plaintiff are not in dispute—Plaintiff has *admitted* to the deployment of pepper spray in a crowded public area where Defendants were among those present, and has further admitted to spraying at least two individuals directly in the face with said pepper spray. The Albemarle County Magistrate, Sgt. Acord of the UVA Police Department, the Commonwealth's Attorney for Albemarle County, and Hon. Judge Higgins of the Albemarle County Circuit Court have all independently determined that probable cause existed to arrest, charge, and try Plaintiff for Illegal Use of Gas. No facts alleged by Plaintiff—no matter how fanciful or conspiratorial—could ever serve to establish the lack of probable cause necessary for

him to sustain his malicious prosecution claim under Virginia law, and as such any additional facts alleged in the proposed amendment as purported support for this claim are futile.

As to his newly added theories of liability, these too are futile, as the supporting allegations are insufficient to support the necessary elements of the late-charged claims. Allowing Plaintiff to amend his complaint in order to prosecute these claims would be futile, as the underlying allegations are insufficiently factual. The Court should properly deny leave to amend under Rule 15(a)(2) on the basis that the proposed amendment is futile.

**C)** **Plaintiff's Proposed Amendments are purely retaliatory and made in bad faith**

It strains credulity to imagine that Plaintiff's convoluted conspiracy theories, internally inconsistent claims of persecution, and the factual allegations made in support thereof are sincerely believed even by Plaintiff. As set forth in Defendants' First Amended Counterclaims (ECF Nos. 25, 26), Plaintiff has spent the last nine months vocally calling for the murder or suicide of Ms. Gorcenski, and making various violent threats against Defendants online for their participation in the pending criminal case against him. Given his demonstrated vile animus toward Defendants, his commitment to seeking revenge against them for cooperating in the criminal case, and the scurrilous invective that saturates not only his public statements but his court filings, it is clear that his proposed amendment constitutes only the latest move in his campaign of harassment and intimidation against Defendants.

While there is little case law in the Fourth Circuit where leave to amend is denied on the basis of bad faith that is not also coupled with unjustified delay, there have assuredly also been few Proposed Amendments like the one at bar. Plaintiff's initial complaint was sixteen pages long. The Proposed Amendment, though unpaginated in the original, includes an additional 72 pages. It is formatted bizarrely, with some paragraphs inexplicably underlined, some sections single-

spaced, some sections double-spaced, and many in-line photographs, notwithstanding that there are *also* many photo and video Exhibits annexed to the proposed amendment. The text and/or images on many pages end mid-page, and on other pages there are large spaces in between paragraphs, almost as if to artificially increase the number of pages in the document. Many numbered paragraphs contain several more un-numbered paragraphs beneath. While pleadings may not be subject to the requirements set forth for briefs filed with this Court, it is unambiguous that the court expects "standard margins, double-spaced lines, and a font no smaller than 12-point Times." Pretrial Order of the Court, ¶8 (ECF No. 10). Defense counsel was therefore initially perplexed as to the departures from standard form so radical as to have made the Proposed Amendment nearly illegible. It is almost inconceivable that the bizarre formatting was accidental, and in any case, the Proposed Amendment does not conform to the requirement of Rule 8 that all pleadings contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

Plaintiff's Proposed Amendment is rife with false claims and offers of evidence that may be intended to mislead the Court, but that do not actually support his claims. For example, including on Page 19 evidence that Ms. Gorcenski shared on social media an article on Twitter about the legal rights of grand jury witnesses does not make it true that Ms. Gorcenski is a "frequent contributor" to the website on which that article was published (she has never contributed anything to that website). A photograph that seems to show a small cluster of people, possibly including Mr. Goad, crouching on the pavement does not function to support an allegation that Mr. Goad beat a man with an American Flag.[4] (Proposed Amended Complaint, ¶17.) Characterizing a group of people with whom Ms. Gorcenski has no relationship as "Gorcenski's

---

[4] Although the allegation is wholly irrelevant to any of Plaintiff's claims, for avoidance of doubt: Mr. Goad did not beat a man with an American Flag.

hit squad" simply does not make it so, any more than repeatedly suggesting that both Defendants had prior relationships with "Philly Antifa" serves to manifest such nonexistent relationships into reality. Such assertions do, however, suggest that Plaintiff has little compunction about endeavoring to mislead this Court, or at best, that Plaintiff and his counsel have not conducted reasonable investigation into the factual basis for Plaintiff's claims.

Setting aside the demonstrable falsity of Plaintiff's factual allegations, Defendants further submit that even if all facts alleged were true, which they self-evidently are not, the Proposed Amendment is incoherent, internally inconsistent, and permeated with intellectual dishonesty. *See Johnson,* 785 F.2d at 510 (4th Cir. 1986). For example, the Proposed Amendment includes pervasive and apparently willful mischaracterizations. This is especially the case with respect to the many attempts to impeach Ms. Gorcenski's claim that she is not in fact "an Antifa," by introducing many tongue-in-cheek Tweets in which she evidences bemused disbelief at the degree to which members of the far right seem to perceive "Antifas" and "agitators" as serious threats — boogeymen which Ms. Gorcenski clearly believes to be overstated if not non-existent. Also troubling are Plaintiff's efforts to redefine words in order to make Defendants' word or actions appear sinister in ways unsupported by the record. However much Plaintiff wishes to imply that the word "infighting" means "attack from hostile outsiders," the fact is that it connotes fighting amongst members of a single group, and Ms. Gorcenski's efforts to warn a member of the Unite the Right rally against potentially violent infighting cannot therefore be read as any kind of threat. *See* Proposed Amended Complaint ¶¶15, 54.

