UNITED STATES DISTRICT COURT
for the
WESTERN DISTRICT OF VIRGINIA, CHARLOTTESVILLE DIVISION

| | |
|---|---|
| **Christopher Cantwell** ) | |
| Plaintiff/Counter Defendant ) | |
| ) | |
| ) | |
| v. ) | Case No. 3:17-CV-00089(NKM/JCH) |
| ) | |
| **Emily Gorcenski,** ) | |
| **Kristopher Goad,** ) | |
| Defendants/Counter Claimants ) | |

### DECLARATION OF DEFENDANT EMILY FLORENCE GORCENSKI IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT

COMMONWEALTH OF VIRGINIA )
CITY OF CHARLOTTESVILLE ) ss:

I, **EMILY FLORENCE GORCENSKI**, verify, declare, and say:

1. I am an individual resident of the City of Charlottesville, Virginia. I am a named Defendant and Counter-Claimant in the above-captioned case. I have read the Plaintiff's Proposed Amended Complaint (ECF No. 22, Attachment 1) (the "Proposed Amended Complaint") and am familiar with the allegations set forth in that document.

2. I submit this declaration in support of Defendants' opposition to Plaintiff's Motion for Leave to Amend his Complaint in this action (ECF No. 22). The statements made below are based on my personal knowledge of the facts and circumstances described in this declaration, and my personal familiarity with the documents attached hereto as Exhibits.

1

3. I submit this declaration, under penalty of perjury pursuant to 28 U.S.C. § 1746, for the purpose of identifying a number of unfounded and demonstrably false allegations in the Proposed Amended Complaint. This declaration highlights only the most egregious of these false allegations that can easily be demonstrated to be false by documentary evidence which is in my custody and control, and which easily disprove the bizarre, unfounded conspiracy theory Plaintiff has alleged against me in the Proposed Amended Complaint. This declaration is not intended to be a comprehensive catalogue of the many, many false allegations made in the Proposed Amended Complaint, and I reserve the right to respond more fully to the Proposed Amended Complaint if that becomes necessary in this case.

4. To the best of my knowledge, I do not personally know anyone affiliated with the network identified by Plaintiff as "Philly Antifa." I do not know any of the individuals purportedly identified by Plaintiff in the photo accompanying ¶ 24 of the Proposed Amended Complaint, and to my knowledge I have never communicated with any of those individuals. I do follow some people on Twitter who I believe to be self-identified anti-fascist activists from Philadelphia, including an account that purports to represent "Philly Antifa," and I may have briefly interacted with some of those individuals or accounts on Twitter. I started following the "Philly Antifa" Twitter account sometime in late-2017 or early-2018, several months after the dates relevant to Plaintiff's allegations.

*Plaintiff's Allegations that I Tweeted About the Wal-Mart Rally at 8:51 AM EDT Are Demonstrably False and Unfounded, and May Indicate an Attempt to Mislead the Court*

5. On August 11, 2017, sometime in the morning, I learned from a community member that Plaintiff was planning to hold a rally at noon in the parking lot of the Wal-Mart at 975 Hilton

2

Heights Rd Charlottesville, Virginia. I had no knowledge of Plaintiff's plan to be in the Wal-Mart parking lot prior to this time. During that morning, I was giving interviews to reporters in preparation for the rally the following day, and during this time my attention was fully occupied by these efforts. After learning about Plaintiff's rally and finishing my morning business, I drove to the Wal-Mart to observe the rally and take photos.

6. Plaintiff alleges that I knew in advance that he would be in the Wal-Mart parking lot, and thus "planned an operation" to kill or injure him. As his only support for this outlandish allegation, in ¶ 17 of the Proposed Amended Complaint, Plaintiff alleges that I Tweeted the time and location of his Wal-Mart rally at 8:51 AM, but does not specify a time zone. He includes a reproduction of a Tweet from August 11 that is copied from a web archive site (as opposed to being copied directly from Twitter). On information and belief, it appears that Plaintiff sourced his copy of this Tweet from a web archive site called "archive.is", which archives individual webpages in response to specific user requests. Thus, a specific user would have had to request that this Tweet be archived for Plaintiff to have obtained this copy. It appears as though this tweet was archived on March 2, 2018, and an archived copy can be found at: http://archive.is/s5UJI.

