IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| Christopher Cantwell, | ) | |
| Plaintiff, | ) | Civil Action No. 3:17Cv000089 |
| | ) | |
| v. | ) | Judge: Norman K. Moon |
| | ) | |
| | ) | |
| Emily Gorcenski et al. | ) | |
| Defendant. | ) | |

# *Memorandum in Support of the Motion for Partial Summary Judgment against Defendant Gorcenski*

Comes now the Plaintiff, by counsel, and submits this memorandum in support of its motion for partial summary judgment against Defendant Gorcenski.

## Statement of Facts

1. The "Baked Alaska Raw Footage" video is a true and accurate copy of footage taken by Tim Gionet at the event. Tim Gionet Declaration, Memorandum Exhibit A. *Nota Bene: the time references in the declaration are to the full video; the copy provided has had the irrelevant material before and after the relevant portion trimmed, thus changing the time stamps;, so the time references in this Memorandum are accurate to the trimmed video.*

2. The "Last Stand" video is a true and accurate copy of footage taken by Augustus Invictus at the event. Declaration of Augustus Invictus, Memorandum Exhibit B. *Nota Bene: the copy provided has had the irrelevant material before and after the relevant portion trimmed.*

3. The "Guardian Getty Hi Quality" and "News 2 Share" videos are true and accurate. Video MP 16 attached to the Complaint is true and accurate. Cantwell Declaration 2, Memorandum Exhibit C, footage in Exhibits C1 and C2 thereto. *Nota Bene: the copy provided has had the irrelevant material trimmed.*

4. The videos Emily Livestream 1 and 4 are true and accurate copies of videos showing Emily Gorcenski. Cantwell Declaration 2, Memorandum Exhibit C, Exhibit C3 and C4 thereto. *Nota Bene: the copy provided has had the irrelevant material trimmed.*

5. Gorcenski's Tweets are true and accurate copies of tweets from her account. Cantwell Declaration 2, Memorandum Exhibit C, Exhibit C5 thereto.

6. The People's Magazine Article is true and accurate copy of an article from its website. Cantwell Declaration 2, Memorandum Exhibit C, Exhibit C6 thereto.

7. Cantwell had a fan meet and greet at the Wal-Mart parking lot. Michael Longo, of Philly Antifa, called the police, causing the Albemarle County Sherriff's Department to show up, enabling Gorcenski to take a photo of Cantwell being accosted by the police, which she later tweeted out.  Gorcenski later appeared at the Monumentals' staging area livestreaming, and

accosted Cantwell about the Wal Mart incident. Cantwell Declaration 2, Memorandum Exhibit C.

8. While livestreaming before the monument event, Gorcenski said, "We saw Christopher Cantwell have a rally today (unintelligible) at the Wal Mart parking lot um we were there to capture that, ah the media showed up to capture that…we did not call in that..ah… brandishing the gun, that was a customer…inside the store, *which is proof that it is not just the "Antifa" that he is terrorizing but actually the community in and of itself.* We didn't need to do that…we got to the meetup a few minutes late…" Emily Livestream 1, Cantwell Declaration Memorandum Exhibit C, Exhibit C3 thereto.

9. On the night of August 11, 2017, Plaintiff participated in a political rally at the Thomas Jefferson Monument, near the Rotunda on the public property of the Commonwealth of Virginia known as the University of Virginia. Cantwell Declaration 2, Memorandum Exhibit C.

10. The statue of Jefferson faces generally north, towards University Avenue. The Rotunda building is behind him, or generally south. Cantwell Declaration 2, Memorandum Exhibit C.

11. While near the northeast corner of the monument, Cantwell saw a man in a tank top fighting with a bearded man in orange sleeves. A man in a green/brown shirt wearing a black beany style hat, aka Beanyman, attacked Tank Top to help undersleeves. Cantwell Declaration 2, Memorandum Exhibit C.

12. Cantwell saw Beanyman go down and tank top disengage. Beanyman was now facing Cantwell and they made eye contact; Beanyman had murder in his eyes and was coming after

Cantwell. Beanyman popped back up. Beanyman was the most immediate threat to Cantwell because he, Cantwell, had just seen him attack Tank Top, fight, was closest to Cantwell, and appeared to be leading the mob.  Beanyman came towards Cantwell in a threatening stance at which point Cantwell pepper sprayed him. Cantwell thought Beanyman was going to punch him. Cantwell Declaration 2, Memorandum Exhibit C.

13. To Cantwell's right front, Antifas were attacking the man in a tracksuit. A bearded Antifa kicked him in the head, and then in the ribs, and then came straight at Cantwell with his left hand extended. Cantwell thought this was Beanyman, and was surprised that he was still fighting. MP 16 shows that this was not Beanyman, but Tom Massey.  MP 16 also shows that before Cantwell hit the button, someone rose up in front of him, raising Cantwell's arm up, and his thumb came off the button.  Cantwell brought it back down and aimed the pepper spray over someone's shoulder but when Cantwell pressed the button it just fizzled. Cantwell Declaration 2, Memorandum Exhibit C.