Other salient examples of inspired rhetoric in the Proposed Amendment include Plaintiff presenting as fact assertions about Defendants' state of mind, knowledge, or intent that are not only unsupported or directly contradicted by available and offered evidence, but that Plaintiff

could not seriously claim to know. Such speculation is rampant throughout the Proposed Amendment. The most egregious examples include: the claim in ¶7 that Ms. Gorcenski "strongly believes in violence," followed by Tweets that largely suggest that she does not in fact "strongly believe" in violence; the bewildering claim in ¶18 that Gorcenski intended Cantwell harm, and that "Philly Antifa would do the dirty work"; the utterly unsupported assertion that Ms. Gorcenski was in the so-called "eavesdropper vehicle"; the baffling and unsupported characterization of what appears to be an innocuous silver minivan or SUV[5] at Wal-Mart as an "eavesdropper vehicle"; and the laundry list of knowledge and supposed and highly specific intents imputed to Ms. Gorcenski in ¶59, in which Plaintiff alleges (entirely without support) that Ms. Gorcenski knew Mr. Cantwell was unarmed, that she wished to cryptically communicate a number of mysterious (and untrue) facts to him, and that she should have been able to interpret a confused insult about not drinking as stay-away notice.

Finally, the Proposed Amendment repeatedly sets forth legal conclusions that are logically unrelated to, or even at odds with, the evidence marshaled in support of those very claims. The most evident, though far from the only examples of this, can be seen at ¶¶ 48, 58, and 59, which make critical conclusions that are intended to form the basis of Plaintiff's legal claims. None of the allegations in these paragraphs, even those that may in fact be true, are factually or logically related to each other in a manner that would lead to the stated conclusions. Throughout the Proposed Amendment, the evidence that is levied in support of Plaintiff's bizarre claims is either untrue, misleading, irrelevant, prejudicial, logically unrelated to the claims, or some combination

---

[5] In any case, and incredibly, none of the silver vehicles in ¶ 20 even appear to be the same vehicle as the silver vehicle in ¶ 37; the vehicle ¶ 37 has silver door handles, a silver front grill, and a fully rounded fender. None of the silver hatchback vehicles in ¶ 20 share these characteristics. One has squared rear fenders, another has a black grill, and the third has black door handles.

thereof. Counsel is thus compelled to conclude that these claims are not seriously intended, but are primarily an effort to antagonize the Defendants (and their beleaguered lawyers).

Plaintiff's incomprehensible claims, voluminous additions, and unexplained (if not inexplicable) formatting, along with his general conduct over the last many months, make it difficult to see this Proposed Amendment as anything other than yet one more effort on his part to use this Court as a tool in his monomaniacal harassment campaign against Defendants. This Proposed Amendment is being brought not to prosecute legitimate but late-discovered claims of the Plaintiff, but to further harass, drain, and threaten the Defendants. As it is not a good faith effort to vindicate hitherto unnoticed rights violations, the Court properly can—and should, in the interests of justice—deny the proposed amendment under Rule 15.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court deny the motion for leave to amend in its entirety, and award Defendants their reasonable attorneys' fees in responding too such motion pursuant to Rule 11, along with such other and further relief as the Court deems just and proper.

******

Respectfully submitted this 23rd day of April, 2018.

                EMILY GORCENSKI
                KRISTOPHER GOAD
                By Counsel

                /s/ *Sandra Freeman*
                Sandra C. Freeman, Esq.
                Virginia State Bar No. 78499
                5023 W. 120th Avenue, #280
                Broomfield, Colorado 80020
                sandra.c.freeman@protonmail.com
                720-593-9004


                /s/ *Pamela Starsia*
                Pamela Starsia, Esq.
                Virginia State Bar No. 88657
                3006 Maplelawn Circle
                Austin, Texas 78723
                pamstarsia@starsialaw.com
                518-441-2695


                /s/ *Moira Meltzer-Cohen*
                Moira Meltzer-Cohen, Esq.
                Admitted Pro Hac Vice
                277 Broadway, Suite 1501
                New York, New York 10007
                meltzercohen@gmail.com
                718-450-3035


                *Counsel for Defendants Emily Gorcenski and Kristopher Goad*

CERTIFICATE OF SERVICE

I, Pamela Starsia, hereby certify that on April 23, 2018, I electronically filed the foregoing Defendants' Opposition to Plaintiff's Motion for Leave to Amend the Complaint and supporting Declaration of Emily Gorcenski, with the Clerk of the Court for the United States District Court for the Western District of Virginia by using the CM/ECF system. I certify that counsel for all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.


Dated: April 23, 2018.

/s/ *Pamela Starsia*
Pamela Starsia