7. In Twitter's interface, a Tweet timestamp will always reflect the time zone of the user *viewing* the Tweet (not of the user Tweeting the Tweet). Thus, the archive.is archive of a Tweet will show the timestamp for that Tweet in the time zone of the location where the Tweet is captured for archive, which is not necessarily in the time zone of the user who Tweeted it.

8.      It appears that the archive.is copy of my Tweet reproduced in ¶ 17 of the Proposed Amended Complaint was archived in Pacific Daylight Time ("PDT"), rather than Eastern Daylight Time ("EDT", the time zone for Charlottesville, VA, where I Tweeted it). I know this because the timestamp for the Tweet, when viewed by a user in EDT, is viewable as 11:51 AM EDT on August 11, 2017 (which would be 8:51 AM PDT). A true and accurate copy of this Tweet, sourced directly from Twitter as viewed by a user in EDT, is attached to this declaration in **Exhibit A**, numbered **A-1**.

9.      In ¶ 19 of the Proposed Amended Complaint, Plaintiff claims he arrived at the Wal-Mart parking lot at or around 11:45 AM EDT. As demonstrated by the correct EDT timestamp, my Tweet was actually sent at 11:51 AM EDT, which is after Plaintiff claims to have arrived, and not, as he suggests, several hours before. Because he arrived in a public place six minutes prior to my Tweet, my Tweet at 11:51 AM EDT cannot possibly be interpreted as "broadcasting [a] secret location," as alleged in ¶¶ 213, 216, and 219 of the Proposed Amended Complaint.

10.     The **A-1** Tweet is still publicly available directly on Twitter at: https://twitter.com/EmilyGorcenski/status/896036243846422529. Since it is publicly available directly on Twitter and does not require a user to have a Twitter account for it to be viewed, I do not understand why Plaintiff would have included the archive.is version of the Tweet, with the misleading PDT timestamp, in the Proposed Amended Complaint.

4

11.     The Tweet in **Exhibit A**, numbered **A-2**, is a true and accurate copy of a Tweet that I made in the same Twitter thread as Tweet **A-1**, at 1:26 PM EDT, sourced directly from Twitter as viewed by a user in EDT (available at https://twitter.com/EmilyGorcenski/status/896060176922431488).  **Exhibit A**, numbered **A-3** is a true and accurate copy of the threaded view of this thread, showing that Tweets **A-1** and **A-2** are in the same thread.  In ¶ 42 of the Proposed Amended Complaint, Plaintiff correctly identifies the timestamp of Tweet **A-2** as 1:26 pm EDT (although the timestamp is not visible in the archive.is copy of the Tweet provided by Plaintiff).

12.     Because **A-1** and **A-2** were Tweeted in the same thread, it would be extremely difficult, if not completely impossible, for Plaintiff to have correctly identified the timestamp on **A-2** as being 1:26 PM EDT, without also having noticed that the timestamp of **A-1** should be in EDT as well.  Any view of **A-2** that allowed Plaintiff to correctly timestamp that Tweet as 1:26 PM EDT would have also identified the timestamp of **A-1** as 11:51 AM EDT (*see* **A-3**).  This causes me to seriously doubt that Plaintiff's incorrect use of the 8:51 AM PDT timestamp for the allegations in ¶ 17 was innocent or accidental.

13.     For the remainder of this document, all times shall be interpreted as to be taking place in Eastern Daylight Time.

*Plaintiff's Allegations Regarding the ¶ 31 Location of a Red Truck "Similar to" Mine and the "Eavesdropper          Vehicle"          Are          Demonstrably          False          and          Unfounded*

14.     In ¶ 28 of the Proposed Amended Complaint, Plaintiff alleges that "a truck similar to [mine]" arrived at the Wal-Mart parking lot at approximately 12:27 PM on August 11, 2017.

5

The implication that I arrived at 12:27 is demonstrably false. I arrived at the parking lot at approximately 12:10 PM, consistent with my testimony at the preliminary hearing in Plaintiff's pending criminal case.