14. Tim Gionet was badly pepper sprayed on August 12, 2017 and suffered permanent eye damage.  "Monoxide" was fired from his job. Cantwell Declaration 2, Memorandum Exhibit C

15. Cantwell is familiar with David Rother, Tom Keenan, Haircut and Beanyman. The document in Exhibit C7 is a screenshot from Gorcenski's Livestream 3. The identifying designations are accurate. Cantwell Declaration 2, Memorandum Exhibit C, Exhibit C7.

16. Tim Gionet was filming Gorcenski. This footage, (Baked Alaska Raw Footage), shows Gorcenski at the Jefferson Monument. [0:26, center frame low]. She is calmly filming the events with a phone. In front of her is a white male with a pin and a distinctive haircut, hereinafter "Haircut," speaking to the man next to her. Gorcenski calmly turns around in place while filming for the next 15 seconds. [026-0043]. Fourteen seconds later, Gorcenski is somewhat closer to the Jefferson Monument; the camera is about a foot from her face. [0:55]. Haircut is seen right of frame. Haircut shoves Gorcenski's left shoulder with his right shoulder, pushing her back. [0:56]. Haircut then points to Gorcenski [0:59], who raises her phone at him. Haircut then blocks Gorcenski's phone with his hand [1:00]. Gionet Declaration, Memorandum Exhibit A.

17. Gionet was within about two feet of Gorcenski at 1:00; the smell of pepper spray was in the surrounding air at this time. Gionet Declaration, Paragraph 4, 5, Memorandum Exhibit A.

17a. Gionet's camera changes view to the left, (Gorcenski's right) where a brawl has broken out between a man in a Tank Top and a man with orange undersleeves. [1:01]. Gionet Declaration, Memorandum Exhibit A.

18. Five seconds later, at 1:06, Cantwell can be made out screen left facing a crouching Beanyman. This is when and where Beanyman first attacked Cantwell, and Cantwell sprayed Beanyman. Gionet Declaration, Memorandum Exhibit A

19. At 1: 04 Gorcenski is still standing near the corner of the Monument. At 1:07, Gorcenski and the tall man in a green shirt bend down, looking at the ground.   At 1:17, the image blurs, but Gorcenski can be made out sedately standing frame right. Also at 1:17, Gorcenski is calmly facing south, and discreetly touches her glasses.   Gorcenski is silent about being affected by any pepper spray.   Gionet Declaration, Memorandum Exhibit A.

20. Near the end of the event, Cantwell went around the south*west* corner of the monument towards the south*east* corner. Cantwell Declaration 2, Memorandum Exhibit C.

21. Cantwell saw a female ANTIFA with an expandable baton, or asp, like police carry. He yelled "Get that ****** stick!" and moved forward to disarm her. He was afraid she was going to break his or someone else's skull open with it.  An Antifa did so with a bike lock a few months earlier in Berkley, California.   Cantwell Declaration 2, Memorandum Exhibit C.

22. As he did, Beanyman attacked Cantwell from the southeast corner of the monument. Another Monumental intercepted Beanyman and put him in a headlock. Cantwell Declaration 2, Memorandum Exhibit C.

23. While in the headlock, Beanyman pepper sprayed Cantwell straight in the face.   It was like a fire hose. Cantwell was soaked, and it even went down his pants.  Cantwell put his hands up because of the pepper spray and because he was afraid that he would get hit by the baton. Cantwell Declaration 2, Memorandum Exhibit C.

24. Cantwell is familiar with Emily Gorcenski and her appearance that night. The News2Share video shows that at the time he was sprayed, Gorcenski's head was about level with Greenshirt's armpit, and Gorcenski was right next to Cantwell. Cantwell Declaration 2, Memorandum Exhibit C.

25. In the News2Share video, the camera is behind Gorcenski, who is at the southwest corner of the monument. That footage at 0:02, (right edge of frame) captures Gorcenski touching her glasses. She then moves east across the south face of the monument. Her phone can be seen in her hand. At 0:09, Cantwell, can be seen in the background. Gorcenski discerns the button for the photo program on the phone, aims it at Cantwell, and takes a photo of him, and apparently no one else, on that phone at N2S 0:11. Memorandum Exhibit C2.

26. The photo Gorcenski took is in Memorandum Exhibit D. See Exhibit I p. 171.

27. The video from News 2 Share is from behind Gorcenski, shows Cantwell going after the woman with the asp, Gorcenski still with phone, and the Beanyman spray of Cantwell. Cantwell Declaration 2, Memorandum Exhibit C2.

28. The "Guardian Getty Hi Quality" video is from a different angle than the News2Share video, and reveals that while in the headlock, Beanyman sprayed Cantwell. It also shows that Emily Gorcenski was immediately behind Cantwell at the time. Memorandum Exhibit E.