15. My arrival time at the Wal-Mart parking lot can be substantiated by the metadata of a photo I took with my mobile phone camera as soon as I arrived. This photo, together with a copy of the metadata for the photo as automatically saved by my phone, is attached hereto as **Exhibit B** to this declaration. I affirm that **Exhibit B** is a true and accurate reproduction of the photo I took upon arrival at the Wal-Mart parking lot on August 11, 2017, and a true and accurate reproduction of the metadata recorded by my phone for that photo. The metadata for this photo shows that the photo was taken at 12:09:49 PM on August 11, 2017.

16. As the photo in **Exhibit B** shows, I did not have a clear view of Plaintiff and his gathering from my first parking space in the Wal-Mart parking lot. Since my view was blocked, after taking that photo I moved my truck to a different parking space with a clearer view. I moved my truck at least one or two other times while I was in the parking lot when customers' vehicles arrived and blocked my view.

17. In ¶ 31 of the Proposed Amended Complaint, Plaintiff alleges to have identified a truck "similar to" my red pickup truck, parked in a certain location in the parking lot at 12:29:33 PM. Plaintiff's bizarre conspiracy theory (set forth in ¶¶ 44 - 46) appears to hinge entirely on his unfounded allegation that my truck was parked in the location identified by the red arrow in ¶ 31 (the "¶ 31 Location") from at least 12:29 PM until at least 12:38 PM. Plaintiff's theory is

6

contradicted not only by my own documentary evidence, but by Plaintiff's own photo included in ¶ 38 of the Proposed Amended Complaint.

18.   I was driving my red pickup truck on August 11.  Because of the low quality of the photo in ¶ 31, and because, as stated above, I moved my car several times in the parking lot to observe Plaintiff's rally, I cannot tell for sure whether one of the three red trucks visible in that photo might be mine, parked in the ¶ 31 Location at 12:29 PM.  However, I was not parked in that location at any of the times relevant to Plaintiff's allegations, as demonstrated by the photos in **Exhibits B - E** and accompanying metadata, as described above and below.

19.   I was also not in the silver SUV hatchback that Plaintiff identifies in a clearly-manipulated photo in  ¶ 20 as the "Eavesdropper Vehicle" at any time on August 11, 2017.  (A large yellow smudge has been added to the photo to block out a portion of the image.)  Because of the photo-manipulation, it is not clear to me *which* of the two or possibly three silver hatchback vehicles Plaintiff is referring to in this paragraph, and in any case I do not know who owns any of the vehicles present in the modified photo.  I was in my own truck the entire time I was in the Wal-Mart parking lot.

20.   Wal-Mart was open for business during the entire time I was present in the Wal-Mart parking lot, and during this time I saw multiple vehicles pass by slowly, a behavior wholly consistent with shoppers looking for an open parking space.

7
Case 3:17-cv-00089-NKM-JCH   Document 34-1   Filed 04/23/18   Page 7 of 14   Pageid#: 549

21.     As purported support for his allegation that my truck was in the ¶31 Location or that I was in the "Eavesdropper Vehicle" as part of an elaborate conspiracy theory, in ¶ 42 Plaintiff references a Tweet I posted on August 11, which included a photo that I took in the parking lot at approximately 12:30PM.  **Exhibit C** is a true and accurate reproduction of this photo, and a true and accurate reproduction of the metadata recorded by my phone for that photo.  The metadata for this photo shows that the photo was taken at 12:30:44 PM on August 11, 2017.

22.     Plaintiff alleges in ¶ 42 that I "flipped" the photo in **Exhibit C** when I posted it to Twitter to "conceal the location of the camera."  This allegation is bizarre and unfounded.  I took the photo in **Exhibit C** in my driver's side sideview mirror of my truck.  In the photo, you can see a smudge on the sideview mirror in the upper right corner of the photo, and the plastic housing of the sideview mirror in the bottom left corner.  This smudge is also visible in **Exhibit E**, further corroborating the fact that the **Exhibit C** photo depicts my sideview mirror.  My truck was facing away from Plaintiff and his group in the parking lot, so I took this photo in the sideview mirror.  Contrary to Plaintiff's allegation in ¶ 42, I did not reverse the photo to disguise my whereabouts when I posted it to Twitter.  The photo was presented in exactly the manner I saw the encounter, in my sideview mirror.