29. The Guardian Getty video is from in front of Gorcenski at the southeast corner. It shows her (right edge of frame) touch her glasses at 0:00 and then moving after the glasses touch, (0:03). At 0:07, it shows Beanyman spraying a man in a white shirt, and the woman with the asp attempting to strike with it. At 0:08, a man's torch can be seen dripping citronella. At 0:14,

Beanyman can be seen spraying Cantwell, and Gorcenski right behind Cantwell.  Cantwell Declaration 2, Memorandum Exhibit C.

30. By this time, Cantwell had lost his keychain, which had an empty container of pepper spray on it.  At no time did Cantwell spray Emily Gorcenski in the eyes nor anywhere else.  Cantwell Declaration 2, Memorandum Exhibit C.

31. In the Last Stand Video, the "Hold, Hold," call can be heard at 0:01. Gorcenski can be seen at 0:20.  Gorcenski is screen left behind the tall man in the plaid cap; a short man in a yellow shirt is behind her. Gorcenski is disheveled. She puts her glasses in her hair, appears to cough, and for the first time is pressing her chest as if having difficulty breathing. She then wipes her left eye, and then her right eye. She is squinting at her phone, operating it, (0:40) and wiping her eyes again at 0:44.  At 1:29, Gorcenski has made it out through the crowd, and appears to be in distress by the UVa Students sign. Declaration of Augustus Invictus, Memorandum Exhibit B.

32. "Emily Livestream 4" shows the man in the yellow shirt.  Gorcenski's face appears, now clearly watery eyed and squinting; the first words she says to her phone is "I've been maced[!]," She later makes her way through the crowd unmolested and then has her eyes flushed. She then says "I've _**just**_ been maced."  (Emphasis added; the elapsed time counter does not work on this clip.). Cantwell Declaration 2, Memorandum Exhibit C, Exhibit C4 thereto.

33. Gorcenski signed the warrant against Cantwell. Warrant, **Memorandum** Exhibit F.

34. On August 12, 2017, Gorcenski told the Magistrate that she was shoved, then a fight broke out to her right, and then she was "affected." Warrant, Memorandum Exhibit F.

35. On Sunday, August 13, 2017 Gorcenski tweeted, "I am pressing charges against him for that." Cantwell Declaration 2, Memorandum Exhibit C, Exhibit C5 thereto.

36. On August 16, 2017, Gorcenski tweeted, "I suggest you head to a magistrate Mr. Cantwell. I filed the statement that got the warrant signed out." Cantwell Declaration 2, Memorandum Exhibit C, Exhibit C5 thereto.

37. On August 16, 2017, despite being within inches of the incident, Gorcenski claimed that Cantwell sprayed himself, and claimed that Cantwell was the only one with mace at the event. Cantwell Declaration 2, Memorandum Exhibit C, Exhibit C5 thereto.

38. In her tweet of August 16, 2017, Gorcenski bragged that Cantwell had been targeted by her "media team." Cantwell Declaration 2, Memorandum Exhibit C, Exhibit C5 thereto.

39. On August 17, 2017 Gorcenski made a statement to Sgt. Acord of the UVa Police Department:

Once they made it to the statue by the North end of the rotunda, Emily recalls seeing a person being hit by a torch and could smell fuel just before being *sprayed in the eyes with pepper spray*. Directly after being sprayed, she was hit by a man wearing a swastika pin and her phone was dropped. She picked up her phone and located a woman who flushed her eyes with water. The next day Emily was able to identify the man who sprayed her as Chris Cantwell after reviewing video and social media. [Emphasis added]

Memorandum Exhibit G, a public document.

40. On August 17, 2017, Gorcenski published her hit list. Cantwell Declaration 2, Memorandum Exhibit C, Exhibit C5 thereto.

41. On October 29, 2017, Gorcenski told the FBI:

She stated that at this time, the "Swastika pin dude" physically shoved her back against the group of counter-protesters. The counter-protesters behind her, some of whom she said were from Black Lives Matter (BLM) were chanting. She said that is when the fights broke out to her right. She stated that during this melee the "Swastika pin dude" punched the phone from her hand. She said she "kind of retreated" and realized she couldn't escape [Pg 4] and there were "torches everywhere." GORCENSKI said, "As I went back to get my phone, I felt my face burning." She said she went in and retrieved her phone and that is when someone hit her in the head with a torch. She said she retrieved her phone and was able to escape the crowd, and by that point her face was "on fire, snot was coming out of my nose and I couldn't see." She said someone poured water on her face in order to alleviate her symptoms, then she was able to get her glasses on so she could see again.

"GORCENSKI was asked whether or not Cantwell specifically sprayed her in the face, or otherwise targeted her specifically, during the encounter at the base of the Jefferson statue on 8/11 and she said "no, he did not.""

FBI 302 report, a public document, Memorandum Exhibit H.

42. As set forth on the certified copy of the warrant, Gorcenski's charge was dismissed by the Albemarle County General District Court on November 9, 2017. **Memorandum** Exhibit F.

43. At the preliminary hearing, Gorcenski testified that she determined the source of pepper spray by the proximity of the sprayer and the direction of the spray. Gorcenski also explained why she thought Cantwell had sprayed her near the southwest corner. Memorandum Exhibit I.