23.     I deliberately waited until after Plaintiff's rally to post the photo in **Exhibit C** to Twitter. The decision to wait until 1:26 PM, after the rally had dispersed, was purposefully made to avoid revealing the tactical positions of police officers and to avoid putting Plaintiff, his compatriots, and Albemarle County Police officers in any danger.  This action runs counter to Plaintiff's allegation in ¶ 18 of the Proposed Amended Complaint that I sought to put Plaintiff in harm's

way, and runs counter to the allegation in ¶ 42 that I was disguising my location, as this post was authored well-after I, and the rally, had left the Wal-Mart parking lot.

24. After taking the photo in **Exhibit C**, I moved my truck again to have a view of Plaintiff's rally from a different vantage point. **Exhibit D** is a true and accurate reproduction of a photo I took while moving to this new parking spot, and a true and accurate reproduction of the metadata recorded by my phone for that photo. The metadata for this photo shows that the photo was taken at 12:35:09 PM on August 11, 2017. Visible in the photo a yellow crosswalk sign, yellow pillars in the parking lot, and accessible parking spaces. As the photos included in the Complaint demonstrate, the photo in **Exhibit D** was not, and could not have been, taken from the vantage point of the ¶ 31 Location or from the location of the "Eavesdropper Vehicle."

25. In ¶ 38 of the Proposed Amended Complaint, Plaintiff states: "At 12:37:01, a Police radio identified Cantwell as Chris Cantwell of Keene, NH." In ¶ 45, Plaintiff correctly alleges that I told an investigator from the Federal Bureau of Investigations ("FBI") that I had overheard this police radio identification from my truck. In ¶ 46, Plaintiff correctly alleges that I also testified to this at his criminal preliminary hearing on November 9, 2017.

26. I did overhear the police radio identification of Plaintiff from my truck, as described in ¶¶ 45 and 46 of the Proposed Amended Complaint.

27. Based on his bizarre and unfounded allegation that I was either parked in the ¶ 31 Location or inside the "Eavesdropper Vehicle," in ¶ 46, Plaintiff inexplicably appears to allege

9

that I lied to the FBI investigator and perjured myself under oath at the preliminary hearing because either: 1) I could not have heard the radio identification from the ¶ 31 Location, and therefore lied about overhearing the police identification; or 2) I overheard the radio identification from the "Eavesdropper Vehicle," and therefore lied about being in my own truck.

28. Neither of these fanciful conspiracy theories is true. In fact, as I testified to at the preliminary hearing, I overheard the police radio identification of Plaintiff from my own truck, where I was parked a few spaces over from a police vehicle. This can be substantiated by the photo and accompanying metadata in **Exhibit E**, which I took from my truck as I was observing the police officer who received the radio identification. **Exhibit E** is a true and accurate reproduction of this photo, and a true and accurate reproduction of the metadata recorded by my phone for that photo. The photo and metadata show that I took this photo through the open window of my truck in close proximity to an Albemarle County police officer, who was standing outside his vehicle, at 12:36:45 PM on August 11, 2017—16 seconds before the radio identification came in to that same officer, based on the time alleged for the radio identification by Plaintiff in ¶ 38.

29. Furthermore, Plaintiff's *own photo*, included in ¶ 38 and timestamped at the critical moment of 12:37:01 PM, shows that there is not even *any* red truck in the ¶ 31 Location at this moment—let alone *my* red truck. Plaintiff's own evidence wholly contradicts his wild conspiracy theory allegations. Again, it is difficult to believe that this blatant internal contradiction in Plaintiff's factual allegation is innocent or accidental.

30. In short, Plaintiff spends many paragraphs framing an absurd and unfounded conspiracy theory, hinging on the allegation that I lied about my arrival time, and that I was in either the ¶ 31 Location or the "Eavesdropper Vehicle" at 12:37:01 PM. This theory is easily disproved by the authenticated photos and accompanying metadata in **Exhibits B – E**, and is further contradicted by Plaintiff's own photo in ¶ 38 of the Proposed Amended Complaint.

31. I believe Plaintiff has made the allegations set forth in this bizarre, demonstrably false conspiracy theory in extreme bad faith, and in an apparent deliberate attempt to mislead the Court, as harassment in retaliation for the good faith counterclaims I have asserted against him in this action.