44. [Omitted]

45. Plaintiff posted bond and was released from jail, having served 107 days in durance vile.

Complaint 96, Answer 96.

## Standard of Review

Summary judgment should only be granted if, viewing the record as a whole in the light most favorable to the nonmoving party, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also* Celotex Corp. v. Catrett, 477 U.S. 317, 322-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Terry's Floor Fashions, Inc. v. Burlington Industries, Inc., 763 F.2d 604, 610 (4th Cir.1985). In considering a motion for summary judgment, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the non-moving party." Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir.1994) (citations omitted), *cert. denied,* 513 U.S. 813, 115 S.Ct. 67, 130 L.Ed.2d 24 (1994). Tigrett v. Rector and Visitors of Univ. Of Va, 137 F.Supp.2d 670 (W.D. Va., 2001; Moon, J. ). Even construing the facts in that light, as set forth below no genuine issue of material fact exists as to whether Gorcenski maliciously prosecuted Cantwell.

## Argument

To prevail on a malicious prosecution claim, the plaintiff must allege and prove, by a preponderance of the evidence, that: (1) the prosecution was set on foot by the defendant and was terminated in a manner not unfavorable to the plaintiff; (2) it was instituted or procured by the cooperation of the defendant; (3) it was without probable cause; and (4) it was malicious. Hudson v. Lanier, 497 S.E.2d 471, 255 Va. 330 (Va., 1998); Ayyildiz v. Kidd, 220 Va. 1080, 266 S.E.2d 108 (Va., 1980).

In this case, when Beanyman sprayed Cantwell near the southeast corner of the monument, near the end of the event, Gorcenski was caught in the blast. She later saw a photograph of Cantwell with pepper spray.  At approximately 9.00 a.m. on August 12, 2017, Gorcenski was at the Albemarle County magistrate's office, falsely accusing Cantwell of Beanyman's crime.

## The Elements

**(1) The prosecution was set on foot by the defendant and was terminated in a manner not unfavorable to the plaintiff.**

**a. Set on foot by the Defendant.**

Gorcenski has admitted that she set the prosecution on foot.  On Sunday, August 13, 2017 she tweeted, "I am pressing charges against him for that."  Exhibit C5.  On August 16, 2017, she tweeted, "I suggest you head to a magistrate Mr. Cantwell.  I filed the statement that got the

warrant signed out." Exhibit C5.  Defendant Gorcenski has admitted, Memorandum Exhibit I, p. 146, that she signed the warrant in Memorandum Exhibit F. No genuine issue of material fact exists as to this element.

**b. Terminated in a manner not unfavorable to the Plaintiff.**

As set forth on the certified copy of the warrant, Memorandum Exhibit F, that charge was dismissed by the Albemarle County General District Court on November 9, 2017, thus terminating in a manner not unfavorable to Cantwell.  No genuine issue of material fact exists as to this issue.

**(2) It was instituted or procured by the cooperation of the defendant;**

As set forth above, the prosecution was instituted, set on foot, and procured by Emily Gorcenski. No genuine issue of material fact exists as to this issue.

**(3) The prosecution was without probable cause.**

**a. The Albemarle General District Court dismissed Gorcenski's warrant.**

Dismissal of the Gorcenski warrant, Memorandum Exhibit F, is  *prima facia* evidence that no probable cause existed.  In <u>Barton v. Camden</u>, 147 Va. 263, 137 S.E. 465 (Va., 1927), Camden swore out a warrant alleging that Barton was illegally storing ardent spirits.  The justice of the peace dismissed the warrant. In the ensuing malicious prosecution action, the court instructed the jury that the dismissal of the warrant was *prima facia* evidence that there was no probable cause for the warrant. The Virginia Supreme Court found the instruction proper in Barton's case, but took the opportunity to clarify the point:

Another assignment of error raises a question about which a casual reading of the cases in this jurisdiction and elsewhere there may have been some confusion of statement.

In this case, the first instruction for the plaintiff contained the statement that the discharge of the plaintiff on the hearing before the justice is of itself prima facie evidence that the warrant was sworn out without probable cause. This is held in <u>Jones v. Finch, 84 Va. 204</u>, <u>4 S. E. 342</u>, and many other cases could be cited in support of that rule.

In contrast with that is the line of cases of which <u>Saunders v. Baldwin, 112 Va. 431</u>, <u>71 S. E. 620</u>, 34 L. R. A. (N. S.) 958, Ann. Cas. 1913B, 1049, is typical. It is said there:

"In an action for malicious prosecution, the acquittal of the accused is not evidence of the want of probable cause, but such evidence is admissible to show that the prosecution has terminated."

And Buchanan, J., there says:

"The general rule is that the acquittal of the accused is not evidence of a want of probable cause. Such evidence is admissible merely to show that the prosecution has terminated."