*Plaintiff's Allegations that I was "Stalking" Him on August 12 are Demonstrably False, Unfounded, and Absurd.*

32. In ¶ 58, Plaintiff correctly describes the brief verbal exchange I had with him on the night of August 11, at the white supremacist torch rally. Plaintiff asked me if I was the one who called the police on him in the Wal-Mart parking lot. I said, "no, I got there late." Plaintiff responded, "next time, don't fucking drink all night." I said, "who drank all night?" That was the end of the verbal exchange. I have no idea why Plaintiff told me not to "drink all night." I was not drinking the night before August 11.

33. In the last sentence of ¶ 215, Plaintiff alleges that "By insulting Gorcenski about drinking all night on the evening of August 11, 2017, before the torchlight march started, Cantwell gave Gorcenski actual notice that he did not wish to be contacted or followed by Gorcenski."

34. I do not believe that Plaintiff's sentence, "next time, don't fucking drink all night," constituted notice of any kind that Plaintiff did not wish to be contacted or followed, nor do I believe that this sentence could, under any circumstances, constitute such notice. If anything, the most reasonable interpretation of Plaintiff's confusing statement about drinking would be to believe that he was asking me to show up to his next rally on time or early, instead of getting there late.

35. In ¶¶ 128 - 31, Plaintiff alleges that, on the morning of August 12, 2017, I was standing on the sidewalk outside Justice Park (formerly named "Jackson Park"), and he walked past me/the park with a group. This is true. The video available at https://twitter.com/EmilyGorcenski/status/896383488202465281 is a true and accurate copy of a video that I livestreamed on August 12, starting at 10:50 AM (as documented by the timestamp). Approximately three (3:00) minutes into this video, the video shows that I arrived outside Justice Park at approximately 10:53 AM.

36. The video available at https://twitter.com/EmilyGorcenski/status/896388448625373185 is a true and accurate copy of a video that I livestreamed on August 12, starting at 11:10 AM (as documented by the timestamp). Approximately fifty-two seconds (0:52) into this video, Plaintiff walks by my camera, showing that he walked by me at Justice Park at approximately 11:11 AM. In ¶ 128 of the Proposed Amended Complaint, Plaintiff alleges he arrived at "about 10:00 AM." This represents a factual discrepancy of over one hour.

12
Case 3:17-cv-00089-NKM-JCH   Document 34-1   Filed 04/23/18   Page 12 of 14   Pageid#: 554

37. Consistent with his comments the night before that I should not arrive late to his next rally, I politely said "Hey Chris" to the Plaintiff as he walked by. Plaintiff appears to look back and smile in response. The video shows that I remained filming at Justice Park for several more minutes and did not follow Plaintiff or his group onward to Emancipation Park.

38. Since the video demonstrates (and Plaintiff admits) that I arrived outside Justice Park approximately 18 minutes before Plaintiff arrived, and since Plaintiff's own words exhorted me to not be late to his next event, Plaintiff's claim in ¶ 131 that his walking past me and my polite greeting at Justice Park constituted "following or contacting" him in violation of Virginia's stalking statute is demonstrably false, unfounded, and absurd.

39. I believe Plaintiff's allegations in ¶ 131 to be an attempt to mislead this Court, made in extreme bad faith by Plaintiff as harassment in retaliation for the counterclaim I asserted against him in this action under Virginia Code § 8.01-42.3.

40. As stated above, this declaration presents documentation to disprove only a few of Plaintiff's demonstrably false and unfounded allegations made in the Proposed Amended Complaint, and I reserve the right to respond more fully to each and every one of Plaintiff's allegations should that become necessary in this case. However, I believe the sworn statements and authenticated documents provided in this declaration and accompanying exhibits to be sufficient to demonstrate that the allegations contained in Plaintiff's Proposed Amended Complaint (as well as the allegations contained in Plaintiff's initial Complaint) are made in bad

faith, in a deliberate attempt to mislead this Court, for the sole purpose of harassing me and unjustifiably increasing the costs of this already frivolous litigation.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this day: April 23, 2018

_____
Emily Florence Gorcenski