The difference is this: When a justice of the peace, having no authority to try the case, but merely to examine into the facts in order to determine whether the accused shall be discharged or sent on to the grand jury for indictment, concludes to discharge the prisoner, this discharge is prima facie evidence of the want of probable cause. On the contrary, if either a justice of the peace or a court having jurisdiction tries a case, and the accused is acquitted, then the rule is that the acquittal cannot be shown, as evidence of the want of probable cause, but is merely introduced to show that the prosecution has terminated.

As set forth above, after a full blown hearing, and having heard her testify, the Albemarle General District Court dismissed Gorcenski's warrant. Accordingly, no probable cause existed for it.

### b. No probable cause existed.

The test for probable cause is whether the facts and circumstances known, or made known, to the prosecutor are sufficient to justify a prudent and reasonable man in the belief that an accused is guilty of the crime charged. <u>Giant of Va., Inc. v. Pigg</u>, 152 S.E.2d 271, 207 Va. 679 (Va., 1967). Further, a prosecutrix cannot close her eyes to the truth. "[The defendant's argument] disregards entirely the evidence in this case showing the opportunity of the prosecutor to obtain information which should have changed any prior opinion or belief he had." <u>Giant of</u>

Va., Inc. v. Pigg, 152 S.E.2d 271, 207 Va. 679 (Va., 1967). An accuser must have probable cause to believe that the *accused* committed the crime. Munger v. Cox, 146 Va. 574 (Va, 1926). The facts available to Gorcenski were utterly insufficient to justify a reasonable person in the belief that Cantwell unlawfully caused her bodily injury by a caustic substance.

As shown by the Guardian Getty Hi Quality and News2Share videos attached to the Cantwell Declaration 2, Exhibits C1 and C2, Gorcenski was present when Cantwell tried to stop the woman with the asp. Beanyman, while in the headlock, was only a few feet in front of her, and she was looking directly at him. Gorcenski was only inches away from Cantwell when Beanyman sprayed them both. She was still inches away when Cantwell violently reacted by turning, moving back, covering his head with his hands, bumping into Gorcenski herself, and leaving the area.

Gorcenski knew or should have known that Beanyman sprayed her, not Cantwell, because she was on videotape after Beanyman sprayed her. As shown on the News to Share Video, Gorcenski is sprayed by Beanyman at about 2:21, and at 2:27, while someone is shouting "Hold, Hold," can be seen in the center right background moving to the east side of the monument. Exhibit C2.

In the Last Stand Video, Memorandum Exhibit B the "Hold, Hold," call can be heard at 0:01. Gorcenski can be seen at 0:20. Gorcenski is screen left behind the tall man in the plaid cap; a short man in a yellow shirt is behind her. Gorcenski is disheveled. She puts her glasses in her hair, appears to cough, and for the first time is pressing her chest as if having difficulty breathing. She then wipes her left eye, and then her right eye. She is squinting at her phone, operating it, (0:40) and wiping her eyes again at 0:44. At 1:29, Gorcenski has made it out through the crowd, and appears to be in distress by the UVa Students sign.

Gorcenski was also recording herself. Emily Livestream 4, Exhibit C4 begins with the man in the yellow shirt at 0:00. Gorcenski's face appears, now clearly watery eyed and squinting; the first words she says to her phone is "I've been maced [!]," She later has her eyes flushed, and exclaims "I've *just* been maced." Gorcenski was sprayed by *Beanyman* at the southeast corner of the monument, never by Cantwell. Gorcenski is not allowed to disregard information that shows her claims to be without basis in fact. Further, Gorcenski knew or should have known that Beanyman, not Cantwell, was her sprayer, which information she concealed. No probable cause existed.

Gorcenski's knowledge of the lack of probable cause is further shown by the contradictions in her story.

On August 16, 2017, despite being within inches of the incident, Gorcenski claimed that Cantwell sprayed himself, and claimed that Cantwell was the only one with mace at the event, despite her personal knowledge of Beanyman's possession of it. Exhibit C5. Moreover, as set forth on the Gionet Declaration, Memorandum Exhibit A, the smell of pepper spray was in the air when Haircut shoved Gorcenski, long before Beanyman attacked Cantwell. Clearly, Gorcenski's claim that only Cantwell had pepper spray was intentionally untruthful.

On August 17, 2017 Gorcenski made a statement to Sgt. Acord of the UVa Police Department, Memorandum Exhibit G:

> Once they made it to the statue by the North end of the rotunda, Emily recalls seeing a person being hit by a torch and could smell fuel just before being *sprayed in the eyes with pepper spray*. Directly **after** being sprayed, she was hit by a man wearing a swastika pin and her phone was dropped. She picked up her phone and located a woman who flushed her eyes with water. The next day Emily was able to identify the man who sprayed her as Chris Cantwell after reviewing video and social media. [Emphasis added].

Within 24 hours, Cantwell went from spraying himself to spraying Gorcenski "in her eyes." As shown on the News to Share Video, Exhibit C2, at 2:21, and at 2:27, Cantwell's back was to Gorcenski when she was sprayed.

By August 23, five days later, Gorcenski novelly claimed that Cantwell "sprayed basically the whole group." Cantwell Declaration 2 Exhibit C6, People Magazine.

By October 29, 2017, Gorcenski changed her story again, admitting that Cantwell did not spray her in the eyes nor specifically target her on August 11, 2017:

> "GORCENSKI was asked whether or not Cantwell specifically sprayed her in the face, or otherwise targeted her specifically, during the encounter at the base of the Jefferson statue on 8/11 and she said "no, he did not."

FBI 302, Memorandum Exhibit H.

As shown by her contradictory stories, no probable cause existed for Gorcenski to believe that Cantwell had sprayed her.


### (4) The prosecution was malicious.

"'Malice is evidenced either when the accused acted with a sedate, deliberate mind, and formed design, or committed a purposeful and cruel act without any or without great provocation.' " Robertson v. Commonwealth, 31 Va.App. 814, 823, 525 S.E.2d 640, 645 (2000). "A 'common theme running through [the definitions of malice] is a requirement that a wrongful act be done wilfully or purposefully.' Williams v. Commonwealth, 767 S.E.2d 252, 64 Va.App. 240 (Va. App., 2015). "Malice inheres in the doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will. It may be directly evidenced by words, or inferred from acts and conduct which necessarily result in injury." Dawkins v. Commonwealth, 186 Va. 55, 61, 41 S.E.2d 500, 503 (1947). "Malice may well be inferred from the want of probable

cause. <u>Freezer v. Miller</u>, *supra*. But the latter will not be inferred from the former. The burden of proof of both is on the plaintiff, and although the want of probable cause is a negative, the burden is nevertheless on the plaintiff to prove it. This is said to be based on grounds of public policy." <u>Clinchfield Coal Corp. v. Redd, 123 Va. 420</u>, <u>96 S.E. 836</u>; L.R.A. 1918A 872. Burks Pleading & Practice, 4th Ed. § 151, page 262.

### a. Gorcenski's malice is shown by her telling different stories to different law enforcement agencies.

#### 1. The video record of Gorcenski.

Tim Gionet was filming Gorcenski. Gionet Declaration, Memorandum Exhibit A. This footage, (Baked Alaska Raw Footage), shows Gorcenski at the Jefferson Monument. [0:26, center frame low]. She is calmly filming the events with a phone. In front of her is a white male with distinctive haircut, hereinafter "Haircut," speaking to the man next to her. Gorcenski calmly turns around in place while filming for the next 15 seconds. [026-0043]. Fourteen seconds later, Gorcenski is somewhat closer to the Jefferson Monument; the camera is about a foot from her face. [0:55]. Haircut is seen right of frame. Haircut shoves Gorcenski's left shoulder with his right shoulder, pushing her back. [0:56]. Haircut then points to Gorcenski [0:59], who raises her phone at him. Haircut then blocks Gorcenski's phone with his hand [1:00].

Gionet was within about two feet of Gorcenski at 1:00; the smell of pepper spray was in the surrounding air at this time. Gionet Declaration, Memorandum Exhibit A, Paragraph 4, 5. Gionet's camera changes view to the left, (Gorcenski's right) where a brawl has broken out between a man in a Tank Top and a man with orange undersleeves. [1:01]. Five seconds later, at

1:06, Cantwell can be made out screen left facing a crouching Beanyman.  This is when and where Beanyman first attacked Cantwell, and Cantwell sprayed Beanyman.

A screenshot from Gorcenski's own video shows how far away Cantwell and Beanyman were at about this time.  Exhibit C7. Gorcenski's distance from Cantwell is shown on another video, the Unicorn Riot video. MP 12, attached to the Complaint, shows Gorcenski's location during Beanyman's attack on Cantwell. That clip (Exhibit C7) at 0:01 shows Gorcenski in the upper left hand corner, while Cantwell is in the lower left hand corner of the frame.   Gorcenski was yards away, to their left rear.

At Gionet 1:04 Gorcenski is still standing near the corner of the Monument. At 1:07, Gorcenski and the tall man in a green shirt bend down, looking at the ground.  At 1:17, the image blurs, but Gorcenski can be made out sedately standing frame right. Also at 1:17, Gorcenski is calmly facing south, and discreetly touches her glasses.   She shows no signs whatsoever of being affected by any chemical agent.

Gorcenski was filmed by another camera after touching her glasses. Exhibit C2. In the News2Share video, the camera is behind Gorcenski, who is at the southwest corner of the monument. That footage at 0:02, (right edge of frame) captures Gorcenski touching her glasses. She then moves east across the south face of the monument.  Her phone can be seen in her hand. At 0:09, Cantwell, not spraying anyone, can be seen in the background. Gorcenski discerns the button for the photo program on the phone, aims it at Cantwell, and takes a photo of him, and apparently no one else, on that phone at 0:11.  Exhibit C2. The photo Gorcenski took is in Exhibit D.   Memorandum Exhibit I, p. 171.

The video from News 2 Share 0:14-end, Exhibit C2, from behind Gorcenski, shows Cantwell going after the woman with the asp, Gorcenski still with phone, and the Beanyman

spray of Cantwell and Gorcenski.

The Guardian Getty video (Exhibit C1) is from in front of Gorcenski at the southeast corner. It shows her (right edge of frame) touch her glasses at 0:00 and then moving after the glasses touch, (0:03).  At 0:07, it shows Beanyman spraying a man in a white shirt, and the woman with the asp attempting to strike with it. At 0:08, a man's torch can be seen dripping citronella.  At 0:14, Beanyman can be seen spraying Cantwell, and Gorcenski right behind Cantwell.  Exhibit E, screenshot from C1.


### 2. What Gorcenski said about her actions.

The different stories Gorcenski has told to different people show that she was cherry-picking facts to fit her false claim that Cantwell sprayed her on the northeast corner, on the other side of the monument.

On August 12, 2017, Gorcenski told the Magistrate that she was shoved, then a fight broke out to her right, and then she was "affected."  Warrant, Memorandum Exhibit F.

On August 17, 2017 Gorcenski made a statement to Sgt. Acord of the UVa Police Department, Memorandum Exhibit G:

Once they made it to the statue by the North end of the rotunda, Emily recalls seeing a person being hit by a torch and could smell fuel just before being *sprayed in the eyes with pepper spray*. Directly after being sprayed, she was hit by a man wearing a swastika pin and her phone was dropped.  She picked up her phone and located a woman who flushed her eyes with water.  The next day Emily was able to identify the man who sprayed her as Chris Cantwell after reviewing video and social media.

In just five days, Gorcenski's second version differed from her first. Now a person was hit by a torch, then citronella spilled, and *then* she was sprayed in the eyes. Only after that was she shoved, and then after that she dropped her phone and picked it up, and then had her eyes flushed. This contradicts the Memorandum Exhibit A video, which shows that Gorcenski was not in fact sprayed before Haircut shoved her. It also leaves out her ability to take photos of Cantwell as she moved across the south face of the Monument.

Gorcenski told a third version to the FBI on October 17, 2017. This time her story was:

She stated that at this time, the "Swastika pin dude" physically shoved her back against the group of counter-protesters. The counter-protesters behind her, some of whom she said were from Black Lives Matter (BLM) were chanting. She said that is when the fights broke out to her right. She stated that during this melee the "Swastika pin dude" punched the phone from her hand. She said she "kind of retreated" and realized she couldn't escape [Pg 4] and there were "torches everywhere." GORCENSKI said, "As I went back to get my phone, I felt my face burning." She said she went in and retrieved her phone and that is when someone hit her in the head with a torch. She said she retrieved her phone and was able to escape the crowd, and by that point her face was "on fire, snot was coming out of my nose and I couldn't see." She said someone poured water on her face in order to alleviate her symptoms, then she was able to get her glasses on so she could see again.

"GORCENSKI was asked whether or not Cantwell specifically sprayed her in the face, or otherwise targeted her specifically, during the encounter at the base of the Jefferson statue on 8/11 and she said "no, he did not." FBI 302, Memorandum Exhibit H.

Gorcenski had returned to the "shove first" story, but now the phone was "punched" from her hand, not dropped. Then she "retreated," but advanced again to get her phone, when she herself was hit on the head with a torch. This time, it was not just her eyes and sinuses burning, but she was blind and expectorating from her nose. She specifically denied to the FBI what she had affirmatively represented to Sgt. Acord of the UVa PD: that Cantwell had sprayed her in her eyes, and made no mention of her ability to take a photo with the phone while blind and expectorating.

Gorcenski's differing statements show that she was stitching together a false narrative, and telling different people different stories, all with the intent to bring down the power of the state and federal governments on Cantwell. This shows Gorcenski's malice, ill will, and spite.

**c. Gorcenski's malice is shown by her accusing Cantwell of Beanyman's crime.**

Gorcenski covered up the fact that Beanyman, closest to her and spraying in her direction, "sprayed her in her eyes." Instead, she knowingly and intentionally accused her political opponent of a felony that he did not commit. Indeed, in her tweet of August 16, 2017, Gorcenski bragged that Cantwell had been targeted by her "media team." Exhibit C5. Such targeting shows that Gorcenski had enlisted others to maliciously search for an opportunity to "get" Cantwell.

**d. Gorcenski's malice is shown by her comments about Cantwell**

Early in the day on August 11, 2017, Cantwell had a fan meet and greet at the Wal-Mart parking lot. Michael Longo, of Philly Antifa, and others called the police, causing the Albemarle County Sherriff's Department to show up, enabling Gorcenski to take a photo of Cantwell being accosted by the police, which she later tweeted out. Gorcenski later appeared at the Monumentals' staging area livestreaming, and accosted Cantwell about the Wal Mart incident. Cantwell Declaration 2, Memorandum Exhibit C.

While livestreaming before the monument event, Gorcenski said, "We saw Christopher Cantwell have a rally today (unintelligible) at the Wal Mart parking lot um we were there to capture that, ah the media showed up to capture that…we did not call in that.. ah… brandishing the gun, that was a customer…inside the store, *which is proof that it is not just the "Antifa" that he is terrorizing but actually the community in and of itself.* We didn't need to do that…we got

to the meetup a few minutes late…" [Emphasis added] Exhibit C3. According to Gorcenski, Cantwell having a gathering in a parking lot is "terrorizing" Antifa, and also "terrorizing" the whole Charlottesville community. Her targeting of Cantwell, and her comment about customers calling, when it was a fellow Antifa "team," member show Gorcenski's actual malice against Cantwell.

e. **Gorcenski's malice is shown by her publication of her target list, and celebration of the harm inflicted upon her enemies.**

On August 17, 2017, Gorcenski published her hit list, in Exhibit C5. See also Cantwell Declaration 2, Memorandum Exhibit C. It lists 10 persons, all of whom were invited to speak at the August 12 rally, and includes "Cantwell." Gorcenski celebrated the violence she brought about by marking her successes with emojis. "Baked Alaska," a pseudonym for Tim Gionet, was pepper sprayed so badly that he permanently lost part of his vision. Memorandum Exhibit C. "Monoxide," another pseudonym, was fired from his job, hence the flames. Cantwell had arrest warrants out on him, the "x" apparently signifying cell bars. Gorcenski personally took credit for all of this by tweeting out to her 24,000 followers: "Don't f--k with a trans girl." Celebrating the violence and suffering of others shows Gorcenski's malice.

f. **Gorcenski's malice is shown by her hypocrisy.**

At the preliminary hearing, Gorcenski explained why she thought Cantwell had sprayed her.

Exhibit I, p. 145-146:

Q  It's going to the foundation of the next question. What did you observe, based on that, were there multiple deployments that evening?

A Yes.
Q Now, how do you know that it was Cantwell spray that affected you?
A It was the closest to me and it was in a direction towards where I was standing.


And further:

Exhibit I, p. 177:

      Q I'll withdraw it. I'll withdraw it. Correct me if I'm wrong, your sworn statement that it was Chris Cantwell's specific spray out of five is pretty much just your opinion, isn't that right?
      A It is my belief that being as his deployments were the closest to me and aimed in my direction that it is most likely that his deployments of spray were the ones that affected me.
      Q But you can't tell for sure, can you? You can just say it is most likely.
      A Yes.
      Q But you swore under oath that it was his pepper spray and nobody else's, isn't that right?
      A I swore that it was my belief that it was his spray and nobody else's.


      Gorcenski admitted that she accused Cantwell of a felony knowing she had only a one in five chance of being correct, intentionally ignoring a sixth spray from Beanyman, at the southeast corner, which was directly at and much closer to her. Concealing material facts while under oath shows Gorcenski's malice toward Cantwell, as does the double standard inherent in prosecuting Cantwell for Beanyman's actions. Gorcenski's claim that Cantwell sprayed himself "that first night," when she was present at Beanyman's spraying him, further shows Gorcenski's dedication to concealing her hypocrisy.

      **g. Gorcenski has vowed to "show no mercy" to her political opponents.**

   On or about June 21, 2018, Gorcenski tweeted that unnamed "Nazis" deprived her of something and she therefore will "show no mercy." She also speaks of denying food to anyone she deems a "Nazi," body counts, and rails against "white Christian supremacy." Exhibit C5. Clearly, to Gorcenski, "Nazis" are the same as "white Christians." She clearly believes that

such people do not have "inalienable rights, endowed by their Creator." No mercy, starvation and body counts show Gorcenski's bigotry, and malice towards them.

No genuine issue of material fact exists as to whether Gorcenski acted with malice.

## Conclusion

The evidence shows that Gorcenski maliciously prosecuted Cantwell, far beyond any mere preponderance. No genuine issue of material fact exists as to whether she maliciously prosecuted Cantwell, and summary judgement on that claim is appropriate. Cantwell does not ask for an assessment of damage at this time, nor for a determination as to punitive damages attendant to this cause of action.

Christopher Cantwell

/s/ Elmer Woodard

Elmer Woodard
Attorney at Law
5661 US Hwy 29
Blairs VA 24527
434-878-3422
VSB 27734
isuecrooks@comcast.net

CERTIFICATE OF SERVICE

The undersigned, being an attorney duly licensed to practice law in the State of Virginia, does hereby certify that a copy of the foregoing was duly served upon the opposing counsel this date as follows:

                     By personally hand delivering a copy the same to him or to one of his employees at his office;

                     By fax transmission;

XXX           By electronic mail or the court's electronic means;

                     By depositing a copy of same in the United States Mail, postage prepaid, and addressed as follows:

ADDRESSEE:

Sandra C. Freeman, Esq.
Virginia State Bar No. 78499
5023 W. 120th Avenue, #280
Broomfield, Colorado 80020
sandra.c.freeman@protonmail.com 720-593-9004

This Wednesday, July 04, 2018.

Elmer Woodard